FILED

07 NOV 16 PM 2: 40

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

Howard Rubinstein (Fla. SBN: 104108)
Attorney at Law
914 Waters Avenue, Suite 20
Aspen, Colorado 81611
Tel.: (832) 715-2788
*(To apply as counsel pro hac vice)*

Harold M. Hewell (Cal. SBN: 171210)
Hewell Law Firm, APC
402 W. Broadway, Fourth Floor
San Diego, California 92101
Tel: (619) 235-6854 · Fax: (619) 235-9122
E-mail: hmhewell@hewell-lawfirm.com
*Attorney for Plaintiff*

"VIA FAX"

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

'07 CV 2192 BEN CAB

| | |
|---|---|
| **ADRIANNE SMITH,** as an individual and on behalf of all others similarly situated, | : Civil Action No. |
| | : |
| *Plaintiff,* | : **COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION AND DAMAGES** |
| *vs.* | : |
| | : |
| **KRAFT FOODS, INC.,** a Virginia corporation, | : |
| | : ___*CLASS ACTION*___ |
| *Defendant.* | : |
| | : ***JURY TRIAL REQUESTED*** |

Plaintiff alleges:

## I. PARTIES

1. Plaintiff Adrianne Smith is an individual consumer who resides in the County of San Diego and the State of California where the subject transactions herein took place. Ms. Smith is the mother of an infant daughter and son. She respectfully requests a jury trial.

2. Defendant Kraft Foods, Inc. ("Kraft") is a corporation organized and existing under the laws of the State of Virginia. It maintains its principle office at Three Lakes Drive, NF602, Northfield, Illinois 60093-2753, and a registered agent listing of CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604. For purposes of diversity jurisdiction, Kraft may be considered a "citizen" of either the Virginia or Illinois. Kraft is one of the world's largest food and beverage companies, with 2006 revenues of approximately $34 billion. Seven of its brands yield revenues of $1 billion, and more than fifty of its brands yield revenues of $100 million. Kraft employs more than 90,000 people at 159 manufacturing and processing facilities worldwide and contends that "Meeting our responsibilities as a public company and global citizen is the right thing to do and right for our business." See Kraft website page http://kraft.com/investors/documents/KFT_2006_Fact_Sheet. A true and correct copy of that website page is attached hereto as Exhibit "B" and incorporated by reference. Kraft products include Jell-O® "Instant Pudding Pie Filling" in chocolate and lemon flavors and "Cook & Serve Pudding & Pie Filling" in a vanilla flavor ("Products"). In 2006, revenues from cereals and snacks such as the Products accounted for approximately $6.4 billion of Kraft's revenues from the North American market alone. At all times relevant hereto, Kraft was and is doing business in the County of San Diego, State of California.

3. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the Defendant's divisions, subsidiaries and other related entities was the agent, servant and employee of the Defendant and each of its other divisions, subsidiaries and other related entities, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Plaintiff is further informed and believes and thereon alleges that, at all times herein mentioned, each of the employees of Defendant, Defendant's

1  divisions, subsidiaries and other related entities was the agent, servant and employee of

2  Defendant.

3  4. Whenever reference in this Complaint is made to any act or transaction of Kraft, such

4  allegation shall be deemed to mean that the principals, officers, directors, employees, agents,

5  and/or representatives of said Defendant committed, knew of, performed, authorized, ratified

6  and/or directed such act or transaction on behalf of Kraft while actively engaged in the scope of

7  their duties.

8  ## II. VENUE AND JURISDICTION

9  5. This Court enjoys jurisdiction over the subject matter presented by this Complaint

10 because it is a class action arising under the Class Action Fairness Act ("CAFA") of 2005, 28

11 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1332(d)(6), which explicitly provides for original

12 jurisdiction in the Federal Courts of any class action in which any member of the Plaintiff Class

13 is a citizen of a State different from any Defendant, and in which the matter in controversy

14 exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.

15 6. Plaintiff alleges that the total claims of individual class members in this action are

16 well in excess of $5,000,000 in the aggregate as required by 28 U.S.C. § 1332(d)(2), (5). Kraft

17 is incorporated in Virginia and maintains an office in Illinois, and can therefore be considered a

18 citizen of either of those states. Plaintiff is a citizen of California. Therefore, diversity of

19 citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2). Furthermore, pursuant to

20 28 U.S.C. § 1332(d)(4)(a)(i)(I), Plaintiff alleges that more than two-thirds of all of the members

21 of the proposed Plaintiff Class in the aggregate are citizens of a state other than California,

22 where this action is originally being filed, and that the total number of members of the proposed

23 Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

24 7. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial

25 part of the events or omissions giving rise to the claims herein occurred in this district and

26 because Defendant may be found in and is subject to personal jurisdiction in this district. The

27 required "Declaration of Harold M. Hewell Pursuant to Civil Code §1780(c) of the Consumer

28 Legal Remedies Act, Civil Code §§1750 et seq." regarding venue under the California

1  Consumer Legal Remedies Act is attached as Exhibit "A" hereto and incorporated by
2  reference.

3  ### III. FACTUAL ALLEGATIONS

4  8. All allegations in this Complaint are based on information and belief and/or are
5  likely to have evidentiary support after reasonable opportunity for further investigation and
6  discovery.

7  9. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 8,
8  inclusive, above.

9  10. Defendant has, during the past four years, marketed, advertised and distributed the
10  Products across the United States, and continues to do so as of the date of this filing. In the
11  upper left-hand corner of the principle display panel ("PDP") on the Product labels, the "word"
12  "CALCI-YUM!" is displayed in large bold print. In smaller print below "CALCI-YUM!" are
13  the words, "A Good Source of Calcium as Prepared."[1] True and correct copies of the labels of
14  the Products are attached hereto as Exhibit "C" and incorporated by reference.

15  11. Kraft's prominent use of the word "CALCI-YUM!" on the PDP of each of the
16  Products leads the buying public into believing that the Products are a delicious and substantial
17  dietary source of calcium, an essential mineral for the development and maintenance of healthy
18  bones and teeth. However, the Products have absolutely no nutritional value as a dietary source
19  of calcium. The only source of nutritional calcium found in the Products "as prepared" is the
20  milk that the consumer buys separately and adds to them.[2] By that standard, anything could be
21  marketed as "a good source of calcium" as long as the consumer was directed to add milk.

22  12. Nevertheless, Kraft represents to consumers that "JELL-O INSTANT Pudding (1/2

---

24  [1] As the attached labels indicate, the words, "as Prepared" are in smaller typeface on the PDP
25  than the preceding words, "A Good Source of Calcium...."

26  [2] Of the three Products, the vanilla-flavored pudding contains the ingredient calcium
carrageenan as a thickener, and the chocolate-flavored pudding contains the ingredient calcium
27  sulfate, but neither of those ingredients provides any notable nutritional value to those flavors as
a dietary source of calcium. The lemon-flavored pudding contains no calcium, calcium
28  compounds or calcium-containing products in its ingredient list.

---

cup)" provides 150 milligrams of calcium per serving. This representation is made by listing the JELL-O INSTANT Pudding in a table with other products beneath the statement:

> For example, milk contains 300 mg per 8 ounces, as does 1½ ounces of cheese. But there are plenty of other foods that contain calcium. See the list below for examples of foods that can help you meet your calcium quota:

By listing JELL-O INSTANT Pudding in the table beneath that statement, Kraft leads consumers to believe that its JELL-O INSTANT Pudding contains 150 milligrams of calcium per serving as it is sold, without consumers having to add calcium via milk. See http://www.kraftfoods.com/kf/HealthyLiving/Healthy+Living+Library/powerup.htm. A true and correct copy of that representation with the above-referenced language highlighted, is attached hereto as Exhibit "D" and incorporated by reference.

13. Such an assertion is false: the Products are simply expensive milk additives that lack any nutritional benefit of calcium as sold.

