1   Noah A. Katsell (Bar No. 217090)
    noah.katsell@dlapiper.com
2   **DLA PIPER US LLP**
    401 B Street, Suite 1700
3   San Diego, CA  92101-4297
    Tel:  619.699.2700
4   Fax:  619.699.2701

5   Amy Weinfeld Schulman (To apply pro hac vice)
    amy.schulman@dlapiper.com
6   **DLA PIPER US LLP**
    1251 Avenue of the Americas
7   New York, NY  10020-1104
    Tel:  212.335.4500
8   Fax:  212.335.4501

9   Attorneys for Defendant
    Kraft Foods Global, Inc.

10

11                  UNITED STATES DISTRICT COURT

12                SOUTHERN DISTRICT OF CALIFORNIA

13

14  ADRIANNE SMITH, as an individual and          CASE NO.  07 CV 2192 BEN (CAB)
    on behalf of all others similarly situated,
15                                                 Assigned to Hon. Roger T. Benitez
16              Plaintiff,                         **DEFENDANT KRAFT FOODS GLOBAL,
                                                   INC.'S MEMORANDUM OF POINTS AND
17          v.                                     AUTHORITIES IN SUPPORT OF ITS
                                                   MOTION TO DISMISS**
18
19  KRAFT FOODS, INC., a Virginia                  [Filed concurrently with (1) Notice of Motion
    corporation,                                   and Motion to Dismiss and (2) Request for
                                                   Judicial Notice]
20
21              Defendant.                         Date:   April 21, 2008
                                                   Time:   10:30 a.m.
22                                                 Place:  Courtroom 3

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION ...................................................................................................... 1

II.  SUMMARY OF ALLEGATIONS ........................................................................... 1

III.  PLEADINGS STANDARDS UNDER 12(B)(6) ...................................................... 3

IV.  PLAINTIFF'S UCL, FAL, AND CLRA CLAIMS ARE DEFICIENT ................... 3

    A.  Plaintiff Cannot Allege A Statement Likely To Deceive A
    Reasonable Consumer ..................................................................................... 3

        1.  The Statements On Jell-O Packaging Are True And The
        Relevant Information Is Readily Available ........................................... 5

        2.  The Statement That Jell-O Is "Calci-Yum!" Is Non-actionable
        Puffery ................................................................................................. 7

    B.  Plaintiff Cannot Allege A Legally Cognizable Injury ..................................... 8

V.  PLAINTIFF'S MISREPRESENTATION CLAIMS ARE DEFICIENT ..................... 10

    A.  Plaintiff Cannot Allege Falsity ..................................................................... 10

    B.  Plaintiff Cannot Allege Justifiable Reliance ................................................ 10

    C.  Plaintiff Cannot Allege Damages ................................................................. 11

    D.  Plaintiff Fails To Plead Fraud With Particularity ........................................ 12

VI.  PLAINTIFF'S BREACH OF EXPRESS WARRANTY CLAIM IS
DEFICIENT ............................................................................................................ 13

    A.  Plaintiff Cannot Allege Breach Of Express Warranty ................................. 13

    B.  Plaintiff Cannot Allege Damages ................................................................. 14

VII.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS DEFICIENT ........................ 14

VIII.  PLAINTIFF'S COMPLAINT CONFLICTS WITH FEDERAL LAW ................... 15

IX.  CONCLUSION ...................................................................................................... 17

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

Alliance Mortgage Co. v. Rothwell,
    10 Cal. 4th 1226, 1240 (1995) ................................................................ 12

4

Am. Bioscience, Inc. v. Bristol Meyers Squibb Co.,
5
    No. CV 00-8577-WMB, 2000 WL 1278348, at *1 (C.D. Cal. Sept. 7, 2000) .............. 16

6

Atari Corp. v. The 3DO Co.,
    1994 WL 723601 (N.D. Cal. May 16, 1994) ......................................... 7, 8

7

8

Bardin v. DaimlerChrysler Corp.,
    136 Cal. App. 4th 1255, 1274–76 (2006) ............................................... 4

9

Bell Atlantic Corp. v. Twombly,
    550 U.S.    , No. 05-1126, 2007 WL 1461066, at *8 (May 21, 2007) ............................ 3

10

11

Belton v. Comcast Cable Holdings, LLC,
    151 Cal. App. 4th 1224, 1241–42 (2007) .............................................. 4

12

Bldg. Permit Consultants, Inc. v. Mazur,
    122 Cal. App. 4th 1400, 1415 (2004) ................................................. 11

13

14

Bly-Magee v. California,
    236 F.3d 1014, 1019 (9th Cir. 2001) ............................................. 12-13

15

BP West Coast Prods., LLC v. Greene,
    318 F. Supp. 2d 987, 994 (E.D. Cal. 2004)........................................ 6

16

17

Brockey v. Moore,
    107 Cal. App. 4th 86, 100 (2003)................................................... 4

18

Brown v. Super. Ct.,
    751 P.2d 470, 484 (Cal. 1988) .................................................... 13

19

Buckman Co. v. Plaintiffs' Legal Comm.,
20
    531 U.S. 341, 352, 349 n.4 (2001) ............................................. 15, 16

21

Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.,
    94 Cal. App. 4th 151, 172 n.23 (2001) ........................................ 14-15

22

Chavez v. Blue Sky Natural Beverage Co.,
23
    No. C-06-6609, 2007 WL 1691249, at *4 (N.D. Cal. June 11, 2007) .................9, 11, 12

24

Colgan v. Leatherman Tool Group, Inc.,
    135 Cal. App. 4th 663, 696 (2006) ............................................. 8, 9

25

Consumer Advocates v. Echostar Satellite Corp.,
26
    113 Cal. App. 4th 1351, 1360 (2003).......................................... 4, 8

27

Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.,
    911 F.2d 242, 246 (9th Cir. 1990).............................................. 7-8

28

Cortez v. Purolater Air Filtration Prods. Co.,
    23 Cal. 4th 163, 174, 177 n.10 (2003) .................................................................. 9

Day v. AT&T Corp.,
    63 Cal. App. 4th 325, 339 (1998) .......................................................................... 9

Dowhal v. Smithkline Beecham Consumer Healthcare,
    32 Cal. 4th 910, 923–24 (2004) .......................................................................... 16

Dumas v. Kipp,
    90 F.3d 386, 393 (9th Cir. 1996) ............................................................................ 3

English v. Gen. Elec. Co.,
    496 U.S. 72, 78–79 (1990) .................................................................................... 16

First Nationwide Sav. v. Perry,
    11 Cal. App. 4th 1657, 1662 (1992) .................................................................... 14

Fragle v. Faulkner,
    110 Cal. App. 4th 229, 236 (2003) ...................................................................... 12

Fraker v. KFC Corp.,
    No. 06-CV-01284-JM, 2007 U.S. Dist. LEXIS 32041, at *10
    (S.D. Cal. April 30, 2007) ............................................................................. 15, 16

