Howard Rubinstein (Fla. SBN: 104108)
Attorney at Law
914 Waters Avenue, Suite 20
Aspen, Colorado 81611
Tel.: (832) 715-2788
E-mail: howardr@pdq.net
*(To apply as Counsel Pro Hac Vice)*

Harold M. Hewell (Cal. SBN: 171210)
Hewell Law Firm, APC
402 W. Broadway, Fourth Floor
San Diego, California 92101
Tel: (619) 235-6854 · Fax: (619) 235-9122
E-mail: hmhewell@hewell-lawfirm.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADRIANNE SMITH,** as an individual and on behalf of all others similarly situated, | Civil Action No.  **3:07-cv-02192-BEN-WMC** |
| *Plaintiff,* | **FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| *vs.* | |
| **KRAFT FOODS GLOBAL, INC.,** a Delaware corporation, | |
| *Defendant.* | *CLASS ACTION* |
| | *JURY TRIAL REQUESTED* |

Plaintiff alleges:

## I. PARTIES

1. Plaintiff Adrianne Smith is an individual consumer who resides in the County of San Diego and the State of California where the subject transactions herein took place. Ms. Smith is the mother of an infant daughter and son. She respectfully requests a jury trial.

2. Defendant Kraft Foods Global, Inc. ("Kraft") is a corporation organized and existing under the laws of Delaware. It maintains its principle office at Three Lakes Drive, Northfield, Illinois 60093, and a registered agent listing of CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604. For purposes of diversity jurisdiction, Kraft may be considered a "citizen" of either Delaware or Illinois. Kraft products include Jell-O® "Instant Pudding Pie Filling" in chocolate and lemon flavors and "Cook & Serve Pudding & Pie Filling" in a vanilla flavor ("Products"). At all times relevant hereto, Kraft was and is doing business in the County of San Diego, State of California.

3. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the Defendant's divisions, subsidiaries and other related entities was the agent, servant and employee of the Defendant and each of its other divisions, subsidiaries and other related entities, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Plaintiff is further informed and believes and thereon alleges that, at all times herein mentioned, each of the employees of Defendant, Defendant's divisions, subsidiaries and other related entities was the agent, servant and employee of Defendant.

4. Whenever reference in this First Amended Complaint is made to any act or transaction of Kraft, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of said Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Kraft while actively engaged in the scope of their duties.

## II. VENUE AND JURISDICTION

5. This Court enjoys jurisdiction over the subject matter presented by this First Amended

Complaint because it is a class action arising under the Class Action Fairness Act ("CAFA") of 2005, 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1332(d)(6), which explicitly provides for original jurisdiction in the Federal Courts of any class action in which any member of the Plaintiff Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.

6. Plaintiff alleges that the total claims of individual class members in this action are well in excess of $5,000,000 in the aggregate as required by 28 U.S.C. § 1332(d)(2), (5). Kraft is incorporated in Delaware and maintains an office in Illinois, and can therefore be considered a citizen of either of those states. Plaintiff is a citizen of California. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2). Furthermore, pursuant to 28 U.S.C. § 1332(d)(4)(a)(i)(I), Plaintiff alleges that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than California, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

7. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district and because Defendant may be found in and is subject to personal jurisdiction in this district. The required "Declaration of Harold M. Hewell Pursuant to Civil Code §1780(c) of the Consumer Legal Remedies Act, Civil Code §§1750 et seq." regarding venue under the California Consumer Legal Remedies Act is attached as Exhibit "A" to the Complaint filed in this action and is incorporated by reference.

### III. FACTUAL ALLEGATIONS

8. All allegations in this First Amended Complaint are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

9. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 8, inclusive, above.

10. Defendant has, during the past four years, marketed, advertised and distributed the

Products across the United States, and continues to do so as of the date of this filing. In the upper left-hand corner of the principle display panel ("PDP") on the Product labels, the "word" "CALCI-YUM!" is displayed in large bold print. In smaller print below "CALCI-YUM!" are the words, "A Good Source of Calcium as Prepared."[1] True and correct copies of the labels of the Products are attached hereto as Exhibit "A" and incorporated by reference.

11. Kraft's prominent use of the word "CALCI-YUM!" on the PDP of each of the Products leads the buying public into believing that the Products are a delicious and substantial dietary source of calcium, an essential mineral for the development and maintenance of healthy bones and teeth. However, the Products have absolutely no nutritional value as a dietary source of calcium. The only source of nutritional calcium found in the Products "as prepared" is the milk that the consumer buys separately and adds to them.[2] By that standard, anything could be marketed as "a good source of calcium" as long as the consumer was directed to add milk.

12. Nevertheless, Kraft represents to consumers that "JELL-O INSTANT Pudding (1/2 cup)" provides 150 milligrams of calcium per serving. This representation is made by listing the JELL-O INSTANT Pudding in a table with other products beneath the statement:

> For example, milk contains 300 mg per 8 ounces, as does 1½ ounces of cheese. But there are plenty of other foods that contain calcium. See the list below for examples of foods that can help you meet your calcium quota:

By listing JELL-O INSTANT Pudding in the table beneath that statement, Kraft leads consumers to believe that its JELL-O INSTANT Pudding contains 150 milligrams of calcium per serving as it is sold, without consumers having to add calcium via milk. See http://www.kraftfoods.com/kf/HealthyLiving/Healthy+Living+Library/powerup.htm.  A  true

---

[1] As the attached labels indicate, the words, "as Prepared" are in smaller typeface on the PDP than the preceding words, "A Good Source of Calcium…."

[2] Of the three Products, the vanilla-flavored pudding contains the ingredient calcium carrageenan as a thickener, and the chocolate-flavored pudding contains the ingredient calcium sulfate, but neither of those ingredients provides any notable nutritional value to those flavors as a dietary source of calcium. The lemon-flavored pudding contains no calcium, calcium compounds or calcium-containing products in its ingredient list.

and correct copy of that representation with the above-referenced language highlighted, is attached hereto as Exhibit "B" and incorporated by reference.

13. Such an assertion is false: the Products are simply expensive milk additives that lack any nutritional benefit of calcium as sold.