14. A global company with Kraft's sophistication and expertise in the marketing of foods can hardly be ignorant of Swiss Maid's "Calci-Yum" dairy food products, the Tropical "Calci-Yum" Monster™ smoothie beverage sold by Odwalla®, Maxi Health's Chewable "Calci-Yum" dietary supplement, Fonterra Brands' "Calci Yum" dairy products, and other products that use a similar derivative of the word calcium. The difference however, is that those products actually contain nutritional levels of calcium as sold. They do not require the consumer to buy milk separately and add it to the product to obtain the nutritional benefits of calcium. True and correct copies of the marketing for some of these products is attached hereto as Exhibit "E" and incorporated by reference.

15. Further confusion derives from Kraft's move to fortify its refrigerated[3] pudding lineup with calcium and print "CALCI-YUM!" on those PDPs as well. However Kraft drops the "as prepared" from the fortified pudding PDPs and simply states, "A Good Source of Calcium."

---

[3] I.e., requires no preparation (addition of milk).

16. Ms. Smith, as noted above, has two infant children, a girl and a boy. She is conscientious about their diets and fully aware of the importance of calcium in their development. She also is aware of the importance of calcium to women. During the past four years, she has purchased the Products at stores in the San Diego area and fed them to her children. She also has eaten the Products herself. Ms. Smith did so because she had been exposed to the advertising and marketing of the Products as set forth above. She relied on the reputation of Kraft and Jell-O® in purchasing the Products, and was misled into thinking they contained calcium as sold and that she was paying for a calcium-containing food. She did not realize that she was buying the calcium (milk) separately and adding it to the Products herself until a friend pointed this out. She was misled by Kraft's omission of this material fact. The phrase "as prepared" on the PDP is vague and does nothing to qualify the preceding representations and the prominently displayed "CALCI-YUM!" A reasonable consumer would not interpret this to mean "if you buy and add milk to this Product." The nutritional panel on the side of the Products, which cannot be seen by the consumer standing in the store aisle, is insufficient to overcome the deception on the PDP and Kraft's "CALCI-YUM!" marketing scheme. As a result of Kraft's deceptive labeling and marketing scheme and her reliance on the purported quality of Kraft and Jell-O® products, she was misled into purchasing and spending money on the Products. Additionally, she had to pay a hidden price for the separate purchase of the milk in order to get the nutritional benefit she sought. Had she known that the Products provide absolutely no nutritional value as a dietary source of calcium, she would not have bought the Products. There are many other competitively-priced foods (that do not require the additional, separate purchase of milk) that are rich in calcium as sold that she and her children enjoy, and she would have purchased them instead. In exchange for her money, Ms. Smith received something other than what was represented to her, a product she did not seek. As sold, the Products lack the nutritional benefit she sought and thought she was receiving. The Products were and are of no value to her.

## IV. CLASS ALLEGATIONS

17. Plaintiff realleges and incorporates by reference the allegations set forth in each of

the preceding paragraphs of this Complaint.

18. Pursuant to California Civil Code §1781, California Code of Civil Procedure §382, and Federal Rule of Civil Procedure ("FRCP") 23, Plaintiff brings this action on behalf of herself and all other consumers who purchased Defendant's deceptively labeled Products during the Class Period.

19. Defendant's practices and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class.

20. All putative Class members were and are similarly affected by having purchased and eaten, and/or given to their children to eat, Defendant's deceptively labeled Products, and the relief sought herein is for the benefit of Plaintiff and members of the putative class. Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class is so numerous that joinder of all members would be impractical.

21. Based on the annual sales of the Products and their popularity, it is apparent that the number of consumers of the deceptively labeled Products would at least be in the many thousands, thereby making joinder impossible

22. Questions of law and fact common to the Plaintiff Class and the subclasses exist that predominate over questions affecting only individual members, including, inter alia:

(a) Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the deceptively labeled Products were deceptive, unlawful or unfair in any respect, thereby violating California's Unfair Competition Law ("UCL), Cal. Bus. & Prof. Code § 17200 et seq.;

(b) Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the deceptively labeled Products were deceptive, unlawful or unfair in any respect, thereby violating California's False Advertising Law ("FAL), Cal. Bus. & Prof. Code § 17500 et seq.;

(c) Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the deceptively labeled

Products were false and/or misleading;

(d) Whether Defendant's conduct in connection with the practices and representations made in the labeling, advertising, marketing, promotion and sales of the deceptively labeled Products unjustly enriched Defendant at the expense of and to the detriment of Plaintiff and Class members;

(e) Whether Defendant's conduct in connection with the practices and representations made in the labeling, advertising, marketing, promotion and sales of the deceptively labeled Products breached express warranties with regard to the Products;

(f) Whether Defendant have violated California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq., by the practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the deceptively labeled Products within this State.

(f) Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

23. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class as the claims arise from the same course of conduct by Defendant, and the relief sought is common.

24. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclasses. Plaintiff has retained counsel who is competent and experienced in both consumer protection and class action litigation.

25. Certification of this class action is appropriate under FRCP 23(b), California Code of Civil Procedure §382 and California Civil Code §1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other Class member would be able to protect his or her own interests because the cost of litigation through individual lawsuits might exceed expected recovery. Certification is also appropriate because Defendant acted or

refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole. Further, given the large number of consumers of the deceptively labeled Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

26. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

27. Plaintiff alleges that in the aggregate, the claims of the individual Class members exceed the sum of $5,000,000.00, exclusive of interest and costs.

## V. FIRST CAUSE OF ACTION:

## FOR VIOLATION OF BUS & PROF. CODE §17200 ET SEQ.

28. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

29. This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to California Bus. & Prof. Code § 17200 et seq., which provides that "'unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

30. Plaintiff is informed and believes, and based on such information and belief alleges, that Defendant committed an unfair business act or practice. The utility of Defendant's misleading and/or deceptive labeling, advertising, promotion or marketing, as well as non-disclosure of certain health consequences with respect to the same, for the purpose of selling its

deceptively labeled Products is negligible, if any, when weighed against the extent of harm to the general public, Plaintiff and Class members. The harmful impact upon members of the general public and the Class who were and are misled and deceived with respect to Defendant's labeling, advertising, promotion or marketing of the deceptively labeled Products far outweighs any reasons or justifications by Defendant in characterizing the Products as a significant source of dietary calcium in their labeling, advertising, promotion or marketing. Defendant had an improper motive (as alleged in this Complaint) in labeling, advertising, promotion or marketing of the deceptively labeled Products as a significant source of dietary calcium when the Products provide absolutely no nutritional value as a dietary source of calcium and would only benefit the consumer if combined with a calcium-containing product. The utilization of unlawful, unfair and/or deceptive practices was and is under the sole control of Defendant, and was fraudulently and deceptively hidden from members of the general public in its labeling, advertising, promotion or marketing. As a purchaser and consumer of Defendant's deceptively labeled Products and as a member of the general public in California who has been injured by Defendant's unlawful and/or unfair practices, Plaintiff is entitled to and does bring this class action seeking all available UCL remedies, including declaratory and injunctive relief, restitution, and attorneys' fees and costs.

31. Defendant committed a deceptive act or practice by making written and/or oral material representations (and material omissions) that have a capacity, tendency, or likelihood to deceive or confuse reasonable consumers by representing that the Products are a significant source of dietary calcium, when they provide absolutely no nutritional value as a dietary source of calcium as set forth above.

32. Defendant also has committed unlawful acts and practices within the scope of the UCL by violating the CLRA as set forth below. This state statutory violation serves as a predicate violation of this prong of the UCL.

33. Plaintiff is informed and believes and based thereon alleges that Defendant continues these unlawful, unfair and/or deceptive business practices alleged herein.

34. Defendant's acts, misrepresentations, concealment of material facts and failures to

1   disclose as alleged in this Complaint, constitute unlawful, unfair and/or deceptive business

2   practices within the meaning of California Bus. & Prof. Code § 17200 et seq. Plaintiff and

3   members of the general public were and are likely to be deceived by Defendant's scheme to

4   misrepresent the actual nature of the Products.

5        35. Pursuant to California Bus. & Prof. Code §17203, Plaintiff, on behalf of herself and

6   members of the general public, seeks an order of this Court:

7        (a) Enjoining Kraft from continuing to engage, use, or employ any unlawful, unfair

8           and/or deceptive business act or practice and unfair, deceptive, untrue or misleading

9           labeling, advertising, promotion or marketing and any act prohibited by Chapter I

10          (commencing with Section 17500) of Part 3 of Division 7 of the Business and

11          Professions Code; and

12        (b) Restoring all monies that may have been acquired by Defendant as a result of such

13          unlawful, unfair, or deceptive act or practices.