Freeman v. Time, Inc.,
    68 F.3d 285, 289–90 (9th Cir. 1995) ........................................................... 3, 4, 6-7

Glen Holly Entm't, Inc. v. Tektronix, Inc.,
    100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) ..................................................... 13

Goehring v. Chapman Univ.,
    121 Cal. App. 4th 353, 364 (2004) ...................................................................... 11

Guido v. Koopman,
    1 Cal. App. 4th 837, 843 (1991) .......................................................................... 11

Haskell v. Time, Inc.,
    857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ........................................................ 3, 4, 7

Heighley v. J.C. Penney Life Ins. Co.,
    257 F. Supp. 2d 1241, 1260 (C.D. Cal. 2003) ....................................................... 3

In re Seagate Tech. II Sec. Litig.,
    No. 88-20489, 1989 WL 222969, at *3 (N.D. Cal. May 3, 1989) ........................ 11

Johnson v. Fletcher,
    97 Cal. App. 153, 155 (1929) ............................................................................... 10

Kanter v. Warner-Lambert Co.,
    99 Cal. App. 4th 780, 795 (2002) ........................................................................ 16

DLA Piper US LLP
San Diego

Case No. 07 CV 2192 BEN (CAB)

Keith v. Buchanan,
     173 Cal. App. 3d 13, 20 (1985)...................................................................... 13

Laster v. T-Mobile USA, Inc.,
     407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005) ............................................... 8

Lavie v. Procter & Gamble Co.,
     105 Cal. App. 4th 496, 504 (2003)................................................................. 4

Lucas v. Dep't of Corrections,
     66 F.3d 245, 248 (9th Cir. 1995) ................................................................... 3

Lundquist v. Cont'l Cas. Co.,
     394 F. Supp. 2d 1230, 1243 (C.D. Cal. 2005) .............................................. 6

McBride v. Boughton,
     123 Cal. App. 4th 379, 387 (2004)............................................................... 14

McDonnell Douglas Corp. v. Thiokol Corp.,
     124 F.3d 1173, 1177–78 (9th Cir. 1997) ..................................................... 13

McDougall v. Roberts,
     43 Cal. App. 553, 556 (1919).................................................................... 10

Moore v. Kayport Package Exp., Inc.,
     885 F.2d 531, 540 (9th Cir. 1989)................................................................ 12

Nece v. Bennett,
     212 Cal. App. 2d 494, 497 (1963) ................................................................ 12

Neubronner v. Milken,
     6 F.3d 666, 671–72 (9th Cir. 1993)............................................................. 13

Ostayan v. Serrano Reconveyance Co.,
     77 Cal. App. 4th 1411, 1419 (2000)............................................................. 10

Papike v. Tambrands, Inc.,
     107 F.3d 737, 742 (9th Cir. 1997)................................................................ 16

People ex rel. Dep't of Motor Vehicles v. Cars 4 Causes,
     139 Cal. App. 4th 1006, 1016 (2006)............................................................. 4

Plotkin v. Sajahtera, Inc.,
     106 Cal. App. 4th 953, 965–66 (2003) ........................................................... 7

Reddy v. Litton Indus., Inc.,
     912 F.2d 291, 296 (9th Cir. 1990)................................................................. 3

Rodarte v. Philip Morris, Inc.,
     No. CV-03-0353-FMC, 2003 WL 23341208, at *5 (C.D. Cal. June 23, 2003)............. 14

Shvarts v. Budget Group, Inc.,
     81 Cal. App. 4th 1153, 1158–60 (2000) ................................................ 4, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sprewell v. Golden State Warriors,
    266 F.3d 979, 988 (9th Cir. 2001) ................................................................. 3

Stationary Eng'rs Local 39 Health & Welfare Trust Fund v. Philip
    Morris, Inc.,
    No. C-97-01519 DLJ, 1998 WL 476265, at *11 (N.D. Cal. April 30, 1998) ................ 11

Summit Tech., Inc. v. High-Line Med. Instruments,
    922 F. Supp. 299, 306 (C.D. Cal. 1996) ........................................................... 16

Universal By-Products, Inc. v. Modesto,
    43 Cal. App. 3d 145, 151 (1974) ................................................................... 10

Vess v. Ciba-Geigy Corp. USA,
    317 F.3d 1097, 1106 (9th Cir. 2003) ........................................................ 12, 13

Warren v. Fox Family Worldwide, Inc.,
    328 F.3d 1136, 1139 (9th Cir. 2003) ................................................................ 3

Wilhelm v. Pray, Price, Williams & Russell,
    186 Cal. App. 3d 1324, 1331–33 (1986) .......................................................... 11

**STATUTES**

21 U.S.C. § 343(r) ........................................................................................... 15

Cal. Bus. & Prof. Code § 17200 et seq. ................................................................. 1

Cal. Bus. & Prof. Code § 17500 et seq. ................................................................. 1

Cal. Bus. & Prof. Code §§ 17204, 17535 .............................................................. 8

Cal. Civ. Code § 1770, et seq. ............................................................................. 1

Cal. Civ. Code § 1780 ....................................................................................... 8

Cal. Civ. Code § 3343(a) ................................................................................. 12

Cal. Com. Code § 2313 .................................................................................... 13

Cal. Com. Code § 2714(2) ................................................................................ 14

**REGULATIONS**

21 C.F.R. §10.30 ............................................................................................ 17

21 C.F.R. §§ 101.54(c) .................................................................................... 15

21 C.F.R. § 101.9(d) ......................................................................................... 2

21 C.F.R. § 101.9(e) ..................................................................................... 2, 15

DLA Piper US LLP
San Diego

v

1

**RULES**

2   Fed. R. Civ. P. 9(b) .............................................................................................. 12

3   Fed. R. Civ. P. 12(b)(6).................................................................................... 1, 3

4

**OTHER AUTHORITIES**

5   Minutes of In Chambers Order by Hon. R. Gary Klausner,
        McKinnis v. Sunny Delight Beverages, Co., CV 07-02034-
6       RGK (JCx) (C.D. Cal. entered Sept. 4, 2007) ........................................... 5, 6, 7

7   Minutes of In Chambers Order by Hon. Gary Allen Feess,
        McKinnis v. General Mills, Inc., CV 07-2521 GAF (FMOx)
8       (C.D. Cal. entered Sept. 18, 2007) ............................................................... 5, 6

9   Minutes of In Chambers Order by Hon. Audrey B. Collins,
        McKinnis v. Kellogg USA, CV 07-2611 ABC (RCx) (C.D. Cal.
10      entered Sept. 19, 2007)............................................................................... 5, 6, 7

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

vi

1  **I.    INTRODUCTION**

2      Defendant Kraft Foods Global, Inc., erroneously sued as Kraft Foods, Inc., ("Kraft"),

3  manufactures Jell-O "Instant Pudding Pie Filling" and "Cook & Serve Pudding and Pie Filling"

4  (collectively, "Jell-O" or "the Products").  Jell-O labels state that the Products are "Calci-YUM!"