14. A global company with Kraft's sophistication and expertise in the marketing of foods can hardly be ignorant of Swiss Maid's "Calci-Yum" dairy food products, the Tropical "Calci-Yum" Monster™ smoothie beverage sold by Odwalla®, Maxi Health's Chewable "Calci-Yum" dietary supplement, Fonterra Brands' "Calci Yum" dairy products, and other products that use a similar derivative of the word calcium. The difference however, is that those products actually contain nutritional levels of calcium as sold. They do not require the consumer to buy milk separately and add it to the product to obtain the nutritional benefits of calcium. True and correct copies of the marketing for some of these products is attached hereto as Exhibit "C" and incorporated by reference.

15. Further confusion derives from Kraft's move to fortify its refrigerated[3] pudding lineup with calcium and print "CALCI-YUM!" on those PDPs as well. However Kraft drops the "as prepared" from the fortified pudding PDPs and simply states, "A Good Source of Calcium."

16. Ms. Smith, as noted above, has two infant children, a girl and a boy. She is conscientious about their diets and fully aware of the importance of calcium in their development. She also is aware of the importance of calcium to women. During the past four years, she has purchased the Products at stores in the San Diego area and fed them to her children. She also has eaten the Products herself. Ms. Smith did so because she had been exposed to the labeling of the Products as set forth above. She relied on the reputation of Kraft and Jell-O® in purchasing the Products, and was misled into thinking they contained calcium as sold and that she was paying for a calcium-containing food. She did not realize that she was buying the calcium (milk) separately and adding it to the Products herself until a friend pointed

---

[3] I.e., requires no preparation (addition of milk).

this out. She was misled by Kraft's omission of this material fact. The phrase "as prepared" on the PDP is vague and does nothing to qualify the preceding representations and the prominently displayed "CALCI-YUM!" A reasonable consumer would not interpret this to mean "if you buy and add milk to this Product." The nutritional panel on the side of the Products, which cannot be seen by the consumer standing in the store aisle, is insufficient to overcome the deception on the PDP and Kraft's "CALCI-YUM!" marketing scheme. As a result of Kraft's deceptive labeling and marketing scheme and her reliance on the purported quality of Kraft and Jell-O® products, Ms. Smith purchased the Products from Defendant within the Class period set forth below. Defendant represents itself as a reputable and reliable manufacturer of consumer products, including the Products. Ms. Smith was exposed to and relied on these representations in purchasing the Products. As a direct and proximate result of Defendant's acts as set forth herein, Plaintiff suffered actual damages and harm, in an amount to be determined at trial, in that she was induced to and did spend money on the Products, but was deprived of the benefit of her bargain, as the Products did not themselves contain calcium as Defendant led her to believe. Additionally, she had to pay a hidden price for the separate purchase of the milk in order to get the nutritional benefit she sought. Had she known that the Products provide absolutely no nutritional value as a dietary source of calcium, she would not have bought the Products. There are many other competitively-priced foods (that do not require the additional, separate purchase of milk) that are rich in calcium as sold that she and her children enjoy, and she would have purchased them instead. In exchange for her money, Ms. Smith received something other than what was represented to her, a product she did not seek. As sold, the Products lack the nutritional benefit she sought and thought she was receiving. The Products were and are of no value to her.

### IV. CLASS ALLEGATIONS

17. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

18. Pursuant to California Civil Code §1781, California Code of Civil Procedure §382, and Federal Rule of Civil Procedure ("FRCP") 23, Plaintiff brings this action on behalf of

herself and all other consumers who purchased Defendant's deceptively labeled Products during the Class Period, which is defined as the four years preceding the filing of this action.

19. Defendant's practices and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class.

20. All putative Class members were and are similarly affected by having purchased Defendant's deceptively labeled Products, and the relief sought herein is for the benefit of Plaintiff and members of the putative class. Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class is so numerous that joinder of all members would be impractical.

21. Based on the annual sales of the Products and their popularity, it is apparent that the number of consumers of the deceptively labeled Products would at least be in the many thousands, thereby making joinder impossible

22. Questions of law and fact common to the Plaintiff Class and the subclasses exist that predominate over questions affecting only individual members, including, inter alia:

    (a)    Whether Defendant's practices and representations made in connection with the labeling and marketing of the deceptively labeled Products were deceptive, unlawful or unfair in any respect, thereby violating California's Unfair Competition Law ("UCL), Cal. Bus. & Prof. Code § 17200 et seq.;

    (b)    Whether Defendant's practices and representations made in connection with the labeling and marketing of the deceptively labeled Products were deceptive, unlawful or unfair in any respect, thereby violating California's False Advertising Law ("FAL), Cal. Bus. & Prof. Code § 17500 et seq.;

    (c)    Whether Defendant's practices and representations made in connection with the labeling and marketing of the deceptively labeled Products were false and/or misleading;

    (d)    Whether Defendant's conduct in connection with the practices and representations made in the labeling and marketing of the deceptively labeled Products breached express warranties with regard to the Products;

(e)    Whether Defendant violated California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq., by the practices and representations made in connection with the labeling and marketing of the deceptively labeled Products within this State.

(f)    Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

23. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class as the claims arise from the same course of conduct by Defendant, and the relief sought is common.

24. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclasses. Plaintiff has retained counsel who is competent and experienced in both consumer protection and class action litigation.

25. Certification of this class action is appropriate under FRCP 23(b), California Code of Civil Procedure §382 and California Civil Code §1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other Class member would be able to protect his or her own interests because the cost of litigation through individual lawsuits might exceed expected recovery. Certification is also appropriate because Defendant acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole. Further, given the large number of consumers of the deceptively labeled Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

26. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense

and burden on the courts that such individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

27. Plaintiff alleges that in the aggregate, the claims of the individual Class members exceed the sum of $5,000,000.00, exclusive of interest and costs.