14        36. Plaintiff and members of the general public may be irreparably harmed and/or

15   denied an effective and complete remedy if such an order is not granted. The unlawful, unfair

16   and/or deceptive acts and practices of Defendant, as described above, present a serious threat to

17   Plaintiff and members of the general public.

18        37. As a result of Defendant's violation of the UCL, Plaintiff and the Class are entitled

19   to restitution for out-of-pocket expenses and economic harm.

20        38. Pursuant to Civil Code §3287(a), Plaintiff and Class Members are further entitled to

21   pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The

22   amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff

23   and Class members are entitled to interest in an amount according to proof.

24                    **VI. SECOND CAUSE OF ACTION:**

25        **FOR VIOLATION OF BUS. & PROF. CODE §17500 ET SEQ.**

26        39. Plaintiff realleges and incorporates by reference the allegations set forth in each of

27   the preceding paragraphs of this Complaint.

28        40. In violation of California Bus. & Prof. Code §17500, Defendant has disseminated,

or caused to be disseminated, false and misleading statements and representations in advertisements, labeling promotion and/or marketing of the Products as set forth in detail above. These include labeling, advertising, promotion or marketing the deceptively labeled Products as a significant source of dietary calcium when in fact the Products provide absolutely no nutritional value as a dietary source of calcium.

41. Defendant's representations in the advertisements, promotions and/or marketing of the deceptively labeled Products are untrue and/or misleading as set forth above.

42. Plaintiff is informed and believes and based thereon alleges, that Defendant continues to disseminate, or cause to be disseminated, such false and misleading statements alleged herein.

43. Defendant is disseminating labeling and advertising concerning its products which by their very nature is unfair, deceptive, untrue or misleading within the meaning of California Bus. & Prof. Code §17500 et seq. Such advertisements are likely to deceive, and continue to deceive the consuming public.

44. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Bus. & Prof. Code §17500 et seq.

45. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the Class Members have suffered substantial monetary and non-monetary damage. Pursuant to California Business and Professions Code §17535, Plaintiff, on behalf of herself and members of the general public, seeks an order of this Court:

(a) Enjoining Kraft from continuing to engage, use, or employ any act prohibited by Chapter I (commencing with Section 17500) of part 3 of Division 7 of the Business and Professions Code; and

(b) Restoring all monies that may have been acquired by means of Defendant's false and misleading statements in advertisements, promotions and/or marketing described herein.

46. As such, Plaintiff and the members of the Class request that this Court cause the

1  Defendant to restore this money to them, and to enjoin the Defendant from continuing to
2  violate California Bus. & Prof. Code §17500 et seq., as alleged above. If Defendant's conduct
3  is not enjoined, Plaintiff and the members of the Class will continue to be damaged by
4  Defendant's false and misleading labeling and advertising.

5      47. Pursuant to Civil Code section 3287(a), Plaintiff and Class members are further
6  entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful
7  conduct. The amount of funds paid by Plaintiff and Class members as a result of said acts is a
8  sum certain and capable of calculation, and Plaintiff and Class members are entitled to interest
9  in an amount to be set forth according to proof.

10             **VII. THIRD CAUSE OF ACTION:**
11          **FOR NEGLIGENT MISREPRESENTATION**

12      48. Plaintiff realleges and incorporates by reference the allegations set forth in each of
13  the preceding paragraphs of this Complaint.

14      49. Beginning at an exact date unknown to Plaintiff, but at least since three years prior
15  to the filing date of this action, Defendant represented to the public, including Plaintiff, by
16  means of labeling, advertisements, promotion and/or marketing, that the Products contain a
17  significant source of dietary calcium, when they provide absolutely no nutritional value as a
18  dietary source of calcium

19      50. Defendant's representations were untrue as set forth above.

20      51. Defendant made the representations herein alleged with the intention of inducing
21  the public to purchase Defendant's Products.

22      52. Plaintiff and other members of the general public saw, believed, and relied on
23  Defendant's labeling and advertising representations and, in reliance on them, purchased and
24  ate the Products.

25      53. At the time Defendant made the misrepresentations herein alleged, Defendant had
26  no reasonable grounds for believing the representations to be true.

27      54. As a proximate result of Defendant's negligent misrepresentations, Plaintiff and
28  other members of the general public were induced to purchase and eat the Products, spending

1    an amount to be determined at trial on Defendant's products.

## VIII. FOURTH CAUSE OF ACTION:

### FOR INTENTIONAL MISREPRESENTATION

55. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

56. Beginning at an exact date unknown to Plaintiff, but at least since three years prior to the filing date of this action, Defendant represented to the public, including Plaintiff, by means of labeling, advertisements, promotion and/or marketing that the Products contain a significant source of dietary calcium, when in fact they provide absolutely no nutritional value as a dietary source of calcium.

57. Defendant's representations were untrue as set forth above.

58. Defendant made the representations herein alleged with the intention of inducing the public to purchase and eat the Products.

59. Plaintiff and other members of the general public saw, believed, and relied on Defendant's labeling and advertising representations and, in reliance on them, purchased and ate the Products.

60. At the time Defendant made the representations herein alleged, Defendant knew the representations were false.

61. Defendant made these misrepresentations with the intention of depriving Plaintiff and Class members of property or otherwise causing injury, and was guilty of fraud.

62. As a proximate result of Defendant's intentional misrepresentations, Plaintiff and other members of the general public were induced to spend an amount to be determined at trial on Defendant's Products.

63. Plaintiff is informed and believes and thereon alleges that Defendant knew that the Products provide absolutely no nutritional value as a dietary source of calcium, and in fact, could only achieve that state in combination with the addition of a product that truly contained calcium. Yet by the use of the word "CALCI-YUM!" on the product package and other deceptive representations set forth in detail above, Defendant intended that customers and the

1  unknowing public believe that the Products had nutritional value as a dietary source of calcium

2  and should rely on that representation. Plaintiff and other members of the general public, in

3  purchasing and using the products as herein alleged, did rely on Defendant's above

4  representations, all to their damage as hereinabove alleged. In doing these things, Defendant

5  was guilty of malice, oppression, and fraud, and Plaintiff and Class members are, therefore,

6  entitled to recover punitive damages.

7  <center>**IX. FIFTH CAUSE OF ACTION:**</center>

8  <center>**BREACH OF EXPRESS WARRANTY**</center>

9      64. Plaintiff realleges and incorporates herein by this reference each and every allegation

10  set forth in the preceding paragraphs of this Complaint.

11      65. Beginning at an exact date unknown, but at least since four years prior to the filing

12  date of this action, and as set forth above, Defendant represented to the public, including

13  Plaintiff, by means of labeling, advertisements, promotion and/or marketing that that the

14  Products were a significant dietary source of calcium. These representations are described in

15  greater detail above.

16      66. The Products, however, provide absolutely no nutritional value as a dietary source of

17  calcium. The Products only offer the nutritional benefits of calcium if the consumer separately

18  purchases a calcium-containing product such as milk and adds it to the Products.

19      67. As a proximate result of these acts, Plaintiff and other consumers were induced to

20  spend an amount to be determined at trial on the Products manufactured, distributed, and sold by

21  Defendant.

22  <center>**X. SIXTH CAUSE OF ACTION:**</center>

23  <center>**UNJUST ENRICHMENT**</center>

24      68. Plaintiff realleges and incorporates by reference the allegations set forth in each of

25  the preceding paragraphs of this Complaint.

26      69. Defendant produced, marketed and sold the deceptively labeled Products.

27      70. Plaintiff and the Class members paid for the Products, ate them, and fed them to

28  their families believing, based on Defendant's labeling and marketing representations, that the

Products provided a significant dietary source of calcium.