5  and "A Good Source of Calcium as Prepared." (See Compl., Exh. C.)  The Complaint alleges that

6  the "prominent use" of the word "Calci-YUM!" on Jell-O labels "leads the buying public into

7  believing that the Products are a delicious and substantial dietary source of calcium…." (Compl.

8  ¶ 11.)  When prepared as directed, each serving of Jell-O provides 15% of the daily recommended

9  intake of calcium, making Jell-O a "good source" of calcium under federal food labeling

10  regulations.  Plaintiff Adrianne Smith, purporting to represent the buying public, alleges that the

11  "advertising and marketing of the Products" led her to believe that the Products "contained

12  calcium as sold and that she was paying for a calcium-containing food." (Id. ¶ 16 (emphasis

13  supplied).)

14      Plaintiff alleges seven causes of action:  (1) violation of California's Unfair Competition

15  Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (2) violation of California's False

16  Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (3) negligent

17  misrepresentation; (4) intentional misrepresentation; (5) breach of express warranty; (6) unjust

18  enrichment; and (7) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ.

19  Code § 1770, et seq.  Because each of Plaintiff's claims lacks a necessary element that she does

20  not—and cannot—allege, and because pursuit of her claims would inevitably conflict with federal

21  law, Plaintiff's Complaint fails "to state a claim upon which relief can be granted" and should be

22  dismissed.  Fed. R. Civ. P. 12(b)(6).

23  **II.    SUMMARY OF ALLEGATIONS**

24      The Products that Plaintiff alleges she purchased do not contain ready-to-eat pudding.

25  Each box contains a dry powder that must be mixed with milk to prepare edible pudding, and the

26  back of the box provides clear directions for this preparation.  The preparation directions for Jell-

27  O "Instant Pudding & Pie Filling" are: "BEAT pudding mix into 2 cups cold milk in bowl with

28  wire whisk …. Pudding will be … ready to eat within 5 minutes."  The directions for Jell-O

"Cook & Serve Pudding & Pie Filling" are: "STIR mix into 2 cups milk in medium saucepan …. POUR into dessert dish…. Serve warm or chilled." [1] (Compl., Exh. C (emphasis in original).). The back of the package also includes a prominent "Nutrition Facts" panel that lists the nutrition information required by federal food labeling regulations promulgated by the Food and Drug Administration ("FDA").[2] As provided by these regulations, Jell-O's nutrition information is presented in a dual column format.[3] One column lists nutrition information for the dry, unprepared powder in the package (under the column heading "As Packaged"), and the other column presents nutrition information for prepared pudding (under the column heading "1/2 cup Prepared With 2% Reduced Fat Milk"). (Id.) Jell-O is a good source of calcium as prepared because each serving provides 15% of the recommended daily supply of calcium.

Plaintiff acknowledges that the pudding is a "source of nutritional calcium" when prepared as directed. (Id. ¶ 11; see also id. ¶ 16 (acknowledging that consumers obtain the nutritional benefits of calcium from the prepared pudding).) Plaintiff alleges, however, that the statement that Jell-O is "Calci-YUM!" is deceptive because a reasonable consumer would not interpret the words "As Prepared" to mean that the Products require the addition of milk. (Id. ¶ 16.) Plaintiff claims she only learned that the Products must be prepared with milk when "a friend pointed this out." (Id.) This "material fact," which Plaintiff alleges was withheld from her, appears prominently on the Products' label. (See Compl., Exh. C.) Indeed, the front panel of Jell-O "Cook & Serve Pudding & Pie Filling" depicts milk being poured into the pudding. (Id.)

Plaintiff has brought this litigation as a putative class action and asserts violations of the UCL, the FAL, and the CLRA, as well as causes of action for negligent and intentional misrepresentation, breach of express warranty, and unjust enrichment. Plaintiff seeks relief including an injunction, restitution, actual and punitive damages, pre- and post-judgment interest,

---

[1] Two of the side panels of the Products' packaging provide directions for the preparation of variations on traditional pudding. In each recipe, the first step is to "Prepare" the pudding as directed. (Compl., Exh. C.)

[2] See 21 C.F.R. § 101.9(d) (providing rules for the presentation of nutrition information and format of the "Nutrition Facts" panel).

[3] See 21 C.F.R. § 101.9(e) (providing for "dual labeling" of nutrition information for "two or more forms of the same food (e.g., both 'as purchased' and 'as prepared')").

1  and attorneys' fees and costs.  (See Compl. at 17-18 ("Prayer for Relief").)

2  **III.    PLEADING STANDARDS UNDER RULE 12(B)(6)**

3            Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for plaintiff's

4  "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  While the

5  factual allegations in a complaint are taken as true, "a plaintiff's obligation to provide the grounds

6  of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

7  the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. ___,

8  No. 05-1126, 2007 WL 1461066, at *8 (May 21, 2007) (citation, quotation marks, and alterations

9  omitted)(explaining that "[f]actual allegations must be enough to raise a right to relief above the

10  speculative level").  A court is not required "to accept as true allegations that are merely

11  conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden

12  State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also Warren v. Fox Family Worldwide,

13  Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  Furthermore, a court will not "assume the truth of

14  legal conclusions merely because they are cast in the form of factual allegations." Warren, 328

15  F.3d at 1139 (quotation marks omitted).  If a complaint does not meet these pleading standards, it

16  should be dismissed, and, if amendment would be futile, it should be dismissed with prejudice.

17  Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996); Lucas v. Dep't of Corrections, 66 F.3d 245,

18  248 (9th Cir. 1995); Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

19  **IV.    PLAINTIFF'S UCL, FAL, AND CLRA CLAIMS ARE DEFICIENT**

20        **A.    Plaintiff Cannot Allege A Statement Likely To Deceive A Reasonable**

21              **Consumer**

22            In order to state a claim under the UCL, FAL, or CLRA, Plaintiff must allege that

23  Defendant made statements that are likely to deceive a reasonable consumer. See Freeman v.

24  Time, Inc., 68 F.3d 285, 289–90 (9th Cir. 1995) (explaining that "false or misleading advertising

25  and unfair business practices claim[s] must be evaluated from the vantage of a reasonable

26  consumer[]") (quoting Haskell v. Time, Inc., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994));

27  Heighley v. J.C. Penney Life Ins. Co., 257 F. Supp. 2d 1241, 1260 (C.D. Cal. 2003) ("[T]he

28  plaintiff must prove that defendants' statements are misleading to a reasonable consumer");

DLA PIPER US LLP
SAN DIEGO

Case No. 07 CV 2192 BEN (CAB)

-3-

1  Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1360 (2003)

2  (explaining that an advertisement "is judged by the effect it would have on a reasonable

3  consumer[]"); Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 504 (2003) ("California

4  and federal courts applying the UCL … have consistently applied … an ordinary or 'reasonable

5  consumer' standard to evaluate unfair advertising claims").  The term "likely" means probable,

6  not just possible.  See Freeman, 68 F.3d at 289; see also People ex rel. Dep't of Motor Vehicles v.