## V. FIRST CAUSE OF ACTION:

## FOR VIOLATION OF BUS & PROF. CODE §17200 ET SEQ.

28. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

29. This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to California Bus. & Prof. Code § 17200 et seq., which provides that "'unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

30. Plaintiff is informed and believes, and based on such information and belief alleges, that Defendant committed an unfair business act or practice. The utility of Defendant's deceptive labeling and marketing of the Product for the purpose of promoting sales is negligible, if any, when weighed against the extent of harm to the general public, Plaintiff and Class members. The harmful impact upon members of the general public and the Class who were and are misled and deceived with respect to Defendant's labeling and marketing of the Products far outweighs any reasons or justifications by Defendant in characterizing the Products as a significant source of dietary calcium in their labeling, advertising, promotion or marketing. Defendant had an improper motive (as alleged in this First Amended Complaint) in labeling and marketing the deceptively labeled Products as a significant source of dietary calcium when the Products provide absolutely no nutritional value as a dietary source of calcium. The utilization of unlawful, unfair and/or deceptive practices was and is under the

sole control of Defendant, and was deceptively hidden from members of the general public in its labeling and marketing of the Products. As a purchaser and consumer of Defendant's deceptively labeled Products and as a member of the general public in California who has been injured by Defendant's unlawful and/or unfair practices, Plaintiff is entitled to and does bring this class action seeking all available UCL remedies, including declaratory and injunctive relief, restitution, and attorneys' fees and costs.

31. Defendant committed a deceptive act or practice by making written and/or oral material representations (and material omissions) that have a capacity, tendency, or likelihood to deceive or confuse reasonable consumers by representing that the Products are a significant source of dietary calcium, when they provide absolutely no nutritional value as a dietary source of calcium as set forth above.

32. Defendant also has committed unlawful acts and practices within the scope of the UCL by violating the CLRA as set forth below. This state statutory violation serves as a predicate violation of this prong of the UCL.

33. Plaintiff is informed and believes and based thereon alleges that Defendant continues these unlawful, unfair and/or deceptive business practices alleged herein.

34. Defendant's acts as alleged in this First Amended Complaint, constitute unlawful, unfair and/or deceptive business practices within the meaning of California Bus. & Prof. Code § 17200 et seq. Plaintiff and members of the general public were and are likely to be deceived by Defendant's labeling and marketing of the Products.

35. Pursuant to California Bus. & Prof. Code §17203, Plaintiff, on behalf of herself and members of the general public, seeks an order of this Court:

      (a)     Enjoining Kraft from continuing to engage, use, or employ any unlawful, unfair and/or deceptive business act or practice and unfair, deceptive, untrue or misleading labeling, advertising, promotion or marketing and any act prohibited by Chapter I (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code; and

      (b)     Restoring all monies that may have been acquired by Defendant as a result of

such unlawful, unfair, or deceptive act or practices.

36. Plaintiff and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. The unlawful, unfair and/or deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and members of the general public.

37. As a result of Defendant's violation of the UCL, Plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm.

38. Pursuant to Civil Code §3287(a), Plaintiff and Class Members are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff and Class members are entitled to interest in an amount according to proof.

## VI. SECOND CAUSE OF ACTION:

## FOR VIOLATION OF BUS. & PROF. CODE §17500 ET SEQ.

39. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

40. In violation of California Bus. & Prof. Code §17500, Defendant has disseminated, or caused to be disseminated, deceptive advertising of the Products as set forth in detail above. These include labeling and marketing the deceptively labeled Products as a significant source of dietary calcium when in fact the Products provide absolutely no nutritional value as a dietary source of calcium.

41. Defendant's representations on the deceptively labeled Products are untrue and/or misleading as set forth above.

42. Plaintiff is informed and believes and based thereon alleges, that Defendant continues to disseminate, or cause to be disseminated, such deceptive statements alleged herein.

43. Defendant is disseminating labeling and advertising concerning its products which by their very nature is unfair and deceptive within the meaning of California Bus. & Prof. Code §17500 et seq. Such advertisements are likely to deceive, and continue to deceive the

consuming public.

44. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Bus. & Prof. Code §17500 et seq.

45. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the Class Members have suffered substantial monetary and non-monetary damage. Pursuant to California Business and Professions Code §17535, Plaintiff, on behalf of herself and members of the general public, seeks an order of this Court:

    (a)    Enjoining Kraft from continuing to engage, use, or employ any act prohibited by Chapter I (commencing with Section 17500) of part 3 of Division 7 of the Business and Professions Code; and

    (b)    Restoring all monies that may have been acquired by means of Defendant's false and misleading statements in advertisements, promotions and/or marketing described herein.

46. As such, Plaintiff and the members of the Class request that this Court cause the Defendant to restore this money to them, and to enjoin the Defendant from continuing to violate California Bus. & Prof. Code §17500 et seq., as alleged above. If Defendant's conduct is not enjoined, Plaintiff and the members of the Class will continue to be damaged by Defendant's false and misleading labeling and advertising.

47. Pursuant to Civil Code section 3287(a), Plaintiff and Class members are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount of funds paid by Plaintiff and Class members as a result of said acts is a sum certain and capable of calculation, and Plaintiff and Class members are entitled to interest in an amount to be set forth according to proof.

## VII. THIRD CAUSE OF ACTION:
## FOR NEGLIGENT MISREPRESENTATION

48. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

49. Defendant represented to the public, including Plaintiff, at each and every point of sale, and at the time of each sale, by means of labeling, that the Products contain a significant source of dietary calcium, when they provide absolutely no nutritional value as a dietary source of calcium

50. Defendant's representations were untrue as set forth above.

51. Defendant made the representations herein alleged with the intention of inducing the public to purchase Defendant's Products.

52. Plaintiff and other members of the general public saw, believed, and relied on Defendant's labeling representations and, in reliance on them, purchased the Products. Said reliance was reasonable based on the apparently reputable nature of Defendant's practices.

53. At the time Defendant made the misrepresentations herein alleged, Defendant had no reasonable grounds for believing the representations to be true.

54. As a direct and proximate result of Defendant's negligent misrepresentations as set forth herein, Plaintiff suffered actual damages and harm, in an amount to be determined at trial, in that she was induced to and did spend money on the Products, but was deprived of the benefit of her bargain, as the Products did not themselves contain calcium as Defendant led her to believe. Additionally, she had to pay a hidden price for the separate purchase of the milk in order to get the nutritional benefit she sought. Had she known that the Products provide absolutely no nutritional value as a dietary source of calcium, she would not have bought the Products.