71. Defendant accepted payment by Plaintiff and the Class members for the purchase of the deceptively labeled Products.

72. Although Plaintiff and Class members purchased and with their families ate the deceptively labeled Products in the belief that the Products they were purchasing and eating were a significant source of dietary calcium, Plaintiff and Class members, unbeknownst to them, were in fact, purchasing and eating Products that provide absolutely no nutritional value as a dietary source of calcium.

73. It would be inequitable for Defendant to retain the money received from these transactions in light of the fact that Plaintiff and the Class members did not receive the benefit that was marketed to them.

74. Plaintiff and the Class members are entitled to restitution of their purchase monies, disgorgement of Defendant's profits accrued from its unlawful practices, and attorneys' fees and costs.

## XI. SEVENTH CAUSE OF ACTION:

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

75. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

76. The acts and practices described above were undertaken by the Defendant in connection with a "transaction" (as defined in Civil Code §1761(e)) which was intended to and did result in the sale of "goods" (as defined in Civil Code §1761(a)) to "consumers" (as defined in Civil Code §1761(d)). Defendant's acts and practices, as alleged in detail above, violated, and continue to violate, Section 1770(a)(5) of California's Consumer Legal Remedies Act ("CLRA") in that Defendant represented to the public, including Plaintiff, by means of means of labeling, advertisements, promotion and/or marketing, that the Products they were purchasing and eating were a significant source of dietary calcium. However, the Products provide absolutely no nutritional value as a dietary source of calcium.

77. Plaintiff and Class members seek and are entitled to equitable relief in the form of

an order:

    (a) Enjoining Defendant from continuing to engage in the deceptive business practices described above;

    (b) Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described above;

    (c) Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described above; and

    (d) Enjoining Defendant from such deceptive business practices in the future.

78. Plaintiff is notifying Defendant in writing of the particular violations of Section 1770 of the CLRA (the Notice) and is demanding, among other things, that Defendant cease marketing the deceptively labeled Products as set forth in detail above, and that Defendant provide restitution to consumers who purchased the Products. If Defendant fails to respond to Plaintiff's demand within thirty days of receipt of the Notice, pursuant to section 1782 of the CLRA, Plaintiff will amend this Complaint to request statutory damages, actual damages, plus punitive damages, interest and attorney's fees. Regardless of such an amendment to seek damages, however, Plaintiff seeks and is entitled to, pursuant to Section 1780(a)(2) of the CLRA, an order as set forth herein enjoining the above-described wrongful acts and practices of Defendant, plus costs and attorney's fees and any other relief which the Court deems proper.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1.    For an order certifying that the action may be maintained as a class action.

2.    For an award of equitable relief pursuant as follows:

    (a) Enjoining Defendant from continuing to engage in the unlawful, unfair and fraudulent business practices and deceptive labeling and advertising described in this Complaint;

    (b) Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

1            (c) Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct

2 described in this Complaint; and

3            (d) Enjoining Defendant from marketing and selling the deceptively labeled

4 Products.

5        3.    For actual and punitive damages under the CLRA in an amount to be proven at

6 trial, including any damages as may be provided for by statute upon the filing of a First

7 Amended Complaint should the demanded corrections not take place within the thirty-day

8 notice period.

9        4.    For an award of attorney's fees pursuant to, inter alia, §1780(d) of the CLRA and

10 Code of Civil Procedure §1021.5.

11        5.    For actual damages in an amount to be determined at trial for the Third, Fourth,

12 Fifth, and Seventh Causes of Action;

13        6.    For punitive damages in an amount to be determined at trial for the for the Fourth

14 Cause of Action;

15        7.    For an award of costs and any other award the Court might deem appropriate;

16 and

17        8.    For pre- and post-judgment interest on any amounts awarded.

18                   Hewell Law Firm, APC

20 DATED: November 15, 2007.      By: _____

21                       Harold M. Hewell
Attorney for Plaintiff
[ELECTRONIC SIGNATURE]

## EXHIBIT LIST

| EXHIBIT | PAGES |
|---|---|
| **Exhibit "A":**<br>Declaration of Harold M. Hewell Pursuant to Civil Code § 1780(c) of the Consumer Legal Remedies Act, Civil Code § 1750 et seq." regarding Venue under the Consumer Legal Remedies Act. | A - 21 through A - 22 |
| **Exhibit "B":**<br>Kraft website page<br>http://kraft.com/investors/documents/KFT_2006_Fact_Sheet. | B - 24 through B -29 |
| **Exhibit "C":**<br>Copies of labels of the Products. | C - 31 through C - 33 |
| **Exhibit "D":**<br>Kraft website page<br>http://www.kraftfoods.com/kf/HealthyLiving/Healthy+Living+Library/powerup.htm. | D - 35 through D - 36 |
| **Exhibit "E":**<br>Copies of the marketing for other products using a derivative of the word calcium in the product marketing. | E - 38 through E - 42 |

Exhibit "A"

1  Harold M. Hewell (Cal. SBN: 171210)
2  Hewell Law Firm, APC
   402 W. Broadway, Fourth Floor
3  San Diego, California 92101
   Tel: (619) 235-6854 · Fax: (619) 235-9122
4  E-mail: hmhewell@hewell-lawfirm.com
5  *Attorney for Plaintiff*

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10 **ADRIANNE SMITH**, as an individual and    : Civil Action No.
   on behalf of all others similarly situated,  :
11                                              : **DECLARATION OF HAROLD M.**
12         *Plaintiff,*                         : **HEWELL REGARDING VENUE**
                                                : **PURSUANT TO CIVIL CODE §1780(c)**
13 *vs.*                                        : **OF THE CONSUMER LEGAL**
                                                : **REMEDIES ACT, CIVIL CODE §§1750,**
14                                              : **ET SEQ.**
15                                              :
16                                              :
17                                              :
18                                              :
19                                              :
20                                              :
21                                              :
22                                              :
23                                              :
24                                              :
25 **KRAFT FOODS, INC.**, a Virginia           :
   corporation,                                :
26                                              :
27         *Defendant.*                         : ___*CLASS ACTION*___
                                                :
28                                              : ___*JURY TRIAL REQUESTED*___

1      I, Harold M. Hewell, hereby declare:

2      1. I am an attorney at law duly admitted to practice before this Court and all the courts of

3 the State of California. I am the attorney of record herein for Plaintiff in the above-entitled

4 action. The matters stated below are true as to my own knowledge, except as to those matters

5 stated as to information and belief, and as to those matters, I believe them to be true. If called

6 upon, I could competently testify to the matters herein.

7      2. Civil Code § 1780(c) provides that a plaintiff seeking to bring an action under

8 Section 1780(a) of the California Consumer Legal Remedies Act, such as in the above entitled

9 action, may commence that action "in the county in which the person against whom it is brought

10 resides, has his or her principal place of business, or is doing business, or in the county where

11 the transaction or any substantial portion thereof occurred."

12      3. Accordingly, San Diego County is a proper venue in which to bring this action, as

13 Defendant at all relevant times in this action was "doing business" within this County by

14 marketing, advertising and selling the subject products of the Complaint within the County of

15 San Diego.

16      I declare under penalty of perjury under the laws of the state of California that the

17 foregoing is true and correct. Executed November 15, 2007, at San Diego, California.

18

19 _____

20                Harold M. Hewell
                [ELECTRONIC SIGNATURE]

21

22

23

24

25

26

27

28

Exhibit "B"



Kraft at a Glance – 2006 Key Financial Data

| | Net revenue in billions" | Revenues as % of Contribution | Revenue change versus prior year |
|---|---|---|---|
| Snacks | $10.0 |  29% | ↑ +5.2% |
| Beverages | $7.3 |  21% | ↑ +2.3% |
| Cheese & Dairy | $6.4 |  19% | ↓ −1.6% |
| Convenient Meals | $5.5 |  16% | ↑ +1.8% |
| Grocery | $5.1 |  15% | ↓ −7.4% |
| Total | $34.4 |  | ↑ +0.7% |

"Does not add due to rounding

We have over 50 brands with revenues greater than $100 million



 



With revenues of $34 billion, Kraft Foods Inc. is one of the world's largest food and beverage companies. For more than 100 years, we've offered consumers delicious and wholesome foods that fit the way they live.

- Our products are present in more than 99% of US households.