7  Cars 4 Causes, 139 Cal. App. 4th 1006, 1016 (2006).  As the California Court of Appeal has

8  explained,

9      "Likely to deceive" implies more than a mere possibility that the advertisement
       might conceivably be misunderstood by some few consumers viewing it in an
10     unreasonable manner.  Rather, the phrase indicates that the ad is such that it is
       probable that a significant portion of the general consuming public or of targeted
11     consumers, acting reasonably in the circumstances, could be misled.

12  Lavie, 105 Cal. App. 4th at 508; see also Consumer Advocates, 113 Cal. App. 4th at 1360–62

13  (applying reasonable consumer test to UCL, FAL, and CLRA claims).

14          Whether a statement is likely to deceive a reasonable consumer is a legal question that a

15  court may determine as a matter of law on a motion to dismiss.  See Haskell, 857 F. Supp. at

16  1399–1402 (dismissing UCL and FAL claims after determining that alleged misrepresentations

17  were not likely to mislead a reasonable consumer); see also Belton v. Comcast Cable Holdings,

18  LLC, 151 Cal. App. 4th 1224, 1241–42 (2007) (affirming summary adjudication of UCL and

19  CLRA claims based on determination that members of the public were not likely to be deceived

20  as a matter of law); Bardin v. DaimlerChrysler Corp., 136 Cal. App. 4th 1255, 1274–76 (2006)

21  (affirming dismissal of UCL claim because plaintiff did not allege facts showing members of the

22  public were likely to be deceived or misled); Lavie, 105 Cal. App. 4th at 503 (explaining that

23  whether an advertisement is deceptive under the UCL is question of law); Shvarts v. Budget

24  Group, Inc., 81 Cal. App. 4th 1153, 1158–60 (2000) (affirming dismissal of action because

25  alleged misrepresentation would not mislead a reasonable consumer).  The "primary evidence" in

26  such an inquiry is the label or advertisement itself.  Brockey v. Moore, 107 Cal. App. 4th 86, 100

27  (2003) ("[T]he primary evidence in a false advertising case is the advertising itself.").

28

1

**1.      The Statements On Jell-O Packaging Are True And The Relevant**

2

**Information Is Readily Available**

3          Despite the clear statement that Jell-O is "A Good Source of Calcium <u>as Prepared</u>,"

4    Plaintiff alleges that the marketing word "Calci-YUM!" is deceptive because it led her to believe

5    that the Products "contained calcium <u>as sold</u> and that she was paying for a calcium-containing

6    food." (<u>Compare</u> Compl. Exh. C (emphasis added), <u>with</u> Compl. ¶ 16 (emphasis added).)

7    Plaintiff claims the words "as prepared" are "vague" and that she was "misled" by Defendant's

8    "omission of [the] material fact" that the Products are prepared with milk.  (<u>Id.</u> ¶ 16.) Jell-O

9    packages are clear that milk must be added to prepare the pudding and that the prepared pudding

10   consumers actually eat provides calcium.  The label provides explicit directions for preparing the

11   pudding.  Directions for the Instant Pudding instruct consumers that the "pudding mix" must be

12   beaten with "2 cups <u>cold</u> milk" for two minutes before it is "ready to eat," and directions for the

13   Cook & Serve Pudding instruct consumers to "STIR mix into 2 cups milk," bring to a boil, and

14   then allow the mixture to cool and thicken before serving.  (<u>Id.</u>, Exh. C.)  The label's "Nutrition

15   Facts" panel states that the dry powder mix does not contain calcium, but that the pudding, when

16   "Prepared With 2% Reduced Fat Milk," does.  (<u>Id.</u>)  Nonetheless, Plaintiff alleges that Jell-O

17   packaging is deceptive because the "nutritional panel … cannot be seen by the consumer standing

18   in the store aisle."  (<u>Id.</u> ¶ 16.)  Plaintiff's allegations are insufficient as a matter of law both

19   because the language on Jell-O packaging is true and because Plaintiff cannot allege that the

20   language is likely to deceive a reasonable consumer.

21          Ample California and federal authority holds that statements on food product packaging

22   are not likely to deceive a reasonable consumer where the statements are true and the relevant

23   information is readily available on the products' labels.  <u>See</u> Minutes of In Chambers Order by

24   Hon. R. Gary Klausner, <u>McKinnis v. Sunny Delight Beverages, Co.</u>, CV 07-02034-RGK (JCx)

25   (C.D. Cal. entered Sept. 4, 2007); Minutes of In Chambers Order by Hon. Gary Allen Feess,

26   <u>McKinnis v. General Mills, Inc.</u>, CV 07-2521 GAF (FMOx) (C.D. Cal. entered Sept. 18, 2007);

27   Minutes of In Chambers Order by Hon. Audrey B. Collins, <u>McKinnis v. Kellogg USA</u>, CV 07-

28

2611 ABC (RCx) (C.D. Cal. entered Sept. 19, 2007).[4]  In <u>Sunny Delight</u>, <u>General Mills</u> and

<u>Kellogg</u>, the District Court for the Central District of California dismissed UCL, FAL and CLRA

class actions alleging that depictions of fruit on food labels led consumers to believe that the

products contained more or different fruits and fruit juices than they actually contained.  In each

case, the court dismissed the claims with prejudice:  the plaintiffs could not allege that a

reasonable consumer was likely to be misled because the labels truthfully and accurately stated

the products' contents.  In <u>General Mills</u>, the plaintiff's claims failed because the manufacturer

"truthfully disclosed the ingredients for its product" and a reasonable consumer is "expected to

peruse the product's contents simply by reading the side of the box containing the ingredient list."

(See <u>General Mills</u> at 5 (attached as Exh. B to Def.'s Req. for Judicial Notice).)  In <u>Sunny</u>

<u>Delight</u>, the court explained why the plaintiff could not state a claim:

> No reasonable consumer, upon review of the label as a whole … would conclude Defendant's products contain significant quantities of fruit or fruit juice, particularly when the label … indicates the exact fruit content of each product. Nutritional labels have long been required on food products and are familiar to almost every reasonable consumer.

(See <u>Sunny Delight</u> at 4 (attached as Exh. A to Def.'s Req. for Judicial Notice).)  The <u>Kellogg</u>

court agreed, observing that the side panel of the package "lists all of the ingredients," and stating

that "Plaintiffs cannot claim surprise over these labels, which have long been required on food

products and are familiar to the reasonable consumer."  (See <u>Kellogg</u> at 5 (attached as Exh. C to

Def.'s Req. for Judicial Notice).)