## VIII. FOURTH CAUSE OF ACTION:
## FOR INTENTIONAL MISREPRESENTATION

55. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

56. Defendant represented to the public, including Plaintiff, at each and every point of sale, and at the time of each sale, by means of labeling, that the Products contain a significant source of dietary calcium, when they provide absolutely no nutritional value as a dietary source of calcium

57. Defendant's representations were untrue as set forth above.

58. Defendant made the representations herein alleged with the intention of inducing the public to purchase and eat the Products.

59. Plaintiff and other members of the general public saw, believed, and relied on Defendant's labeling and advertising representations and, in reliance on them, purchased and ate the Products. Said reliance was reasonable based on the apparently reputable nature of Defendant's practices.

60. At the time Defendant made the representations herein alleged, Defendant knew the representations were false.

61. Defendant made these misrepresentations with the intention of depriving Plaintiff and Class members of property or otherwise causing injury, and was guilty of fraud.

62. As a proximate result of Defendant's intentional misrepresentations as set forth herein, Plaintiff suffered actual damages and harm, in an amount to be determined at trial, in that she was induced to and did spend money on the Products, but was deprived of the benefit of her bargain, as the Products did not themselves contain calcium as Defendant led her to believe. Additionally, she had to pay a hidden price for the separate purchase of the milk in order to get the nutritional benefit she sought. Had she known that the Products provide absolutely no nutritional value as a dietary source of calcium, she would not have bought the Products.

63. Plaintiff is informed and believes and thereon alleges that Defendant knew that the Products provide absolutely no nutritional value as a dietary source of calcium, and in fact, could only achieve that state in combination with the addition of a product that truly contained calcium. Yet by the use of the word "CALCI-YUM!" on the product package and other deceptive representations set forth in detail above, Defendant intended that customers and the unknowing public believe that the Products had nutritional value as a dietary source of calcium and should rely on that representation. Plaintiff and other members of the general public, in purchasing and using the products as herein alleged, did rely on Defendant's above representations, all to their damage as hereinabove alleged. In doing these things, Defendant

was guilty of malice, oppression, and fraud, and Plaintiff and Class members are, therefore, entitled to recover punitive damages.

## IX. FIFTH CAUSE OF ACTION:

## BREACH OF EXPRESS WARRANTY

64. Plaintiff realleges and incorporates herein by this reference each and every allegation set forth in the preceding paragraphs of this First Amended Complaint.

65. Defendant expressly warranted to the public, including Plaintiff, by means of labeling, that that the Products were a significant dietary source of calcium. These representations are described in greater detail above.

66. The Products, however, provide absolutely no nutritional value as a dietary source of calcium. The Products only offer the nutritional benefits of calcium if the consumer separately purchases a calcium-containing product such as milk and adds it to the Products.

67. As a proximate result of these breaches as set forth herein, Plaintiff suffered actual damages and harm, in an amount to be determined at trial, in that she was induced to and did spend money on the Products, but was deprived of the benefit of her bargain, as the Products did not themselves contain calcium as Defendant led her to believe. Additionally, she had to pay a hidden price for the separate purchase of the milk in order to get the nutritional benefit she sought. Had she known that the Products provide absolutely no nutritional value as a dietary source of calcium, she would not have bought the Products.

## X. SIXTH CAUSE OF ACTION:

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

68. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

69. The acts and practices described above were undertaken by the Defendant in connection with a "transaction" (as defined in Civil Code §1761(e)) which was intended to and did result in the sale of "goods" (as defined in Civil Code §1761(a)) to "consumers" (as defined in Civil Code §1761(d)). Defendant's acts and practices, as alleged in detail above, violated, and continue to violate, Section 1770(a)(5) of California's Consumer Legal Remedies

Act ("CLRA") in that Defendant represented to the public, including Plaintiff, by means of means of labeling and marketing, that the Products they were purchasing were a significant source of dietary calcium. However, the Products provide absolutely no nutritional value as a dietary source of calcium.

70. Plaintiff and Class members seek and are entitled to equitable relief in the form of an order:

(a)    Enjoining Defendant from continuing to engage in the deceptive business practices described above;

(b)    Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described above;

(c)    Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described above; and

(d)    Enjoining Defendant from such deceptive business practices in the future.

71. Plaintiff is notifying Defendant in writing of the particular violations of Section 1770 of the CLRA (the Notice) and is demanding, among other things, that Defendant cease marketing the deceptively labeled Products as set forth in detail above, and that Defendant provide restitution to consumers who purchased the Products. If Defendant fails to respond to Plaintiff's demand within thirty days of receipt of the Notice, pursuant to section 1782 of the CLRA, Plaintiff will amend this First Amended Complaint to request statutory damages, actual damages, plus punitive damages, interest and attorney's fees. Regardless of such an amendment to seek damages, however, Plaintiff seeks and is entitled to, pursuant to Section 1780(a)(2) of the CLRA, an order as set forth herein enjoining the above-described wrongful acts and practices of Defendant, plus costs and attorney's fees and any other relief which the Court deems proper.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief pursuant to each cause of action set forth in this First Amended Complaint as follows:

1. For an order certifying that the action may be maintained as a class action.

2. For an award of equitable relief pursuant as follows:

    (a)    Enjoining Defendant from continuing to engage in any practice found to be unlawful pursuant to the UCL, FAL, and/or CLRA as described above;

    (b)    Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this First Amended Complaint;

    (c)    Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described in this First Amended Complaint; and

    (d)    Enjoining Defendant from marketing and selling the deceptively labeled Products.

3. For actual and punitive damages under the CLRA in an amount to be proven at trial, including any damages as may be provided for by statute upon the filing of a Second Amended Complaint should the demanded corrections not take place within the thirty-day notice period.

4. For an award of attorney's fees pursuant to, inter alia, §1780(d) of the CLRA and Code of Civil Procedure §1021.5.

5. For actual damages in an amount to be determined at trial for the Third, Fourth and Fifth Causes of Action;

6. For punitive damages in an amount to be determined at trial for the for the Fourth Cause of Action;

7. For an award of costs and any other award the Court might deem appropriate; and

8. For pre- and post-judgment interest on any amounts awarded.

Hewell Law Firm, APC

DATED: April 7, 2008.