- Kraft markets many of the world's leading food brands. We have 7 brands with revenues of $1 billion and over 50 brands with revenues of $100 million. Over 40 of our brands are more than 100 years old.

- We have more than 90,000 employees and 159 manufacturing and processing facilities worldwide.

- Millions of times a day, in more than 155 countries, consumers reach for their favorite Kraft brands.

- Meeting our responsibilities as a public company and global citizen is the right thing to do and right for our business.

 
- We are a member of the Dow Jones Sustainability Index and the Ethibel Sustainability Index. For more information on our corporate responsibility initiatives please visit the Responsibility section of our website at http://kraft.com/responsibility/home.aspx

We have 7 brands with revenue of $1 billion

      

## Our Strategies

*Rewire the organization for growth* • *Reframe our categories*
*Exploit our sales capabilities* • *Drive down costs without compromising quality*

## Our Strategic Governing Statements

*Beverages* will build market share and profitability by focusing on better-for-you, premium and convenience beverage offerings.

*Cheese* will grow its market share of the total cheese category by focusing on snacking and quick-meal usage.

*Convenient Meals* will drive category and share growth by sourcing from away-from-home eating occasions through new product innovations and premium quality, while maintaining industry leading profit margins.

*Grocery* will achieve moderate growth and stabilize market share by contemporizing its brand portfolio through innovations in convenience, health and wellness and quality.

*Snacks & Cereals* will drive category growth and build on leading share positions through investments in growing channels and underdeveloped segments within existing categories.

*Foodservice* will improve profitability by focusing on segments that build Kraft's brand equities.

*European Union* will achieve moderate growth through maintaining market share in Coffee, Chocolate, Cheese and Biscuits.

*Developing Markets, Oceania & North Asia* will accelerate developing market growth by building scale and profitability in markets that can make a difference.

 

### 2006 Revenues $34.4 Billion

By Business Segment (US$)



International $11B

North America $23B

Grocery $2.7
Cheese & Foodservice $6.1
Snacks & Cereals $6.4
Convenient Meals $4.9
Beverages $3.1

Developing Markets,
Oceania & North Asia $4.6

European Union $6.7

By Global Consumer Sector (US$)



Beverages $7.3B

Cheese &
Dairy $6.4

Grocery $5.1

Convenient
Meals $5.5

Coffee $4.8
Specialty Refreshment
Beverages $2.5
Biscuits $5.0
Confectionery $3.5
Salted Snacks $1.5

Snacks $10.0B

---

Net Revenues ($ Billions)



$36 · · · · ·
32
28
24
20
        2002   2003   2004   2005   2006
       $29.2  $30.5  $32.2  $34.1  $34.4

* 2005 results reflect a 53-week year, all other years reflect a 52-week year.

Reported – Continuing Diluted Earnings Per Share ($)



$2.0 · · · ·
1.5
1.0
0.5
0.0
        2002   2003   2004   2005   2006
       $1.90  $1.95  $1.55  $1.72* $1.85

* 2005 results reflect a 53-week year, all other years reflect a 52-week year.

Discretionary Cash Flow* ($ Billions)



$3.00 · · · ·
2.25
1.50
0.75
0.00
        2002   2003   2004   2005   2006
       $2.?   $3.0?  $3.0   $2.?** $2.?

* Discretionary cash flow defined as net cash provided by operating activities less capital expenditures.
** Includes the impact of one-time tax payment related to sugar confectionery business in 2005 of $0.4 billion.
2005 results reflect a 53-week year, all other years reflect a 52-week year.

Dividends Per Share ($)



$1.00 · · · ·
0.75
0.50
0.25
0.00
        2002   2003   2004   2005   2006
       $0.56  $0.66  $0.77  $0.87  $0.96

---

 

Selected Financial Data—Five Year Review (in millions of dollars, except per share data)

| Summary of Operations: | 2002 | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|---|
| Net revenues | $ 29,248 | $ 30,498 | $ 32,168 | $ 34,113 | $ 34,356 |
| Cost of sales | 17,463 | 18,531 | 20,281 | 21,845 | 21,940 |
| Operating income | 5,961 | 5,860 | 4,612 | 4,752 | 4,526 |
| Interest and other debt expense, net | 847 | 685 | 666 | 636 | 510 |
| Earnings from continuing operations, before income taxes and minority interest | 5,114 | 5,195 | 3,946 | 4,116 | 4,016 |
| Pre-tax profit margin from continuing operations | 17.5% | 17.0% | 12.3% | 12.1% | 11.7% |
| Provision for income taxes | 1,813 | 1,812 | 1,274 | 1,209 | 951 |
| Minority interest in earnings from continuing operations, net | 4 | 4 | 3 | 3 | 5 |
| (Loss) earnings from discontinued operations, net of income taxes | 97 | 97 | (4) | (272) | — |
| Net earnings | 3,394 | 3,476 | 2,665 | 2,632 | 3,060 |
| Basic EPS: | | | | | |
| Continuing operations | 1.90 | 1.95 | 1.56 | 1.72 | 1.86 |
| Discounted operations | 0.06 | 0.06 | — | (0.16) | — |
| Net earnings | 1.96 | 2.01 | 1.56 | 1.56 | 1.86 |
| Diluted EPS: | | | | | |
| Continuing operations | 1.90 | 1.95 | 1.55 | 1.72 | 1.85 |
| Discontinued operations | 0.06 | 0.06 | — | (0.17) | — |
| Net earnings | 1.96 | 2.01 | 1.55 | 1.55 | 1.85 |
| Dividends declared per share | 0.56 | 0.66 | 0.77 | 0.87 | 0.96 |
| Weighted average shares (millions)—Basic | 1,734 | 1,727 | 1,709 | 1,684 | 1,643 |
| Weighted average shares (millions)—Diluted | 1,736 | 1,728 | 1,714 | 1,693 | 1,655 |
| Capital expenditures | 1,184 | 1,085 | 1,006 | 1,171 | 1,169 |
| Depreciation | 709 | 804 | 868 | 869 | 884 |
| Property, plant and equipment, net | 9,559 | 10,155 | 9,985 | 9,817 | 9,693 |
| Inventories | 3,382 | 3,343 | 3,447 | 3,343 | 3,506 |
| Total assets | 57,100 | 59,285 | 59,928 | 57,628 | 55,574 |
| Long-term debt | 10,416 | 11,591 | 9,723 | 8,475 | 7,081 |
| Notes payable to Altria Group, Inc. and affiliates | 2,560 | — | — | — | — |
| Total debt | 14,443 | 13,462 | 12,518 | 11,200 | 10,821 |
| Total deferred income taxes | 4,917 | 5,175 | 5,719 | 5,188 | 3,582 |
| Shareholders' equity | 25,832 | 28,530 | 29,911 | 29,593 | 28,555 |
| Common dividends declared as a % of Basic EPS | 28.6% | 32.8% | 49.4% | 55.8% | 51.6% |
| Common dividends declared as a % of Diluted EPS | 28.6% | 32.8% | 49.7% | 56.1% | 51.9% |
| Book value per common share outstanding | 14.92 | 16.57 | 17.54 | 17.72 | 17.45 |
| Market price per Class A common share—high/low | 43.95-32.50 | 39.40-26.35 | 36.06-29.45 | 35.65-27.88 | 36.67-27.44 |
| Closing price of Class A common share at year end | 38.93 | 32.22 | 35.61 | 28.17 | 35.70 |
| Price/earnings ratio at year end—Basic | 20 | 16 | 23 | 18 | 19 |
| Price/earnings ratio at year end—Diluted | 20 | 16 | 23 | 18 | 19 |
| Number of common shares outstanding at year end (millions) | 1,731 | 1,722 | 1,705 | 1,670 | 1,636 |
| Number of employees | 109,000 | 106,000 | 98,000 | 94,000 | 90,000 |

## Cautionary Statement

This fact sheet contains forward-looking statements, which are statements that do not relate strictly to historical or current facts. These statements are subject to risks and uncertainties. For a description of the risk and uncertainties that could cause actual results to differ from those contained in our forward-looking statements, please see our filings with the Securities and Exchange Commission, including our most recently filed Annual Report on Form 10-K and our subsequent reports on Form 10-Q. Our forward-looking statements speak only as of the date they are made, and we do not undertake any obligation to update any forward-looking statement to reflect events or circumstances that may occur after the date that we make the statement.