Decisions outside the food arena also hold that a statement is not likely to deceive a

reasonable consumer where the pertinent information is readily available.  <u>See, e.g.</u>, <u>Freeman</u>, 68

---

[4] Kraft respectfully requests that the Court take judicial notice of these three orders.  It is proper for the Court to take judicial notice of these orders as they are "public records capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The allegations in the <u>Sunny Delight</u>, <u>General Mills</u>, and <u>Kellogg</u> complaints are substantially similar to those asserted here, and, in each case, the court's analysis and disposition are relevant to the arguments raised in Kraft's Motion to Dismiss.  <u>See, e.g.</u>, <u>Lundquist v. Cont'l Cas. Co.</u>, 394 F. Supp. 2d 1230, 1243 (C.D. Cal. 2005)(taking judicial notice of orders filed in the Central and Northern Districts of California as persuasive authority on the issue presented); <u>BP West Coast Prods., LLC v. Greene</u>, 318 F. Supp. 2d 987, 994 (E.D. Cal. 2004)(taking judicial notice of "the opinions, complaints, briefs, and evidence filed in other actions" in order to "review how other courts have addressed" the "arguments and contentions" raised in the controversy before it).  The orders are attached as exhibits to Defendant's Request for Judicial Notice, filed concurrently with this Motion.

1  F.3d at 289–90 (affirming dismissal because statements in solicitation materials of sweepstakes

2  that the plaintiff had won were not likely to mislead a reasonable consumer in light of qualifying

3  language in the materials); Haskell, 857 F. Supp. at 1399–1403 (dismissing claims based on

4  representations made in sweepstakes materials); Plotkin v. Sajahtera, Inc., 106 Cal. App. 4th 953,

5  965–66 (2003) (finding as a matter of law that imposing extra fees for valet parking service was

6  not likely to deceive a reasonable consumer because fees were disclosed on parking ticket);

7  Shvarts, 81 Cal. App. 4th at 1158–60 (affirming dismissal of action because rental car refueling

8  charges were printed in the rental agreement and therefore were not likely to mislead a reasonable

9  consumer).

10       Jell-O packages state that the Products are "Calci-YUM" and "A Good Source of Calcium

11  as Prepared." (See Compl., Exh. C.)  The Products' back panel directs consumers to prepare the

12  product with milk, and the "Nutrition Facts" panel lists Jell-O's calcium content in two separate

13  columns, both as packaged and when prepared with milk.  (Id.)  Nutrition labels "have long been

14  required on food products and are familiar to the reasonable consumer." (See Kellogg at 5.)  In

15  this case, even a "cursory" review of Jell-O's labels would inform a reasonable consumer that she

16  must prepare the product with milk before eating it, and that the prepared pudding provides 15%

17  of the recommended daily value of calcium.  (See Sunny Delight at 4.)  The information on Jell-O

18  labels is clear, truthful, and accurate.  As a matter of law, Plaintiff cannot assert that Jell-O

19  packaging is likely to deceive a reasonable consumer, and her UCL, FAL, and CLRA claims fail.

20            **2.      The Statement That Jell-O Is "Calci-YUM!" Is Non-actionable Puffery**

21       "Advertising that amounts to 'mere' puffery is not actionable because no reasonable

22  consumer relies on puffery.  The distinguishing characteristics of puffery are vague, highly

23  subjective claims as opposed to specific, detailed factual assertions." Haskell, 857 F. Supp. at

24  1399; see also Atari Corp. v. The 3DO Co., 1994 WL 723601 (N.D. Cal. May 16, 1994)

25  (dismissing UCL and FAL claims based on the determination that the statement "The Most

26  Advanced Home Gaming System in the Universe" was non-actionable puffery).  "The common

27  theme that seems to run through cases considering puffery … is that consumer reliance will be

28  induced by specific rather than general assertions." Cook, Perkiss and Liehe, Inc. v. N. Cal.

1  Collection Serv., Inc., 911 F.2d 242, 246 (9th Cir. 1990) (approving an Illinois district court's
2  decision that the statement that defendant's lamps were "far brighter than any lamp ever before"
3  was puffery, but the statement that the lamps provided "35,000 candle power and 10-hour life"
4  were not); see also Consumer Advocates, 113 Cal.App. at 1361 (ruling that the statements that a
5  satellite television service provided "crystal clear digital video" and "CD-quality" audio were
6  non-actionable puffery, but representations that the service also provided "50 channels" and a "7
7  day schedule" were factual assertions that could give rise to claims under the UCL, FAL and
8  CLRA).

9        The statement that Jell-O is "Calci-YUM!" is puffery:  it is not a "specific, quantifiable
10 claim[]," Atari, 1994 WL 723601, at *2; rather, it is a "vague" and "highly subjective" general
11 assertion.  Consumer Advocates, 911 F.2d at 246.  After all, how much calcium is required, and
12 how delicious must Jell-O pudding be, before the "reasonable consumer" would be satisfied the
13 product was "Calci-YUM!"?  See Consumer Advocates, 113 Cal. App. at 1361 ("[H]ow clear is
14 any given crystal?  How good are the speakers on the CD player?").  The marketing phrase
15 "Calci-YUM!" is not a "specific … assertion" as to the Products' calcium content.  See Cook,
16 911 F.2d at 246.  Accordingly, Kraft's use of the term is non-actionable puffery, and Plaintiff's
17 claims premised upon it fail as a matter of law.

18       **B.**      **Plaintiff Cannot Allege A Legally Cognizable Injury**

19       To state a claim under the UCL and FAL, Plaintiff must allege that she was injured in fact
20 and lost money or property as a result of the allegedly deceptive conduct.  See Cal. Bus. & Prof.
21 Code §§ 17204, 17535 (providing that UCL and FAL actions may be prosecuted "by any person
22 who has suffered injury in fact and has lost money or property as a result" of an alleged
23 violation); Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005).
24 Plaintiff's CLRA claims also require her to allege that she was damaged by Defendant's alleged
25 conduct.  See Cal. Civ. Code § 1780 (providing that CLRA claims may be brought by a person
26 "who suffers any damage" as a result of an alleged violation); Colgan v. Leatherman Tool Group,
27 Inc., 135 Cal. App. 4th 663, 696 (2006) (explaining that damages under the CLRA are to
28 "compensate for actual loss").

1    Plaintiff fails to allege an economic injury.  Although Plaintiff claims that she spent an

2    undisclosed amount of money purchasing Jell-O and milk, the mere fact that Plaintiff bought Jell-

3    O and the milk for its preparation does not mean that she was damaged.  The proper measure of

4    damages is not the purchase price, but the difference between the amount paid and the value of

5    what was received.  See Cortez v. Purolater Air Filtration Prods. Co., 23 Cal. 4th 163, 174, 177

6    n.10 (2003)(stating that the UCL and FAL provide restitutionary relief, which is "the return of the

7    excess of what the plaintiff gave the defendant over the value of what the plaintiff received");

8    Day v. AT&T Corp., 63 Cal. App. 4th 325, 339 (1998) (observing that, under the UCL and FAL,

9    it would be improper to require the defendant to return all of the money received from the sale of

10    an allegedly deceptive practice because consumers "received exactly what they paid for[]")

11    (emphasis in original); Colgan, 135 Cal. App. 4th at 667 (noting that damages under the CLRA

12    are "the difference between the actual value of that with which the defrauded person parted and

13    the actual value of that which he received").