        By: */s/ Harold M. Hewell*
           Harold M. Hewell
           Attorney for Plaintiff

## EXHIBIT LIST

| EXHIBIT | PAGES |
|---|---|
| **Exhibit "A":**<br>Copies of labels of the Products. | A - 20 through A - 23 |
| **Exhibit "B":**<br>Kraft website page<br>http://www.kraftfoods.com/kf/HealthyLiving/Healthy+Living+<br>Library/powerup.htm. | B - 25 through B - 26 |
| **Exhibit "C":**<br>Copies of the marketing for other products using a derivative<br>of the word calcium in the product marketing | C - 28 through C - 32 |

Exhibit "A"

▼ OPEN HERE ▼

**INGREDIENTS:** MODIFIED ... STA...
PROCESSED WITH ALK... MAL...
TETRASODIUM PYROPHOSPHA...
DISODIUM PHOSPHATE FOR TH...
CONTAINS LESS THAN 2% OF NATUR...
NATURAL AND ARTIFICIAL COL...
LECITHIN, CALCIUM SULFATE, ACE...
FLAVING), ASPARTAME (SWEETENER) ...
MONO- AND DIGLYCERIDES, ...
POTASSIUM (SWEETENER) B...
+PHENYLKETONURICS: ...
+PHENYLALANINE.

KRAFT FOODS NORTH AMERIC...
DIVISION OF KRAFT FOODS GLO...
TARRYTOWN, NY 1(05 ...
© KF HOLDINGS

jell-o.com
1-800-431-1001

## 5 MINUTE PUDD...
### DIRECTIONS

① BEAT puddi... ... fa...
into 2 cups milk ... ...
free milk in ... wi...
wire whisk 2 m...
② POUR at on... ce i...
individual se... ...
Pudding will be so...
and ready to eat w...
5 minutes. Makes ...
4 (1/2-cup) servings

## Nutrition Facts
Serving Size 1/4 package (11g)
Servings Per Container 4

| Amount Per Serving | As Packaged | 1/2 cup Prepared With Fat Free Milk |
|---|---|---|
| Calories | 35 | 80 |
| Calories from Fat | 0 | 0 |

| | % Daily Value** | |
|---|---|---|
| Total Fat 0g* | 0% | 0% |
| Saturated Fat 0g | 0% | 0% |
| Trans Fat 0g | | |
| Cholesterol 0mg | 0% | 0% |
| Sodium 310mg | 13% | 15% |
| Total Carbohydrate 8g | 3% | 5% |
| Dietary Fiber <1g | 3% | 3% |
| Sugars 0g | | |
| Protein <1g | | |
| Vitamin A | 0% | 4% |
| Vitamin C | 0% | 0% |
| Calcium | 0% | 15% |
| Iron | 4% | 4% |

* Amount in dry mix
** Percent Daily Values are based on a 2,000 calorie diet.

Calorie Comparison: This product-80 Regular Instant Pudding-160

4860G2

0400003397009000

---

# JELL-O®
BRAND

## Chocolate FLAVOR

### JELL-O® PUDDING PARFAIT:

① PREPARE JELL-O® Pudding as directed on back of package. Spoon evenly into 4 dessert dishes. Refrigerate at least 1 hour.

② TOP each dessert with 1/4 cup sliced bananas or strawberries and 2 Tbsp. thawed COOL WHIP FREE™ Whipped Topping just before serving. Makes 4 servings, about 2/3 cup each.

---

**Chocolate** FLAVOR
Best When Used By

**Calci-YUM!**
A Good Source of Calcium as Prepared

# JELL-O®
BRAND

## Sugar Free · Fat Free
### 1/3 FEWER CALORIES THAN REGULAR PUDDING

REDUCED CALORIE PUDDING & PIE FILLING

Ⓚ D

Four 1/2-cup servings

## Instant

### Chocolate FLAVOR

NET WT 1.4 OZ (39g)

🌞 Sensible Solution™

### TRADITIONAL PUDDING PIE: Makes 8 Servings

① BEAT pudding mix into 1-3/4 cups milk in bowl with wire whisk 1 minute. (For fuller pie, use 2 pkg. [4-serving size each] and 2-3/4 cups milk.)

② POUR at once into 9-inch HONEY MAID® Graham Pie Crust. Refrigerate at least 1 hour (3 hours for fuller pie) or until set.
Note: Pudding will not set if made with soy milk.

A - 20



INGREDIENTS: SUGAR, MODIFIED
FOOD STARCH, CONTAINS LESS
THAN 2% OF NATURAL FLAVOR,
DISODIUM PHOSPHATE AND
TETRASODIUM PYROPHOSPHATE
(FOR THICKENING), MONO- AND
DIGLYCERIDES (PREVENT
FOAMING), YELLOW 5, BHA
BHA (PRESERVATIVE).

KRAFT FOODS NORTH AMERICA
DIVISION OF KRAFT FOODS GLOBAL, INC.
TARRYTOWN, NY 10591 USA
© KF HOLDINGS

jell-o.com
1-800-431-1001

## Nutrition Facts

Serving Size 1/4 package (26g)
Servings Per Container 4

| | As Packaged | As 1/2 cup Prepared With 2% Reduced Fat Milk |
|---|---|---|
| **Amount Per Serving** | | |
| Calories | 90 | 150 |
| Calories from Fat | 0 | 20 |

| | % Daily Value** |
|---|---|
| Total Fat 0g* | 0% | 4% |
| Saturated Fat 0g | 0% | 8% |
| Trans Fat 0g | | |
| Cholesterol 0mg | 0% | 3% |
| Sodium 310mg | 13% | 15% |
| Total Carbohydrate 24g | 8% | 10% |
| Dietary Fiber 0g | 0% | 0% |
| Sugars 19g | | |
| Protein 0g | | |
| Vitamin A | 0% | 4% |
| Vitamin C | 0% | 0% |
| Calcium | 0% | 15% |
| Iron | 0% | 0% |

* Amount in dry mix
** Percent Daily Values are based on a 2,000 calorie diet.