## Key Contacts

### Corporate Offices

Kraft Foods Inc.
3 Lakes Drive
Northfield, IL 60093
www.kraft.com

### Investor Relations

847-646-5494
Email: ir@kraft.com
www.kraft.com/investors

Shareholder Account Assistance
Investment Plan for Kraft Foods

Computershare Trust Company
250 Royall Street
Canton, MA 02021
By phone: 1-866-655-7238




B - 28

Timeline

















































Exhibit "C"

## Nutrition Facts

Serving Size 1/4 package (11g)
Servings Per Container 4

| Amount Per Serving | As Packaged | 1/2 cup Prepared with Fat Free Milk |
|---|---|---|
| Calories | 35 | 80 |
| Calories from Fat | 0 | 0 |

| | % Daily Value** | |
|---|---|---|
| Total Fat 0g* | 0% | 0% |
| Saturated Fat 0g | 0% | 0% |
| Trans Fat 0g | | |
| Cholesterol 0mg | 0% | 0% |
| Sodium 310mg | 13% | 15% |
| Total Carbohydrate 8g | 3% | 5% |
| Dietary Fiber <1g | 3% | 3% |
| Sugars 0g | | |
| Protein <1g | | |
| Vitamin A | 0% | 4% |
| Vitamin C | 0% | 0% |
| Calcium | 0% | 15% |
| Iron | 4% | 4% |

* Amount in dry mix
** Percent Daily Values are based on a 2,000 calorie diet.

Calorie Comparison: This product-80 Regular Instant Pudding-160

▼ OPEN HERE ▼

▼ OPEN HERE ▼

jell-o.com
1-800-431-1002

**FILLING & PUDDING DIRECTIONS:**

① BEAT 2 cups cold fat free milk into pudding mix with wire whisk 2 minutes.

② POUR at once into Individual serving dishes. Pudding will be set and ready to eat in 5 minutes. Makes 4 (1/2 cup) servings.

---

### JELL-O® PUDDING PARFAIT:

① PREPARE JELL-O® Pudding as directed on back of package. Spoon evenly into 4 dessert dishes. Refrigerate at least 1 hour.

② TOP each dessert with 1/4 cup sliced bananas or strawberries and 2 Tbsp. thawed COOL WHIP FREE™ Whipped Topping just before serving. Makes 4 servings, about 2/3 cup each.

4860G2

0 40000 39700900

## JELL-O®
### BRAND
#### Chocolate FLAVOR

Chocolate FLAVOR

### Calci-YUM!™
A Good Source of Calcium as Prepared

## JELL-O®
### BRAND
### Sugar Free · Fat Free

REDUCED CALORIE PUDDING & PIE FILLING • 1/3 FEWER CALORIES THAN REGULAR PUDDING

K D

Four 1/2-cup servings

### Instant

#### Chocolate FLAVOR

NET WT 1.4 OZ (39g)

---

**TRADITIONAL PUDDING PIE:** Makes 8 servings

① BEAT pudding mix into 1-3/4 cups milk in bowl with wire whisk 1 minute. (For fuller pie, use 2 pkg. [4-serving size each] and 2-3/4 cups milk).

② POUR at once into 9-inch HONEY MAID® Graham Pie Crust. Refrigerate at least 1 hour 3 hours for fuller pie) or until set.

Note: Pudding will not set if made with soy milk.

C   31

INGREDIENTS: SUGAR, MO
FOOD STARCH, CONTAINS 2 PE
THAN 2% OF NATURAL FL
DISODIUM PHOSPHATE AND
TETRASODIUM PYROPHOS
(FOR THICKENING), MON
DIGLYCERIDES (PR
FOAMING), YELLO
BHA (PRESERVATIVE)

KRAFT FOODS NORTH AMER
DIVISION OF KRAFT FOODS GLO
TARRYTOWN, NY 10591
© KF HOLDINGS

jell-o.com
1-800-431-1001

## 5 MINUTE PUDDING DIRECTIONS

❶ BEAT pudding
into 2 cups cold
bowl with wire w
2 minutes.

❷ POUR at
individual serving
Pudding will be
and ready to eat
5 minutes. Makes
4 (1/2cup) serving

▲ OPEN HERE ▲

## Nutrition Facts

Serving Size 1/4 package (25g)
Servings Per Container: 4

| | Amount Per Serving | As Packaged | As 1/2 cup Prepared With 2% Reduced Fat Milk |
|---|---|---|---|
| Calories | | 90 | 150 |
| Calories from Fat | | 0 | 20 |

| | % Daily Value** | |
|---|---|---|
| Total Fat 0g* | 0% | 4% |
| Saturated Fat 0g | 0% | 8% |
| Trans Fat 0g | | |
| Cholesterol 0mg | 0% | 3% |
| Sodium 310mg | 13% | 15% |
| Total Carbohydrate 24g | 8% | 10% |
| Dietary Fiber 0g | 0% | 0% |
| Sugars 19g | | |
| Protein 0g | | |
| Vitamin A | 0% | 4% |
| Vitamin C | 0% | 0% |
| Calcium | 0% | 15% |
| Iron | 0% | 0% |

*Amount in dry mix
**Percent Daily Values are based on a 2,000 calorie diet.



JELL-O® BRAND
Instant
PUDDING & PIE FILLING

Lemon ARTIFICIAL FLAVOR

## JELL-O® PUDDING MIX-INS: Makes 4 Servings

❶ PREPARE JELL-O® Pudding as directed on package.

❷ TRY these great ideas to mix in your pudding:
• 1 cup strawberries or banana slices
• 1 cup JET-PUFFED® Miniature Marshmallows
• 1 cup PLANTERS® Peanuts
Or 1 cup any combination of the above

4B60G2

04000337300600

Lemon ARTIFICIAL FLAVOR
Best When Used By

Calci-YUM!
A Good Source of Calcium as Prepared

# JELL-O®
BRAND

Instant
PUDDING & PIE FILLING

Ⓚ

Four
1/2-cup
servings

NET WT
3.4 OZ (96g)

Lemon ARTIFICIAL FLAVOR

## TRADITIONAL PUDDING PIE: Makes 8 Servings

❶ PREPARE as directed for pudding, reducing milk to 1-3/4 cups.
(For fuller pie, use 2 pkg. [4-serving size each] and 2-3/4 cups milk)

❷ POUR at once into 9-inch HONEY MAID® Graham Cracker Pie Crust.
Refrigerate at least 1 hour (3 hours for fuller pie) or until set.

JELL-O®
BRAND

0400337300

C-32

16
+2
1
2
6

INGREDIENTS: SUGAR, DEXTROSE, CORNSTARCH, MODIFIED CORNSTARCH, CONTAINS LESS THAN 2% OF NATURAL AND ARTIFICIAL FLAVOR, SALT, CALCIUM CARRAGEENAN (THICKENING), POLYSORBATE 60 (PREVENTS SCORCHING), YELLOW 5.

KRAFT FOODS NORTH AMERICA, INC. DIVISION OF KRAFT FOODS GLOBAL, INC. TARRYTOWN, NY 10591 USA
® KF HOLDINGS

## Nutrition Facts
Serving Size 1/4 package (22g)
Servings Per Container 4

| Amount Per Serving | As Packaged | As 1/2 cup Prepared With 2% Reduced Fat Milk |
|---|---|---|
| Calories | 80 | 140 |
| Calories from Fat | 0 | 20 |

| | % Daily Value** | |
|---|---|---|
| Total Fat 0g* | 0% | 4% |
| Saturated Fat 0g | 0% | 8% |
| Trans Fat 0g | | |
| Cholesterol 0mg | 0% | 3% |
| Sodium 135mg | 6% | 8% |
| Total Carbohydrate 21g | 7% | 9% |
| Dietary Fiber 0g | 0% | 0% |
| Sugars 18g | | |
| Protein 0g | | |
| Vitamin A | 0% | 4% |
| Vitamin C | 0% | 0% |
| Calcium | 0% | 15% |
| Iron | 0% | 0% |

*Amount in dry mix
**Percent Daily Values are based on a 2,000 calorie diet.