14    The Northern District recently dismissed with prejudice a complaint based on allegedly

15    deceptive food labeling because the plaintiff failed to allege economic injury.  See Chavez v. Blue

16    Sky Natural Beverage Co., No. C-06-6609, 2007 WL 1691249, at *4 (N.D. Cal. June 11, 2007).

17    In Chavez, the plaintiff asserted claims under the UCL, FAL, and CLRA, as well as for fraud,

18    against a beverage company based on false statements on packaging that the product was

19    manufactured in New Mexico.  Chavez, 2007 WL 1691249, at *2.  The plaintiff alleged that he

20    only purchased the beverages because he believed they were made in New Mexico and that he

21    would not have purchased them if he had known the truth.  Id. at *1–*3.  The court held that the

22    plaintiff's alleged injury and damages were "nonexistent," the proper measure of damages was

23    "the difference in value between what he was promised and what he received," and the plaintiff

24    did not allege that the products he bought were worth less than he paid for them.  Id. at *3–*4.

25    Plaintiff acknowledges the Products, when mixed with milk as directed, provide calcium.  (See

26    Compl. ¶¶ 11, 16.)  Plaintiff received exactly what she was promised, and she cannot allege that

27    the Products were worth less than she paid for them. [5]  Accordingly, Plaintiff has failed to state a

28    _____

[5]  Plaintiff alleges that she thought she was "paying for a calcium-containing food," that she was

1   claim under the UCL, FAL, or CLRA.

2   **V.    PLAINTIFF'S MISREPRESENTATION CLAIMS ARE DEFICIENT**

3       **A.    Plaintiff Cannot Allege Falsity**

4       Plaintiff's misrepresentation claims fail because she cannot allege that the alleged

5   representations are false, which is an essential component of all fraud claims.  Universal By-

6   Products, Inc. v. Modesto, 43 Cal. App. 3d 145, 151 (1974) (explaining that in a fraud claim the

7   "essential allegation is the general statement that the representation or promise was false");

8   Johnson v. Fletcher, 97 Cal. App. 153, 155 (1929) (stating that a fraud claim must allege that

9   representations "were actually false"); McDougall v. Roberts, 43 Cal. App. 553, 556 (1919) ("[I]t

10  is essential to a plea of false representation that it be alleged to be untrue.")

11      Plaintiff alleges Kraft represented that the "Products contain a significant source of dietary

12  calcium, when they provide absolutely no nutritional value as a dietary source of calcium."

13  (Compl. ¶ 49 (negligent misrepresentation); id. ¶ 56 (intentional misrepresentation)(same).)  The

14  Products' packaging states that Jell-O is "A Good Source of Calcium as Prepared," instructs

15  consumers to prepare the packaged product with milk, and sets out the calcium content both "As

16  Packaged" and when "Prepared.".  (See Compl., Exh. C.)  These statements are true:  when

17  prepared with milk as directed, a serving of Jell-O pudding provides 15% of the recommended

18  daily value of calcium and is a "good source" of calcium under federal food labeling rules.

19  Because Plaintiff cannot allege that the statements on the Products' packaging are false, she

20  cannot state a cause of action for negligent or intentional misrepresentation.

21      **B.    Plaintiff Cannot Allege Justifiable Reliance**

22      Justifiable reliance is another required element of Plaintiff's claims for negligent and

23  intentional misrepresentation.  Ostayan v. Serrano Reconveyance Co., 77 Cal. App. 4th 1411,

24  1419 (2000) ("Whether it be a cause of action for intentional or negligent misrepresentation, a

25  plaintiff must demonstrate that he or she actually and reasonably relied upon a representation

26

27  misled into purchasing and spending money on the Products," and that she "had to pay a hidden
    price for the separate purchase of the milk in order to get the nutritional benefit she sought."
28  (Compl. ¶ 16.)  Far from being hidden, Jell-O labels state that milk is required to prepare the
    pudding.  (Compl., Exh. C.)

DLA PIPER US LLP
SAN DIEGO

Case No. 07 CV 2192 BEN (CAB)

1    made by the defendant."); <u>Wilhelm v. Pray, Price, Williams & Russell</u>, 186 Cal. App. 3d 1324,

2    1331–33 (1986).  Whether a party's reliance was justified may be decided as a matter of law.

3    <u>Guido v. Koopman</u>, 1 Cal. App. 4th 837, 843 (1991).

4        Plaintiff alleges that the use of the word "Calci-YUM!" on Jell-O packaging led her to

5    believe that the Products "contained calcium as sold" because the "material fact" that the pudding

6    mix requires the addition of milk is "omi[tted]," the phrase "as prepared" is "vague," and the

7    "nutritional panel on the side of the Products … cannot be seen by the consumer standing in the

8    store aisle[.]"  (Compl. ¶ 16; <u>see also</u> ¶ 49 (negligent representation); ¶ 63 (intentional

9    misrepresentation).)  Plaintiff cannot assert justifiable reliance when the very information she

10   alleges was "omi[tted]" was readily available to her.  <u>See, e.g.</u>, <u>Stationary Eng'rs Local 39 Health</u>

11   <u>& Welfare Trust Fund v. Philip Morris, Inc.</u>, No. C-97-01519 DLJ, 1998 WL 476265, at *11

12   (N.D. Cal. April 30, 1998) ("[I]f the conduct of the complaining party in light of his own

13   intelligence and information, or ready available information, was manifestly unreasonable, he will

14   be denied recovery.") (citation omitted); <u>In re Seagate Tech. II Sec. Litig.</u>, No. 88-20489, 1989

15   WL 222969, at *3 (N.D. Cal. May 3, 1989) ("[I]f the material containing the alleged omissions[]

16   actually discloses the facts plaintiffs claim are absent, there is obviously no omission.").

17       All relevant information regarding Jell-O's calcium content was readily available to

18   Plaintiff on both the front and back panels, and these label statements are true and accurate.

19   Accordingly, Plaintiff fails to allege justifiable reliance and her negligent and intentional

20   misrepresentation claims fail as a matter of law.

21       **C.    Plaintiff Cannot Allege Damages**

22       Plaintiff's misrepresentation claims also fail because she does not allege legally

23   cognizable damages, a required element of her fraud claims.  <u>See, e.g.</u>, <u>Chavez</u>, 2007 WL

24   1691249, at *3 (stating that "[p]laintiffs must allege actual damages" to pursue common law

25   fraud claims); <u>Goehring v. Chapman Univ.</u>, 121 Cal. App. 4th 353, 364 (2004) (explaining that

26   "[d]eception without resulting loss is not actionable fraud" and that "the injury or damage must

27   … be distinctly alleged"); <u>Bldg. Permit Consultants, Inc. v. Mazur</u>, 122 Cal. App. 4th 1400, 1415

28   (2004) ("[F]raud without damages is not actionable.") (citation omitted).  Plaintiff acknowledges

1  that the prepared pudding provides the nutritional benefits of calcium.  (See Compl. ¶ 11 (stating

2  that the pudding is a "source of nutritional calcium" when the consumer prepared the packaged

3  mix with milk); id. ¶ 16.)  Plaintiff does not—and cannot—allege that the Products' packaging

4  omits the fact that milk is required for its preparation or that she did not receive "the nutritional

5  benefit she sought" when she prepared and ate the pudding.  (Id. ¶ 16.)