### 5 MINUTE PUDDING DIRECTIONS

① BEAT pudding mix into 2 cups cold milk in bowl with wire whisk 2 minutes.

② POUR at once into individual serving dishes. Pudding will be soft-set and ready to eat within 5 minutes. Makes 4 (1/2cup) servings.

▼ OPEN HERE ▼


JELL-O® BRAND
Instant PUDDING & PIE FILLING
Lemon ARTIFICIAL FLAVOR

### JELL-O® PUDDING MIX-INS: Makes 4 Servings

① PREPARE JELL-O® Pudding as directed on package.

② TRY these great ideas to mix in your pudding:
• 1 cup strawberries or banana slices
• 1 cup JET-PUFFED® Miniature Marshmallows
• 1 cup PLANTERS® Peanuts
Or 1 cup any combination of the above


4860G2
0 40003 73006 00



Lemon ARTIFICIAL FLAVOR
Best When Used By



Calci-YUM!
A Good Source of Calcium as Prepared

JELL-O® BRAND

Instant
PUDDING & PIE FILLING

Ⓚ
Four 1/2-cup servings

NET WT 3.4 OZ (96g)

Lemon ARTIFICIAL FLAVOR

### TRADITIONAL PUDDING PIE: Makes 8 Servings

① PREPARE as directed for pudding, reducing milk to 1-3/4 cups.
(For fuller pie, use 2 pkg. [4-serving size each] and 2-3/4 cups milk.)

② POUR at once into 9-inch HONEY MAID® Graham Cracker Pie Crust. Refrigerate at least 1 hour (3 hours for fuller pie) or until set.


JELL-O® BRAND





0 40003 73006

16
1/2
1/2
6

A 21

▼ OPEN HERE ▼

INGREDIENTS: SUGAR, DEXTROSE, CORNSTARCH, MODIFIED CORNSTARCH, CONTAINS LESS THAN 2% OF NATURAL AND ARTIFICIAL FLAVOR, CALCIUM CARRAGEENAN, POLYSORBATE 60 (PREVENTS SCORCHING), YELLOW 5, YELLOW 6.

KRAFT FOODS NORTH AMERICA, INC.
DIVISION OF KRAFT FOODS GLOBAL, INC.
TARRYTOWN, NY 10591 USA
© KF HOLDINGS

**PUDDING DIRECTIONS:**
❶ STIR mix into 2 cups milk in medium saucepan.
❷ COOK on medium heat until mixture comes to a full boil, stirring constantly.
❸ POUR into dessert dishes (pudding thickens as it cools). Serve warm or chilled. Store leftover pudding in refrigerator.
Makes 4 (1/2-cup) servings.

*Fat free, 1% lowfat or lactose-reduced milk can be used but may result in a softer set. Do not use nonfat dry milk—pudding will be thin.

jell-o.com
1-800-431-1001

## Nutrition Facts
Serving Size 1/4 package (22g)
Servings Per Container 4

| Amount Per Serving | As Packaged | 1/2 cup Prepared With 2% Reduced Fat Milk |
|---|---|---|
| Calories | 80 | 140 |
| Calories from Fat | 0 | 20 |

| | % Daily Value** |
|---|---|
| Total Fat 0g* | 0% | 4% |
| Saturated Fat 0g | 0% | 8% |
| Trans Fat 0g | | |
| Cholesterol 0mg | 0% | 3% |
| Sodium 135mg | 6% | 8% |
| Total Carbohydrate 21g | 7% | 9% |
| Dietary Fiber 0g | 0% | 0% |
| Sugars 16g | | |
| Protein 0g | | |
| Vitamin A | 0% | 4% |
| Vitamin C | 0% | 0% |
| Calcium | 0% | 15% |
| Iron | 0% | 0% |

*Amount in dry mix
**Percent Daily Values are based on a 2,000 calorie diet.

# JELL-O®
BRAND
*Cook & Serve*

Vanilla ARTIFICIAL FLAVOR

**JELL-O® PUDDING MIX-INS:**
❶ Prepare pudding as directed on pkg; cool 5 min.
❷ Stir in one of the following:
• 1 finely chopped square BAKER'S® Semi-Sweet Baking Chocolate
• 1/2 cup chopped banana
• 1/2 cup coarsely chopped NILLA® Wafers
Makes 4 servings, about 1/2 cup each.

4860G2

0401272690010 0



Calci-YUM!™
A Good Source of Calcium as Prepared

# JELL-O®
BRAND
*Cook & Serve*

Ⓚ D
Pudding & Pie Filling
Four 1/2-cup servings

NET WT
3 OZ (85g)

Vanilla ARTIFICIAL FLAVOR

JELL-O®
BRAND

Vanilla ARTIFICIAL FLAVOR
Best When Used By

**TRADITIONAL PIE DIRECTIONS:** Makes 6 servings
❶ PREPARE as directed for pudding. Cool 5 min., stirring twice.
❷ POUR into cooled 9-inch baked pastry crust or HONEY MAID® Graham Pie Crust. For deep-dish pastry crust, use 2 pkg. (4-serving size each) pudding and 3-1/2 cups milk.
❸ REFRIGERATE at least 3 hours (or 4 hours for fuller pie) or until set. Store in refrigerator.

**MICROWAVE DIRECTIONS:**
❶ STIR mix into 2 cups milk in 1-1/2-qt. microwaveable bowl.
❷ MICROWAVE on HIGH 6 min.

A - 22

▲ OPEN HERE ▲

## Nutrition Facts

Serving Size 1/4 package (22g)
Servings Per Container 4

| Amount Per Serving | As Packaged | 1/2 cup Prepared With 2% Reduced Fat Milk |
|---|---|---|
| Calories | 80 | 140 |
| Calories from Fat | 0 | 20 |

| | % Daily Value** |
|---|---|
| Total Fat 0g* | 0% | 4% |
| Saturated Fat 0g | 0% | 8% |
| Trans Fat 0g | | |
| Cholesterol 0mg | 0% | 3% |
| Sodium 135mg | 6% | 8% |
| Total Carbohydrate 21g | 7% | 9% |
| Dietary Fiber 0g | 0% | 0% |
| Sugars 16g | | |
| Protein 0g | | |
| Vitamin A | 0% | 4% |
| Vitamin C | 0% | 0% |
| Calcium | 0% | 15% |
| Iron | 0% | 0% |

*Amount in dry mix
**Percent Daily Values are based on a 2,000 calorie diet.