PUDDING DIRECTIONS:
① STIR mix into 2 cups milk in medium saucepan.
② COOK on medium heat until mixture comes to a full boil, stirring constantly.
③ POUR into dessert dishes. Serve warm or chilled. Store leftover pudding in refrigerator.
Makes 4 (1/2-cup) servings.

*Fat free, 1% lowfat, or lactose-reduced milk may be used but may result in a softer set. Do not use nonfat dry milk—pudding will be thin.

jell-o.com
1-800-431-1001

▲ ▼ OPEN HERE ▲ ▼

JELL-O® BRAND
*Cook & Serve*
Vanilla ARTIFICIAL FLAVOR

JELL-O® PUDDING MIX-INS:
① Prepare pudding as directed on pkg.; cool 5 min.
② Stir in one of the following:
• 1 finely chopped square BAKER'S® Semi-Sweet Baking Chocolate
• 1/2 cup chopped banana
• 1/2 cup coarsely chopped NILLA® Wafers
Makes 4 servings, about 1/2 cup each.

4860G2



Calci-YUM!
Good Source of Calcium as Prepared.
JELL-O® BRAND
*Cook & Serve*

Ⓚ D
Pudding & Pie Filling
Four 1/2-cup servings

NET WT 3 OZ (85g)

Vanilla ARTIFICIAL FLAVOR

Vanilla
Best When Used By

TRADITIONAL PIE DIRECTIONS: Makes 6 servings
① PREPARE as directed for pudding. Cool 5 min., stirring twice.
② POUR into cooled 9-inch baked pastry crust or HONEY MAID® Graham Pie Crust. For deep-dish pastry crust, use 2 pkg. (4-serving size each) pudding and 3-1/2 cups milk.
③ REFRIGERATE at least 3 hours (for fuller pie) or until set. Store in refrigerator.

MICROWAVE DIRECTIONS:
① STIR mix into 2 cups milk in 1-1/2-qt. microwaveable bowl.
② MICROWAVE on HIGH 6 min.


040127


C-33

Exhibit "D"



**KRAFT**
**kraftfoods.com**
deliciously simple. everyday.

Save recipes to your NEW personal Recipe Box!    7.19.2007

About Kraft | Shop Kraft | Contact Us | Sign in/Join    Search Kraft: _____ GO

Recipe Search | Community | Dinner | Food & Family | Cooking School | **Healthy Living** | Promotions | Products



OR

Select one

Select one

Get **FREE** ideas and recipes
e-mailed to you each week!

INSTANT WIN GAME!

### Power Up Your Diet For Strong Bones

Treat yourself and your family to the gift of strong bones. Getting enough calcium in your diet and being physically active are key contributors to strong bones for women of all ages.

It is estimated that 9 out of 10 females ages 13 to 51+ are not getting the daily recommended amount of calcium. "Despite calcium-rich dairy products and other foods that are fortified with calcium, people, especially teenagers and the elderly, aren't getting enough. It has reached a crisis level in America," says Dr. Robert P. Heaney, a calcium and osteoporosis expert at Creighton University in Omaha.

How Much Calcium Do I Need?

| Age | Calcium (mg) |
|---|---|
| 1-3 years | 500 |
| 4-8 years | 800 |
| 9-18 years | 1300 |
| 19-50 years | 1000 |
| 51 years + | 1200 |

*Source: Institute of Medicine, 1997*

Suppose you are aiming for 1000 mg calcium every day. How do you get there? Start by reading the Nutrition Facts panel and simply count up your calcium. Choose 2-3 servings of calcium-rich dairy foods. For example, milk contains 300 mg per 8 ounces, as does 1 ½ ounces of cheese. But there are plenty of other foods that contain calcium. See the list below for examples of foods that can help you meet your calcium quota:

| Food | Calcium (mg) per serving |
|---|---|
| Milk, 2% reduced fat (1 cup) | 300 |
| Calcium-fortified orange juice (1 cup) | 300 |
| KRAFT 2% Milk Singles (3/4 ounce slice) | 250 |
| Salmon, canned with bone (3 ounces) | 200 |
| KRAFT 2% Milk Reduced Fat Natural Cheese (1 ounce) | 200 |
| LIGHT N' LIVELY Cottage Cheese with Added Calcium (1/2 cup) | 200 |

| | |
|---|---|
| TOMBSTONE Cheese Pizza (1/4 of 12" pie) | 200 |
| JELL-O INSTANT Pudding (1/2 cup) | 150 |
| LIGHT N" LIVELY Yogurt (1/2 cup) | 100 |
| Waffle, frozen, ready-to-eat with added calcium (2 waffles, about 70g) | 100 |
| TEDDY GRAHAMS Honey, Cinnamon or Chocolate Graham Snacks (24 pieces) | 100 |
| Broccoli, cooked (1/2 cup) | 40 |

Calcium containing foods can be enjoyed at every meal. If keeping tabs on calories and fat has you cutting back on dairy foods, try the many lower fat and fat-free varieties of milk, cheese and yogurt.

Weight-bearing exercise may also strengthen bones and slow the rate of bone loss. Exercises that are weight bearing include walking, jogging, dancing, playing tennis or basketball, jumping rope and aerobic dance. However, the benefits of exercise last only as long as you maintain the program. Build up to 30 minutes, three times per week of weight-bearing activities.

Explore all the easy and delicious ways to make calcium-rich foods a part of your regular menu. Bone-up on calcium!

| Kraft Corporate Site | International Sites | Comida Kraft | Kraft Canada | Kraft Military | Kraft Food Service | Privacy | Copyright |

Exhibit "E"

Calci Yum dairy food



E - 38

## calorie-count
from **About.com** Health

help | bookmark | contact | tell a friend

[Search field] Search

More than 479,640 members

**Calories in Tropical Calci-Yum
Monster Calcium Fruit Smoothie
Blend**

Manufactured by Odwalla

[ Add item to food log ]

[ Create a free account ]

**Legend**

☒ Fat
☒ Protein
☒ Carbs
■ Alcohol
☐ Other

# Nutrition Facts

Serving Size 8 fl oz (240.0 g)

| Amount Per Serving | |
|---|---|
| **Calories** 160 | Calories from Fat 0 |
| | % Daily Value* |
| **Total Fat** 0.0g | **0%** |
| **Sodium** 10mg | **0%** |
| **Total Carbohydrates** 38.0g | **13%** |
| Dietary Fiber 1.0g | **4%** |
| Sugars 31.0g | |
| **Protein** 1.0g | |
| Vitamin A 0%   •   Vitamin C 90% | |
| Calcium 50%   •   Iron 0% | |
| * Based on a 2000 calorie diet | |

**Calorie Breakdown** (?)



**Daily Values** (?)



## Nutritional Analysis

**Nutrition
Grade**

22% confidence

 **B+**

Bad Grade?

**Good points**
Very low in sodium
Very high in calcium
Very high in vitamin C

**Bad points**
Very high in sugar

In order to analyze your entire menu, create a free account.

## Hot on Calorie-Count

Popular topics from our forums.

- how am I gonna do this?
- Does anyone know of some natural diuretics?

**E - 39**

- What to do with clothes that don't fit? Hand them down...
- Alli Anyone?
- SO CONFUSED! please help!



©2003-2007 Calorie-Count.com. A part of About, Inc., All Rights Reserved. Terms & Conditions
©2007 About, Inc., A part of The New York Times Company. All Rights Reserved.

E - 40



KosherVitamins.com   Order By Phone: 1-800-645-1899

| Home | Brands | Departments | Specials | Best-Sellers | Encyclopedia | Ask The Nutritionist |

SHOP BY

**Brands**
**Products A-Z**
**Departments**
Vitamins & Supplements
Herbal Supplements
Children's Supplements
Personal Care
Natural Grocery
Herbal Teas/Throat Drops
Juicers
Misc.