6      Plaintiff alleges that she was damaged because she paid an undisclosed purchase price for

7  Jell-O, but the fact that Plaintiff allegedly bought Jell-O does not mean that she was damaged.

8  (See id. ¶ 54 (negligent misrepresentation); id. ¶ 62 (intentional misrepresentation).)  The measure

9  of damages for fraud is not the purchase price, but the difference between the amount paid and

10 the value received.  Chavez, 2007 WL 1691249, at *4 (dismissing fraud claims because plaintiff

11 did not receive a product that was worth less than he paid for it); Fragle v. Faulkner, 110 Cal.

12 App. 4th 229, 236 (2003); Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1240 (1995);

13 Nece v. Bennett, 212 Cal. App. 2d 494, 497 (1963); Cal. Civ. Code § 3343(a).  Plaintiff cannot

14 allege that the packaged products that she allegedly purchased were worth less than the amount

15 she allegedly paid.  Accordingly, Plaintiff has failed to allege damages sufficient to state a claim

16 for negligent or intentional misrepresentation.

17      **D.    Plaintiff Fails To Plead Fraud With Particularity**

18      Plaintiff's misrepresentation claims fail for the independent reason that they do not satisfy

19 the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  See Fed. R. Civ.

20 P. 9(b)("In all averments of fraud or mistake, the circumstances constituting fraud or mistake

21 shall be stated with particularity.").  As the Ninth Circuit has explained, under Rule 9(b)

22 "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the

23 misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

24 Plaintiff "must set forth more than the neutral facts necessary to identify the transaction," he must

25 also "set forth what is false or misleading about a statement, and why it is false."  Id.; see also

26 Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989)("[M]ere conclusory

27 allegations of fraud are insufficient.").  If a claim's allegations do not satisfy the heightened

28 pleading requirements of Rule 9(b), the claim should be dismissed.  See, e.g., Bly-Magee v.

1  *California*, 236 F.3d 1014, 1019 (9th Cir. 2001)(affirming the district court's dismissal of a fraud

2  complaint for failure to satisfy Rule 9(b) in light of its "complete absence of particularity");

3  *Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir. 1993).

4      Plaintiff has not alleged her misrepresentation claims[6] with the requisite particularity.

5  Plaintiff has identified the "who" (Defendant) and a portion of the "what" (the statements on the

6  packaging), but she has not identified the "when, where and how."  Moreover, Plaintiff offers no

7  credible rationale for her allegation that Jell-O's packaging is deceptive to the reasonable

8  consumer.  Without a sufficient explanation as to the deceptive nature of the Products' packaging,

9  Plaintiff's allegations are inadequate and do not meet the pleading requirements of Rule 9(b).

10  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal.

11  1999)(explaining that the plaintiff "must set forth what is false or misleading about a statement,

12  and why it is false").

13  **VI.    PLAINTIFF'S BREACH OF EXPRESS WARRANTY CLAIM IS DEFICIENT**

14      **A.    Plaintiff Cannot Allege Breach of Express Warranty**

15      To prevail on a claim for breach of express warranty, Plaintiff must allege that Defendant

16  made an "an affirmation of fact or promise," and that Defendant breached the warranty it

17  allegedly made.  *Keith v. Buchanan*, 173 Cal. App. 3d 13, 20 (1985); Cal. Com. Code § 2313.  An

18  express warranty is breached when the goods do not conform to their descriptions or the

19  affirmations made about them.  *Brown v. Super. Ct.*, 751 P.2d 470, 484 (Cal. 1988)("An action

20  for breach of express warranty requires that the seller of goods conform to his promises

21  concerning them."); *see also McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1177–

22  78 (9th Cir. 1997).  Here, Plaintiff alleges that Defendant represented "by means of labeling,

23  advertisements, promotion and/or marketing that that [sic] the Products were a significant dietary

24  source of calcium" and breached this warranty because the Products "only offer the nutritional

25  ─────────────

26  [6] To the extent Plaintiff's UCL, FAL, and CLRA causes of action are predicated on fraud, Rule 9(b) applies to those claims just as it does to her claims for negligent and intentional

27  misrepresentation.  *Vess*, 317 F.3d at 1103–04 (explaining that where the plaintiff's claim is based on alleged fraudulent conduct, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule

28  9(b).").

1  benefits of calcium if the consumer separately purchases a calcium-containing product such as

2  milk and adds it to the Products." (Compl. ¶¶ 65, 66.)  The statements on Jell-O packaging are

3  true and accurate:  each serving of prepared pudding provides 15% of the daily supply of calcium.

4  Plaintiff cannot allege that any express warranty was breached, and her claim for breach of

5  express warranty fails.

6  **B.  Plaintiff Cannot Allege Damages**

7  Plaintiff's express warranty claim also fails because she does not allege legally cognizable

8  damages.  Rodarte v. Philip Morris, Inc., No. CV-03-0353-FMC, 2003 WL 23341208, at *5 (C.D.

9  Cal. June 23, 2003).  Plaintiff asserts that she was injured because she paid the purchase price for

10 the Products.  (See Compl. ¶ 67.)  But the measure of damages for breach of warranty is not the

11 purchase price; it is "the difference at the time and place of acceptance between the value of the

12 goods accepted and the value they would have had if they had been as warranted."  Cal. Com.

13 Code § 2714(2).  Plaintiff does not, and cannot, allege that there is any difference between the

14 value of the Products allegedly purchased and the value allegedly warranted.  Accordingly,

15 Plaintiff cannot allege that she was damaged and her breach of warranty claim fails.

16 **VII.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS DEFICIENT**

17 The Complaint asserts a purported cause of action for unjust enrichment, in which

18 Plaintiff seeks restitution of "purchase monies," disgorgement of Defendant's profits, and

19 attorneys' fees and costs.  (Compl.¶ 74.)  "Unjust enrichment is not a cause of action, however, or

20 even a remedy, but rather a general principle, underlying various legal doctrines and remedies….

21 It is synonymous with restitution."  McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004)

22 (quotation marks and citations omitted).  Under the law of restitution, "[a]n individual is required

23 to make restitution if he or she is unjustly enriched at the expense of another.  A person is

24 enriched if the person receives a benefit at another's expense."  First Nationwide Sav. v. Perry, 11

25 Cal. App. 4th 1657, 1662 (1992) (citation omitted).  However, "[t]he fact that one person benefits

26 another is not, by itself, sufficient to require restitution.  The person receiving the benefit is

27 required to make restitution only if the circumstances are such that, as between the two

28 individuals, it is unjust for the person to retain it."  Id. at 1663; see also Cal. Med. Ass'n v. Aetna

DLA PIPER US LLP
SAN DIEGO

-14-

Case No. 07 CV 2192 BEN (CAB)

1    U.S. Healthcare of Cal., Inc., 94 Cal. App. 4th 151, 172 n.23 (2001).

2         Plaintiff fails to allege that it would be unjust for Defendant to retain any benefit that she

3    allegedly conferred on it.  She alleges only that "[i]t would be inequitable" for Defendant to retain

4    any money received because she "did not receive the benefit that was marketed to" her.