INGREDIENTS: SUGAR, DEXTROSE, CORNSTARCH, MODIFIED CORNSTARCH, CONTAINS LESS THAN 2% OF NATURAL AND ARTIFICIAL FLAVOR, SALT, CALCIUM CARRAGEENAN, THICKEN... CALCIUM SULFATE, TETRASODIUM... POLYSORBATE 60 (PREVENTS SCORCHING), YELLOW 5.
KRAFT FOODS NORTH AMERICA...
DIVISION OF KRAFT FOODS INC, USA
TARRYTOWN, NY 10591 USA
© KF HOLDINGS

jell-o.com
1-800-431-1...

### PUDDING DIRECTIONS:
❶ STIR mix into 2 cups m... in medium saucepan.
❷ COOK on medium heat... until mixture comes to a full boil, stirring constan...
❸ POUR into dessert dis... (Pudding thickens as it cools). Serve warm or chilled. Store leftover pudding in refrigerator.
Makes 4 1/2-cup servin...

*Fat free, 1% lowfat or lactose-reduced milk ca... be used but may result ...a softer set. Do not use nonfat dry milk—puddin... will be thin.





# JELL-O® BRAND
## Cook & Serve
### Vanilla ARTIFICIAL FLAVOR

JELL-O BRAND

### JELL-O® PUDDING MIX-INS:
❶ Prepare pudding as directed on pkg.; cool 5 min.
❷ Stir in one of the following:
- 1 finely chopped square BAKER'S® Semi-Sweet Baking Chocolate
- 1/2 cup chopped banana
- 1/2 cup coarsely chopped NILLA® Wafers
Makes 4 servings, about 1/2 cup each.

4860G2

0401272690010

---

Vanilla ARTIFICIAL FLAVOR
Best When Used By

JELL-O BRAND

## Calci-YUM!™
### A Good Source of Calcium as Prepared

# JELL-O®
BRAND
## Cook & Serve
Ⓚ D
### Pudding & Pie Filling
Four 1/2-cup servings

NET WT 3 OZ (85g)

### Vanilla ARTIFICIAL FLAVOR

### TRADITIONAL PIE DIRECTIONS: Makes 6 servings
❶ PREPARE as directed for pudding. Cool 5 min., stirring twice.
❷ POUR into cooled 9-inch baked pastry crust or HONEY MAID® Graham Pie Crust. For deep-dish pastry crust, use 2 pkg. (4-serving size each) pudding and 3-1/2 cups milk.
❸ REFRIGERATE at least 3 hours (or 4 hours for fuller pie) or until set. Store in refrigerator.



---

### MICROWAVE DIRECTIONS:
❶ STIR mix into 2 cups milk in 1-1/2-qt. microwaveable bowl.
❷ MICROWAVE on HIGH 6 min.

A - 23

Exhibit "B"

**KRAFT**
kraftfoods.com
deliciously simple. everyday.

Save recipes to your NEW personal Recipe Box!                         7.19.2007

About Kraft | Shop Kraft | Contact Us | Sign in/Join          Search Kraft: [            ] GO

Recipe Search | Community | Dinner | Food & Family | Cooking School | **Healthy Living** | Promotions | Products

Enter ingredients or recipe title:

[            ]

**OR**

Search by meal occasion

[ Select one        ]

and recipe type

[ Select one        ]  [  ]

Advanced Recipe Search
Recipe Category List

Get **FREE** ideas and recipes
e-mailed to you each week!

[ Sign me up ]



**Power Up Your Diet For Strong Bones**

Treat yourself and your family to the gift of strong bones. Getting enough calcium in your diet and being physically active are key contributors to strong bones for women of all ages.

It is estimated that 9 out of 10 females ages 13 to 51+ are not getting the daily recommended amount of calcium. "Despite calcium-rich dairy products and other foods that are fortified with calcium, people, especially teenagers and the elderly, aren't getting enough. It has reached a crisis level in America," says Dr. Robert P. Heaney, a calcium and osteoporosis expert at Creighton University in Omaha.

How Much Calcium Do I Need?

| Age | Calcium (mg) |
|---|---|
| 1-3 years | 500 |
| 4-8 years | 800 |
| 9-18 years | 1300 |
| 19-50 years | 1000 |
| 51 years + | 1200 |

*Source: Institute of Medicine, 1997*

Suppose you are aiming for 1000 mg calcium every day. How do you get there? Start by reading the Nutrition Facts panel and simply count up your calcium. Choose 2-3 servings of calcium-rich dairy foods. For example, milk contains 300 mg per 8 ounces, as does 1 ½ ounces of cheese. But there are plenty of other foods that contain calcium. See the list below for examples of foods that can help you meet your calcium quota:

| Food | Calcium (mg) per serving |
|---|---|
| Milk, 2% reduced fat (1 cup) | 300 |
| Calcium-fortified orange juice (1 cup) | 300 |
| KRAFT 2% Milk Singles (3/4 ounce slice) | 250 |
| Salmon, canned with bone (3 ounces) | 200 |
| KRAFT 2% Milk Reduced Fat Natural Cheese (1 ounce) | 200 |
| LIGHT N' LIVELY Cottage Cheese with Added Calcium (1/2 cup) | 200 |

B - 25

| | |
|---|---|
| TOMBSTONE Cheese Pizza (1/4 of 12" pie) | 200 |
| JELL-O INSTANT Pudding (1/2 cup) | 150 |
| LIGHT N" LIVELY Yogurt (1/2 cup) | 100 |
| Waffle, frozen, ready-to-eat with added calcium (2 waffles, about 70g) | 100 |
| TEDDY GRAHAMS Honey, Cinnamon or Chocolate Graham Snacks (24 pieces) | 100 |
| Broccoli, cooked (1/2 cup) | 40 |

Calcium containing foods can be enjoyed at every meal. If keeping tabs on calories and fat has you cutting back on dairy foods, try the many lower fat and fat-free varieties of milk, cheese and yogurt.