FIND A PRODUCT
Enter a keyword below


Resource Center

**Nutritionist**
**Encyclopedia**
**Reference Library**
**Contact Us**
**About Us**


Contact Sales
1-800-645-1899


VeriSign Secured
VERIFY

Shipping & Delivery
Placing an Order
Returns Policy
Payment Methods
Privacy Policy
Security Policy

TOP > Vitamins & Supplements > Minerals > Calcium

## Maxi Health Chewable Calcium (Calci-Yum) Natural Chocolate Flavor  180 Chewies
Product # MXS-17118




See all MAXI HEALTH products


Click here to learn about this hechsher.

| List Price: | $31.95 |
| Our Price: | $22.37 |
| You Save: | 30% |

Qty: 1     ADD TO CART

Shopping Cart

your cart is currently empty

Free Delivery on most orders over $100!

view cart     CHECKOUT

**Description:**
Chewable Calcium with Magnesium and Vitamin D
**For children and adults with minimal dairy intake**
Supports healthy, strong bone and

## Supplement Facts

Serving Size 4 tablets
Servings Per Container 45

| Amount Per Serving | | % DV |
|---|---|---|
| Calories | 21 | |
| Total Carbohydrate | 5.2 g | <2% |
| Dietary Fiber | 0.1 g | <1% |
| Sugars | 4.9 g | ** |
| Other Carbohydrates | 0.3 g | ** |
| Calcium (as calcium carbonate, citrate) | 1000 mg | 100% |
| Vitamin D (as cholecalciferol) | 400 IU | 100% |
| Magnesium (as magnesium | 200 mg | 50% |

E - 41

oxide, citrate)

*Percent Daily Values are based on 2,000 calorie diet *%DV (Daily Value) not established

**Ingredients:**
Sucrose, fructose, maltodextrin, natural flavors, acacia, cocoa, vegetable stearine, magnesium stearate, Enzymax® (calcium carbonate, bromelain, papain, lipase, amylase, protease, silica).

**Recommend Use:**
Store tightly closed in a cool, dry place. Keep out of reach of children. Chew four (4) tablets daily, or as directed

**Food Sensitivity:**
This product contains no animal products, wheat, salt, milk, yeast, artificial flavors, colorings or preservatives.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.*

The products and the claims made about specific products on or through this site have not been evaluated by KosherVitamins.com or the United States Food and Drug Administration and are not approved to diagnose, treat, cure or prevent disease. The information provided on this site is for informational purposes only and is not intended as a substitute for advice from your physician or other health care professional or any information contained on or in any product label or packaging. You should not use the information on this site for diagnosis or treatment of any health problem or for prescription of any medication or other treatment. You should consult with a healthcare professional before starting any diet, exercise or supplementation program, before taking any medication, or if you have or suspect you might have a health problem.
© 2005 Kosher Vitamins Express. All Rights Reserved.
Report a bug on KosherVitamins.com

E - 42

JS44
(Rev. 07/89)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

FILED

07 NOV 16 PM 2: 46

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ADRIANNE SMITH, as an individual and on behalf of all others similarly situated, | KRAFT FOODS, INC., a Virginia corporation,, |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    San Diego, CA (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Harold M. Hewell, Hewell Law Firm, APC 402 W. Broadway, 4th Fl, San Diego, CA 92101 Tel: (619) 235-6854 · Fax: (619) 235-9122 | ATTORNEYS (IF KNOWN) '07 CV 2192    BEN CAB |
|---|---|

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- 2 U.S. Government Defendant
- 3 Federal Question (U.S. Government Not a Party)
- X 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | • 1 | Incorporated or Principal Place of Business in This State | • 4 | • 4 |
| Citizen of Another State | • 2 | • 2 | Incorporated and Principal Place of Business in Another State | • 5 | X 5 |
| Citizen or Subject of a Foreign Country | • 3 | • 3 | Foreign Nation | • 6 | • 6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

Diversity Jurisdiction under Class Action Fairness Act ("CAFA") of 2005, 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1332(d)(6)

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| • 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | • 610 Agriculture | • 422 Appeal 28 USC 158 | • 400 State Reapportionment |
| • 120 Marine | • 310 Airplane | • 362 Personal Injury- Medical Malpractice | • 620 Other Food & Drug | • 423 Withdrawal 28 USC 157 | • 410 Antitrust |
| • 130 Miller Act | • 315 Airplane Product Liability | | • 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | • 430 Banks and Banking |
| • 140 Negotiable Instrument | • 320 Assault, Libel & Slander | • 365 Personal Injury - Product Liability | • 630 Liquor Laws | • 820 Copyrights | • 450 Commerce/ICC Rates/etc. |
| • 150 Recovery of Overpayment &Enforcement of Judgment | • 330 Federal Employers' Liability | • 368 Asbestos Personal Injury Product Liability | • 640 RR & Truck | • 830 Patent | • 460 Deportation |
| • 151 Medicare Act | • 340 Marine | **PERSONAL PROPERTY** | • 650 Airline Regs | • 840 Trademark | • 470 Racketeer Influenced and Corrupt Organizations |
| • 152 Recovery of Defaulted Student Loans (Excl. Veterans) | • 345 Marine Product Liability | • 370 Other Fraud | • 660 Occupational Safety/Health | **SOCIAL SECURITY** | • 810 Selective Service |
| • 153 Recovery of Overpayment of Veterans Benefits | • 350 Motor Vehicle | • 371 Truth in Lending | • 690 Other | • 861 HIA (1395ff) | • 850 Securities/Commodities Exchange |
| • 160 Stockholders Suits | • 355 Motor Vehicle Product Liability | • 380 Other Personal Property Damage | **LABOR** | • 862 Black Lung (923) | • 875 Customer Challenge 12 USC |
| • 190 Other Contract | • 360 Other Personal Injury | • 385 Property Damage Product Liability | • 710 Fair Labor Standards Act | • 863 DIWC/DIWW (405(g)) | • 891 Agricultural Acts |
| • 195 Contract Product Liability | | | • 720 Labor/Mgmt. Relations | • 864 SSID Title XVI | • 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | • 730 Labor/Mgmt. Reporting & Disclosure Act | • 865 RSI (405(g)) | • 893 Environmental Matters |
| • 210 Land Condemnation | • 441 Voting | • 510 Motions to Vacate Sentence Habeas Corpus | • 740 Railway Labor Act | **FEDERAL TAX SUITS** | • 894 Energy Allocation Act |
| • 220 Foreclosure | • 442 Employment | • 530 General | • 790 Other Labor Litigation | • 870 Taxes (U.S. Plaintiff or Defendant) | • 895 Freedom of Information Act |
| • 230 Rent Lease & Ejectment | • 443 Housing/Accommodations | • 535 Death Penalty | • 791 Empl. Ret. Inc. Security Act | • 871 IRS - Third Party 26 USC 7609 | • 900 Appeal of Fee Determination Under Equal Access to Justice |
| • 240 Tort to Land | • 444 Welfare | • 540 Mandamus & Other | | | • 950 Constitutionality of State |
| • 245 Tort Product Liability | • 440 Other Civil Rights | • 550 Civil Rights | | | X 890 Other Statutory Actions |
| • 290 All Other Real Property | | • 555 Prisoner Conditions | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

X 1 Original Proceeding   • 2 Removal from State Court   • 3 Remanded from Appellate Court   • 4 Reinstated or Reopened   • 5 Transferred from another district (specify)   • 6 Multidistrict Litigation   • 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: $5,000,000 | • CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND Equitable relief and damages to be determined | Check YES only if demanded in complaint: JURY DEMAND X YES • NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See Instructions): | JUDGE | | Docket Number |
|---|---|---|---|

| DATE 11/15/07 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

# 144605  11/16/07

B3505

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

(Electronic Signature)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should completed the form as follows:

I.(a) Plaintiffs - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giveing both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place the "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, it officers or agencies, place an X in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

V. Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action , in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI. Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

VII. Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. Related Cases. This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.
(rev. 07/89)

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**#  144605      — SR**

**November 16, 2007**
**14:46:42**

**Civ Fil Non-Pris**
USAO #.: O7CV2192 CIV. FIL.
Judge..: ROGER T BENITEZ
Amount.:                    $350.00 CK
Check#.: BC#9422

**Total-> $350.00**

FROM: SMITH V. KRAFT FOODS
        CIVIL FILING