5    (Compl. ¶ 73.)  Plaintiff also alleges, however, that she "purchased … and ate" the Products "in

6    the belief that the Products [she was] purchasing and eating were a significant source of dietary

7    calcium."  (Id. ¶ 72.)  The pudding Plaintiff ate was, in fact, a good source of dietary calcium.

8    Because Plaintiff received the precise benefit that was marketed to her, she cannot allege any

9    basis upon which it would be unjust for Defendant to retain any benefit Plaintiff allegedly

10   conferred.  Accordingly, Plaintiff's unjust enrichment claim fails.

11   **VIII.   PLAINTIFF'S COMPLAINT CONFLICTS WITH FEDERAL LAW**

12        Each count of Plaintiff's Complaint is premised on her allegation that the statement on

13   Jell-O labels that Jell-O is "Calci-YUM! A Good Source of Calcium as Prepared" misled her to

14   believe that the Products, as sold, are a "significant source of dietary calcium."  (See Compl. ¶ 16;

15   see also id. ¶ 30 (UCL claim); id. ¶ 40 (FAL claim); id. ¶ 49 (negligent misrepresentation); id.

16   ¶ 56 (intentional misrepresentation); id. ¶ 65 (express warranty); id. ¶ 70 (unjust enrichment); id.

17   ¶ 76 (CLRA claim).)  "Good source" is a defined "nutrient content" claim under federal food

18   labeling regulations that are promulgated and enforced by the FDA.  See 21 U.S.C. § 343(r); see

19   also 21 C.F.R. §§ 101.54(c), 101.9(e) (providing rules governing nutrition labeling, including

20   "good source" nutrient content claims and dual column "Nutrition Facts" labeling).  Thus, each

21   cause of action in Plaintiff's Complaint is predicated on language subject to the "comprehensive

22   regulatory scheme" governing nutrition labeling that Congress placed within the special

23   competence and expertise of the FDA, and which "Congress intended [would] be enforced

24   exclusively by the Federal Government." Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341,

25   352, 349 n.4 (2001); see also Fraker v. KFC Corp., No. 06-CV-01284-JM, 2007 U.S. Dist.

26   LEXIS 32041, at *10 (S.D. Cal. April 30, 2007).

27        Under the Supremacy Clause, state law is impliedly preempted where it "stands as an

28   obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

1   <u>Dowhal v. Smithkline Beecham Consumer Healthcare</u>, 32 Cal. 4th 910, 923–24 (2004)(quoting

2   <u>English v. Gen. Elec. Co.</u>, 496 U.S. 72, 78–79 (1990)).  To allow Plaintiff to prosecute state law

3   causes of action based on a nutrition claim defined by federal food regulations would conflict

4   with Congress's intent to create a comprehensive and exclusive governmental enforcement

5   scheme.  See <u>Fraker</u>, 2007 U.S. Dist. LEXIS 32041, at *8–*11 (dismissing state law claims as

6   preempted where the same conduct constituted misbranding under the FDCA);  <u>Am. Bioscience,</u>

7   <u>Inc. v. Bristol Meyers Squibb Co.</u>, No. CV 00-8577-WMB, 2000 WL 1278348, at *1 (C.D. Cal.

8   Sept. 7, 2000) (dismissing state law claims based on conduct purportedly in violation of the

9   FDCA because the FDCA prohibits private enforcement); <u>see also</u> <u>Summit Tech., Inc. v. High-</u>

10  <u>Line Med. Instruments</u>, 922 F. Supp. 299, 306 (C.D. Cal. 1996).

11      What's more, Plaintiff seeks to have this Court decide, under California statutes and

12  common law, whether a food manufacturer is permitted to make a truthful nutrient content claim

13  based on a prepared serving of a product, where the claim includes the phrase "as Prepared," the

14  directions indicate the method by which the product is to be prepared, and a dual-column

15  Nutrition Facts panel sets out the nutrition information for the food's packaged and prepared

16  forms.  Congress exclusively vested the FDA with the expertise and authority to make complex

17  policy determinations such as this, and a decision by this Court runs the risk of frustrating

18  Congress's intent to create a uniform, national standard.  See <u>Buckman</u>, 531 U.S. at 350

19  ("[C]omplying with the FDA's detailed regulatory regime in the shadow of 50 States' tort

20  regimes will dramatically increase the burdens facing [the regulated industry]—burdens not

21  contemplated by Congress in enacting the FDCA."); <u>Kanter v. Warner-Lambert Co.</u>, 99 Cal. App.

22  4th 780, 795 (2002) (affirming that FDCA pre-empted state tort claims because it set forth

23  "explicit and detailed federal requirements regarding the content" of the disputed products'

24  labels); <u>see also</u> <u>Papike v. Tambrands, Inc.</u>, 107 F.3d 737, 742 (9th Cir. 1997) (determining that

25  the FDCA preempted state products liability claim because the FDA had promulgated a specific

26  regulation pertaining to the product).

27      Congress has vested oversight of the complex federal regulatory scheme governing food

28  labeling in the FDA.  Plaintiff cannot be permitted to interfere with the FDA's authority by way

1    of consumer product litigation.  If Plaintiff believes the statements on Jell-O's labels are

2    deceptive, then she is free to submit her complaint to the FDA and petition the agency to issue or

3    amend regulations or to take other administrative actions.  21 C.F.R. § 10.30.  What she may not

4    do is use this litigation to promulgate her own food labeling regulations.  Accordingly, Plaintiff's

5    entire Complaint is pre-empted.

6    **IX.    <u>CONCLUSION</u>**

7         Plaintiff's UCL, FAL, CLRA, misrepresentation, warranty and unjust enrichment claims

8    are deficient because each lacks one or more essential elements that Plaintiff does not and cannot

9    allege.  Jell-O packaging truthfully and accurately describes the Products' calcium content, and

10   all relevant information is provided to consumers on the label.  Plaintiff is unable to allege

11   damages because she received the benefit she was promised and got what she paid for.  In

12   addition, Plaintiff's claims impermissibly interfere with the FDA's exclusive enforcement of

13   federal food labeling regulations.  Plaintiff's Complaint fails to state any claim entitling her to

14   relief and the deficiencies in her claims cannot be cured by amendment. Accordingly, Defendant

15   requests that the Court grant its motion to dismiss with prejudice and without allowing Plaintiff

16   leave to replead.

17

18   Dated:  February 13, 2008                DLA PIPER US LLP

19

20                                           s/Noah A. Katsell
                                             Attorneys for Defendant Kraft Foods Global, Inc.
21                                           E-mail:  noah.katsell@dlapiper.com

22

23

24

25

26

27

28