Weight-bearing exercise may also strengthen bones and slow the rate of bone loss. Exercises that are weight bearing include walking, jogging, dancing, playing tennis or basketball, jumping rope and aerobic dance. However, the benefits of exercise last only as long as you maintain the program. Build up to 30 minutes, three times per week of weight-bearing activities.

Explore all the easy and delicious ways to make calcium-rich foods a part of your regular menu. Bone-up on calcium!

Kraft Corporate Site  | International Sites   | Comida Kraft  | Kraft Canada  | Kraft Military  | Kraft Food Service                    Privacy | Copyright

Exhibit "C"





help | bookmark | contact | tell a friend

[                    ] Search

More than 479,640 members

**Calories in Tropical Calci-Yum Monster Calcium Fruit Smoothie Blend**

Manufactured by Odwalla

[ Add item to food log ]

[ Create a free account ]

## Nutrition Facts

Serving Size 8 fl oz (240.0 g)

**Amount Per Serving**

| **Calories** 160 | Calories from Fat 0 |
|---|---|
| | **% Daily Value** * |
| **Total Fat** 0.0g | **0%** |
| **Sodium** 10mg | **0%** |
| **Total Carbohydrates** 38.0g | **13%** |
| Dietary Fiber 1.0g | **4%** |
| Sugars 31.0g | |
| **Protein** 1.0g | |

| | | | |
|---|---|---|---|
| Vitamin A 0% | • | Vitamin C 90% | |
| Calcium 50% | • | Iron 0% | |

* Based on a 2000 calorie diet

**Legend**



■ Fat
■ Protein
■ Carbs
■ Alcohol
■ Other

**Calorie Breakdown** (?)



**Daily Values** (?)



## Nutritional Analysis

**Nutrition Grade**

22% confidence

**Good points**
Very low in sodium
Very high in calcium
Very high in vitamin C

**Bad points**
Very high in sugar

**B+**

Bad Grade?

In order to analyze your entire menu, create a free account.

## Hot on Calorie-Count

Popular topics from our forums.

- how am I gonna do this?
- Does anyone know of some natural diuretics?

- What to do with clothes that don't fit? Hand them down...
- Alli Anyone?
- SO CONFUSED! please help!



©2003-2007 Calorie-Count.com. A part of About, Inc., All Rights Reserved. Terms & Conditions
©2007 About, Inc., A part of The New York Times Company. All Rights Reserved.

7/17/2007



## KosherVitamins.com

Order By Phone: 1-800-645-1899

MY ACCOUNT | VIEW CART | ORDER STATUS | HELP CENTER

Home | Brands | Departments | Specials | Best-Sellers | Encyclopedia | Ask The Nutritionist

**SHOP BY**

- Brands
- Products A-Z
- Departments
  Vitamins & Supplements
  Herbal Supplements
  Children's Supplements
  Personal Care
  Herbal Teas/Throat Drops
  Juicers
  Misc.

**FIND A PRODUCT**
Enter a keyword below

**Resource Center**

- Nutritionist
- Encyclopedia
- Reference Library
- Contact Us
- About Us

Contact Sales
1-800-645-1899

VeriSign Secured
VERIFY ▸

Shipping & Delivery
Placing an Order
Returns Policy
Payment Methods
Privacy Policy
Security Policy

TOP > Vitamins & Supplements > Minerals > Calcium

### Maxi Health Chewable Calcium (Calci-Yum) Natural Chocolate Flavor  180 Chewies
Product # MXS-17118

| | |
|---|---|
| List Price: | $31.95 |
| **Our Price:** | $22.37 |
| You Save: | 30% |

Qty: 1    [ADD TO CART]

See all MAXI HEALTH products →

**Maxi Health RESEARCH INC.**
Click here to learn about this hechsher.

**Description:**
Chewable Calcium with Magnesium and Vitamin D
**For children and adults with minimal dairy intake
Supports healthy, strong bone and**

## Supplement Facts

**Serving Size** 4 tablets
**Servings Per Container** 45

| Amount Per Serving | | % DV |
|---|---|---|
| Calories | 21 | |
| Total Carbohydrate | 5.2 g | <2% |
| Dietary Fiber | 0.1 g | <1% |
| Sugars | 4.9 g | ** |
| Other Carbohydrates | 0.3 g | ** |
| Calcium (as calcium carbonate, citrate) | 1000 mg | 100% |
| Vitamin D (as cholecalciferol) | 400 IU | 100% |
| Magnesium (as magnesium | 200 mg | 50% |

Shopping Cart

your cart is currently empty

Free Delivery on most orders over $100!

view cart    [CHECKOUT]

C - 31

oxide, citrate)

*Percent Daily Values are based on 2,000 calorie diet *%DV (Daily Value) not established

**Ingredients:**
Sucrose, fructose, maltodextrin, natural flavors, acacia, cocoa, vegetable stearine, magnesium stearate, Enzymax® (calcium carbonate, bromelain, papain, lipase, amylase, protease, silica).

**Recommend Use:**
Store tightly closed in a cool, dry place. Keep out of reach of children. Chew four (4) tablets daily, or as directed

**Food Sensitivity:**
This product contains no animal products, wheat, salt, milk, yeast, artificial flavors, colorings or preservatives.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.*

The products and the claims made about specific products on or through this site have not been evaluated by KosherVitamins.com or the United States Food and Drug Administration and are not approved to diagnose, treat, cure or prevent disease. The information provided on this site is for informational purposes only and is not intended as a substitute for advice from your physician or other health care professional or any information contained on or in any product label or packaging. You should not use the information on this site for diagnosis or treatment of any health problem or for prescription of any medication or other treatment. You should consult with a healthcare professional before starting any diet, exercise or supplementation program, before taking any medication, or if you have or suspect you might have a health problem.
© 2005 Kosher Vitamins Express. All Rights Reserved.
Report a bug on KosherVitamins.com

C - 32