1    Noah A. Katsell (Bar No. 217090)
noah.katsell@dlapiper.com
2    **DLA PIPER US LLP**
401 B Street, Suite 1700
3    San Diego, CA 92101-4297
Tel: 619.699.2700
4    Fax: 619.699.2701

5    Amy Weinfeld Schulman (To apply pro hac vice)
amy.schulman@dlapiper.com
6    **DLA PIPER US LLP**
1251 Avenue of the Americas
7    New York, NY 10020-1104
Tel: 212.335.4500
8    Fax: 212.335.4501

9    Attorneys for Defendant
Kraft Foods Global, Inc.

10

11               UNITED STATES DISTRICT COURT

12             SOUTHERN DISTRICT OF CALIFORNIA

13

14    ADRIANNE SMITH, as an individual and      CASE NO. 07 CV 2192 BEN (WMC)
on behalf of all others similarly situated,
15                                   Assigned to Hon. Roger T. Benitez

16             Plaintiff,           **DEFENDANT KRAFT FOODS GLOBAL,
INC.'S MEMORANDUM OF POINTS AND**
17            v.                  **AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS FIRST AMENDED**
18                                    **COMPLAINT**

19    KRAFT FOODS GLOBAL, INC., a
Delaware corporation,             [Filed concurrently with (1) Notice of Motion
and Motion to Dismiss and (2) Request for
20                                    Judicial Notice]

21            Defendant.          Date:    May 19, 2008
Time:    10:30 a.m.
22                                    Place:    Courtroom 3

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

I.      INTRODUCTION ..................................................................................................1

II.     SUMMARY OF ALLEGATIONS ........................................................................1

III.    PLEADINGS STANDARDS UNDER RULE 12(B)(6) ........................................3

IV.     PLAINTIFF'S UCL, FAL, AND CLRA CLAIMS ARE DEFICIENT ...............3

        A.      Plaintiff Cannot Allege A Statement Likely To Deceive A
                Reasonable Consumer ...............................................................................3

                1.      The Statements On Jell-O Packages Are True And The
                        Relevant Information Is Readily Available ...................................5

                2.      The Statement That Jell-O Is "Calci-Yum!" Is Non-actionable
                        Puffery ...........................................................................................8

        B.      Plaintiff Cannot Allege A Legally Cognizable Injury ...............................9

V.      PLAINTIFF'S MISREPRESENTATION CLAIMS ARE DEFICIENT ...............10

        A.      Plaintiff Cannot Allege Falsity .................................................................10

        B.      Plaintiff Cannot Allege Justifiable Reliance ...........................................11

        C.      Plaintiff Cannot Allege Damages ............................................................12

        D.      Plaintiff Fails To Plead Fraud With Particularity ...................................13

VI.     PLAINTIFF'S BREACH OF EXPRESS WARRANTY CLAIM IS
        DEFICIENT ..........................................................................................................14

        A.      Plaintiff Cannot Allege Breach Of Express Warranty ............................14

        B.      Plaintiff Cannot Allege Damages ............................................................15

VII.    PLAINTIFF'S FAC CONFLICTS WITH FEDERAL LAW ...............................15

VIII.   CONCLUSION .....................................................................................................17

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

Alliance Mortgage Co. v. Rothwell,
    10 Cal. 4th 1226 (1995) ........................................................................................ 12

4

Am. Bioscience, Inc. v. Bristol Meyers Squibb Co.,
    No. CV 00-8577-WMB, 2000 WL 1278348 (C.D. Cal. Sept. 7, 2000) ........................ 16

5

Atari Corp. v. The 3DO Co.,
    No. C 94-202298, 1994 WL 723601 (N.D. Cal. May 16, 1994) ................................... 8

6

7

Bardin v. DaimlerChrysler Corp.,
    136 Cal. App. 4th 1255 (2006) .................................................................................. 5

8

Bell Atlantic Corp. v. Twombly,
    550 U.S. __, No. 05-1126, 2007 WL 1461066 (May 21, 2007) .................................. 3

9

10

Belton v. Comcast Cable Holdings, LLC,
    151 Cal. App. 4th 1224 (2007) .................................................................................. 4

11

Bldg. Permit Consultants, Inc. v. Mazur,
    122 Cal. App. 4th 1400 (2004) ................................................................................ 12

12

13

Bly-Magee v. California,
    236 F.3d 1014 (9th Cir. 2001) ................................................................................. 13

14

BP West Coast Prods., LLC v. Greene,
    318 F. Supp. 2d 987 (E.D. Cal. 2004) ....................................................................... 6

15

16

Brockey v. Moore,
    107 Cal. App. 4th 86 (2003) ..................................................................................... 5

17

Brown v. Super. Ct.,
    751 P.2d 470 (Cal. 1988) ........................................................................................ 14

18

19

Buckman Co. v. Plaintiffs' Legal Comm.,
    531 U.S. 341 (2001) ................................................................................................ 16

20

Chavez v. Blue Sky Natural Beverage Co.,
    No. C-06-6609, 2007 WL 1691249 (N.D. Cal. June 11, 2007) ..................... 9, 10, 12, 13

21

22

Colgan v. Leatherman Tool Group, Inc.,
    135 Cal. App. 4th 663 (2006) ................................................................................... 9

23

Consumer Advocates v. Echostar Satellite Corp.,
    113 Cal. App. 4th 1351 (2003) ............................................................................. 4, 8

24

25

Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.,
    911 F.2d 242 (9th Cir. 1990) ..................................................................................... 8

26

Cortez v. Purolater Air Filtration Prods. Co.,
    23 Cal. 4th 163 (2003) ............................................................................................. 9

27

28

Day v. AT&T Corp.,
    63 Cal. App. 4th 325 (1998) .................................................................................... 9

Dowhal v. Smithkline Beecham Consumer Healthcare,
    32 Cal. 4th 910 (2004) ............................................................................................ 16

Dumas v. Kipp,
    90 F.3d 386 (9th Cir. 1996) ...................................................................................... 3

English v. Gen. Elec. Co.,
    496 U.S. 72 (1990) ................................................................................................... 16

Fragle v. Faulkner,
    110 Cal. App. 4th 229 (2003) .................................................................................. 12

Fraker v. KFC Corp.,
    No. 06-CV-01284-JM, 2007 U.S. Dist. LEXIS 32041
    (S.D. Cal. April 30, 2007) ........................................................................................ 16

Freeman v. Time, Inc.,
    68 F.3d 285 (9th Cir. 1995) ............................................................................. 3, 4, 7

Glen Holly Entm't, Inc. v. Tektronix, Inc.,
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) .................................................................. 14

Goehring v. Chapman Univ.,
    121 Cal. App. 4th 353 (2004) .................................................................................. 12

Guido v. Koopman,
    1 Cal. App. 4th 837 (1991) ...................................................................................... 11

Haskell v. Time, Inc.,
    857 F. Supp. 1392 (E.D. Cal. 1994) ................................................................. 4, 7, 8

Heighley v. J.C. Penney Life Ins. Co.,
    257 F. Supp. 2d 1241 (C.D. Cal. 2003) .................................................................... 4

In re Seagate Tech. II Sec. Litig.,
    No. 88-20489, 1989 WL 222969 (N.D. Cal. May 3, 1989) .................................... 12

Johnson v. Fletcher,
    97 Cal. App. 153 (1929) .................................................................................... 10, 11

Kanter v. Warner-Lambert Co.,
    99 Cal. App. 4th 780 (2002) .................................................................................... 16

Keith v. Buchanan,
    173 Cal. App. 3d 13 (1985) ..................................................................................... 14

Laster v. T-Mobile USA, Inc.,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..................................................................... 9

Lavie v. Procter & Gamble Co.,
    105 Cal. App. 4th 496 (2003) ............................................................................... 4, 5

Lucas v. Dep't of Corrections,
    66 F.3d 245 (9th Cir. 1995)................................................................. 3

Lundquist v. Cont'l Cas. Co.,
    394 F. Supp. 2d 1230 (C.D. Cal. 2005) ............................................. 6

McDonnell Douglas Corp. v. Thiokol Corp.,
    124 F.3d 1173 (9th Cir. 1997) .......................................................... 14

McDougall v. Roberts,
    43 Cal. App. 553 (1919) .................................................................. 11

Moore v. Kayport Package Exp., Inc.,
    885 F.2d 531 (9th Cir. 1989)............................................................ 13

Nece v. Bennett,
    212 Cal. App. 2d 494 (1963)............................................................ 12

Neubronner v. Milken,
    6 F.3d 666 (9th Cir. 1993) ............................................................... 13

Ostayan v. Serrano Reconveyance Co.,
    77 Cal. App. 4th 1411 (2000)........................................................... 11

Papike v. Tambrands, Inc.,
    107 F.3d 737 (9th Cir. 1997)............................................................ 17

People ex rel. Dep't of Motor Vehicles v. Cars 4 Causes,
    139 Cal. App. 4th 1006 (2006) ........................................................... 4

Plotkin v. Sajahtera, Inc.,
    106 Cal. App. 4th 953 (2003)............................................................. 7

Reddy v. Litton Indus., Inc.,
    912 F.2d 291 (9th Cir. 1990).............................................................. 3

Rodarte v. Philip Morris, Inc.,
    No. CV-03-0353-FMC, 2003 WL 23341208
    (C.D. Cal. June 23, 2003) ................................................................ 15

Shvarts v. Budget Group, Inc.,
    81 Cal. App. 4th 1153 (2000)......................................................... 5, 7

Sprewell v. Golden State Warriors,
    266 F.3d 979 (9th Cir. 2001)............................................................. 3

Stationary Eng'rs Local 39 Health & Welfare Trust Fund v. Philip
    Morris, Inc.,
    No. C-97-01519 DLJ, 1998 WL 476265
    (N.D. Cal. April 30, 1998) .............................................................. 12

Summit Tech., Inc. v. High-Line Med. Instruments,
    922 F. Supp. 299 (C.D. Cal. 1996)................................................... 16

Universal By-Products, Inc. v. Modesto,
 43 Cal. App. 3d 145 (1974)........................................................................... 10

Van Ness v. Blue Cross of California,
 87 Cal. App. 4th 364 (2001) ........................................................................... 7

Vess v. Ciba-Geigy Corp. USA,
 317 F.3d 1097 (9th Cir. 2003).................................................................. 13, 14

Warren v. Fox Family Worldwide, Inc.,
 328 F.3d 1136 (9th Cir. 2003).......................................................................... 3

Whitaker v. Tandy, Corp.,
 No. C-97-00803, 1997 U.S. Dist. LEXIS 17085
 (N.D. Cal. Oct. 31, 1997)................................................................................ 4

Wilhelm v. Pray, Price, Williams & Russell,
 186 Cal. App. 3d 1324 (1986)........................................................................ 11

## STATUTES

21 U.S.C. § 343(r) .................................................................................................... 2, 15

Cal. Bus. & Prof. Code § 17200 ................................................................................. 2

Cal. Bus. & Prof. Code § 17204 ................................................................................. 9

Cal. Bus. & Prof. Code § 17500 ................................................................................. 2

Cal. Bus. & Prof. Code § 17535 ................................................................................. 9

Cal. Civ. Code § 1770, ............................................................................................... 3

Cal. Civ. Code § 1780 ................................................................................................ 9

Cal. Civ. Code § 3343(a) .......................................................................................... 12

Cal. Com. Code § 2313 ............................................................................................ 14

Cal. Com. Code § 2714(2) ........................................................................................ 15

## REGULATIONS

21 C.F.R. §10.30 ....................................................................................................... 17

21 C.F.R. § 101.54(c) ........................................................................................... 2, 15

21 C.F.R. § 101.9(c) ................................................................................................... 2

21 C.F.R. § 101.9(d) ................................................................................................... 2

21 C.F.R. § 101.9(e) ............................................................................................. 2, 15

21 C.F.R. § 101.13 ..................................................................................................... 2

**RULES**

Fed. R. Civ. P. 9(b) ......................................................................................... 13, 14

Fed. R. Civ. P. 12(b)(6).......................................................................................... 1, 3

Fed. R. Evid. 201(b) .................................................................................................. 6

**OTHER AUTHORITIES**

Minutes of In Chambers Order by Hon. R. Gary Klausner,
    <u>McKinnis v. Sunny Delight Beverages, Co.</u>,
    CV 07-02034-RGK (JCx) (C.D. Cal. entered Sept. 4, 2007) ............................................ 6, 7

Minutes of In Chambers Order by Hon. Gary Allen Feess,
    <u>McKinnis v. General Mills, Inc.</u>, CV 07-2521 GAF (FMOx)
    (C.D. Cal. entered Sept. 18, 2007) .................................................................................. 6

Minutes of In Chambers Order by Hon. Audrey B. Collins,
    <u>McKinnis v. Kellogg USA</u>, CV 07-2611 ABC (RCx)
    (C.D. Cal. entered Sept. 19, 2007) .................................................................................. 6, 7

DLA PIPER US LLP
SAN DIEGO

**I.    INTRODUCTION**

Defendant Kraft Foods Global, Inc. ("Kraft") manufactures Jell-O "Instant Pudding & Pie Filling" and "Cook & Serve Pudding & Pie Filling" (collectively, "Jell-O" or the "Products"). Jell-O labels state that the Products are "Calci-YUM!" and "A Good Source of Calcium as Prepared." (See First Amended Complaint ("FAC"), Exh. A.)  When prepared as directed, each serving of Jell-O provides 15% of the reference daily intake of calcium, making Jell-O a "good source" of calcium under federal food labeling regulations.  Plaintiff does not—and cannot—dispute that Jell-O pudding is a "good source" of calcium when prepared as directed.  (Id. ¶ 11; see also id. ¶ 16 (acknowledging that consumers obtain the nutritional benefits of calcium from the prepared pudding).)  Nonetheless, Plaintiff asserts that the Products' packaging is deceptive because, despite the clear statement that Jell-O is "A Good Source of Calcium as Prepared," she believed that the Products "contained calcium as sold and that she was paying for a calcium-containing food." (Compare id., Exh. A (emphasis supplied), with id. ¶ 16 (emphasis supplied).) Plaintiff claims she only learned that the Products must be prepared with milk when "a friend pointed this out." (Id. ¶ 16.)  Yet, this "material fact," which Plaintiff alleges was withheld from her, appears prominently on the Products' labels.  (See id., Exh. A.)  The front panel of Jell-O "Cook & Serve Pudding & Pie Filling" actually depicts milk being poured into the pudding.  (Id.)

Plaintiff initiated this litigation on November 16, 2007, when she filed her original Complaint asserting seven causes of action relating to the Products' labeling and marketing.  On February 13, 2008, Defendant responded with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and set April 21, 2008, for the hearing.  On April 7, 2008, rather than oppose Defendant's motion to dismiss, Plaintiff amended her Complaint, abandoning her claim for unjust enrichment.  Plaintiff's Amended Complaint, however, suffers from the same deficiencies as her original Complaint, and each of Plaintiff's claims lacks a necessary element that she does not—and cannot—allege.  Accordingly, the FAC fails "to state a claim upon which relief can be granted" and should be dismissed.  Fed. R. Civ. P. 12(b)(6).

**II.    SUMMARY OF ALLEGATIONS**

The Products that Plaintiff alleges she purchased do not contain ready-to-eat pudding.

1  Each box contains a dry powder that must be mixed with milk to prepare edible pudding, and the

2  back of the box provides clear directions for this preparation.  The preparation directions for

3  Jell-O "Instant Pudding & Pie Filling" are: "BEAT pudding mix into 2 cups <u>cold</u> milk in bowl

4  with wire whisk …. Pudding will be … ready to eat within 5 minutes." The directions for Jell-O

5  "Cook & Serve Pudding & Pie Filling" are: "STIR mix into 2 cups milk in medium saucepan ….

6  POUR into dessert dish…. Serve warm or chilled."[1]  (FAC, Exh. A (emphasis in original).)  The

7  back of the package also includes a prominent "Nutrition Facts" panel that lists the nutrition

8  information required by federal food labeling regulations promulgated by the Food and Drug

9  Administration ("FDA").[2]  As provided by these regulations, Jell-O's nutrition information is

10  presented in a dual column format.[3]  One column lists nutrition information for the dry,

11  unprepared powder in the package (under the column heading "As Packaged"), and the other

12  column presents nutrition information for the prepared pudding that consumers eat (under the

13  column heading "1/2 cup Prepared With 2% Reduced Fat Milk").  (<u>Id.</u>)  Jell-O is a good source of

14  calcium as prepared because each serving of pudding provides 15% of the daily supply of

15  calcium.[4]

16      Plaintiff has brought this litigation as a putative class action and asserts six causes of

17  action:  (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

18  § 17200 <u>et seq.</u>; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof.

19  Code § 17500 <u>et seq.</u>; (3) negligent misrepresentation; (4) intentional misrepresentation;

20

21  [1] Two of the side panels of the Products' packaging provide directions for the preparation of variations on traditional pudding.  In each recipe, the first step is to "Prepare" the pudding as

22  directed.  (<u>See</u> FAC, Exh. A.)

23  [2] <u>See</u> 21 C.F.R. § 101.9(d) (providing rules for the presentation of nutrition information and format of the "Nutrition Facts" panel).

24  [3] <u>See</u> 21 C.F.R. § 101.9(e) (providing for "dual labeling" of nutrition information for "two or more forms of the same food (e.g., both 'as purchased' and 'as prepared')").

25  [4] <u>See</u> 21 U.S.C. § 343(r) (providing for claims that "characterize[] the level of" certain nutrients); 21 C.F.R. § 101.13 (providing requirements for "nutrient content claims"); 21 C.F.R.

26  § 101.54(c)(1) ("The term[] 'good source' … may be used on the label and in the labeling of foods … provided that the food contains 10 to 19 percent of the RDI or the DRV per reference

27  amount customarily consumed."); 21 C.F.R. § 101.9(c)(8)-(9) (providing for label statements regarding nutrient content based on Reference Daily Intake ("RDI") and Daily Reference Value

28  ("DRV") levels expressed on labeling as "percent of Daily Value").

(5) breach of express warranty; and (6) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, et seq. Plaintiff seeks relief including an injunction, restitution, actual and punitive damages, pre- and post-judgment interest, and attorneys' fees and costs. (See FAC at 16–17 ("Prayer for Relief").)

## III.    PLEADING STANDARDS UNDER RULE 12(B)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While the factual allegations in a complaint are taken as true, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. ___, No. 05-1126, 2007 WL 1461066, at *8 (May 21, 2007) (citation, quotation marks, and alterations omitted) (explaining that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). A court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, a court will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren, 328 F.3d at 1139 (quotation marks omitted). If a complaint does not meet these pleading standards, it should be dismissed, and, if amendment would be futile, it should be dismissed with prejudice. Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996); Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995); Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## IV.    PLAINTIFF'S UCL, FAL, AND CLRA CLAIMS ARE DEFICIENT

### A.    Plaintiff Cannot Allege A Statement Likely To Deceive A Reasonable Consumer

In order to state a claim under the UCL, FAL, or CLRA, Plaintiff must allege that Defendant made statements that are likely to deceive a reasonable consumer. See Freeman v. Time, Inc., 68 F.3d 285, 289–90 (9th Cir. 1995) (explaining that "false or misleading advertising and unfair business practices claim[s] must be evaluated from the vantage of a reasonable

1  consumer[]") (quoting <u>Haskell v. Time, Inc.</u>, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994));

2  <u>Heighley v. J.C. Penney Life Ins. Co.</u>, 257 F. Supp. 2d 1241, 1260 (C.D. Cal. 2003) ("[T]he

3  plaintiff must prove that defendants' statements are misleading to a reasonable consumer");

4  <u>Consumer Advocates v. Echostar Satellite Corp.</u>, 113 Cal. App. 4th 1351, 1360 (2003)

5  (explaining that an advertisement "is judged by the effect it would have on a reasonable

6  consumer[]"); <u>Lavie v. Procter & Gamble Co.</u>, 105 Cal. App. 4th 496, 504 (2003) ("California

7  and federal courts applying the UCL … have consistently applied … an ordinary or 'reasonable

8  consumer' standard to evaluate unfair advertising claims").  The term "likely" means probable,

9  not just possible.  <u>See</u> <u>Freeman</u>, 68 F.3d at 289; <u>see also</u> <u>People ex rel. Dep't of Motor Vehicles v.</u>

10 <u>Cars 4 Causes</u>, 139 Cal. App. 4th 1006, 1016 (2006).  As the California Court of Appeal has

11 explained,

12  "Likely to deceive" implies more than a mere possibility that the advertisement
     might conceivably be misunderstood by some few consumers viewing it in an
13   unreasonable manner.  Rather, the phrase indicates that the ad is such that it is
     probable that a significant portion of the general consuming public or of targeted
14   consumers, acting reasonably in the circumstances, could be misled.

15 <u>Lavie</u>, 105 Cal. App. 4th at 508; <u>see also</u> <u>Consumer Advocates</u>, 113 Cal. App. 4th at 1360–62

16 (applying reasonable consumer test to UCL, FAL, and CLRA claims).

17        Whether a statement is likely to deceive a reasonable consumer is a legal question that a

18 court may determine as a matter of law on a motion to dismiss.  <u>See</u> <u>Whitaker v. Tandy, Corp.</u>,

19 No. C-97-00803, 1997 U.S. Dist. LEXIS 17085, at *8 (N.D. Cal. Oct. 31, 1997) ("The court …

20 may dismiss the matter if it decides that no reasonable consumer could have been misled by the

21 alleged misrepresentation.") (entering judgment on the pleadings that defendant did not violate

22 the UCL or FAL because statement in electronics advertisement was not deceptive as a matter of

23 law);  <u>Haskell</u>, 857 F. Supp. at 1399–1402 ("[I]f the alleged misrepresentation, in context, is such

24 that no reasonable consumer could be misled, then the allegation may be … dismissed as a matter

25 of law.") (dismissing UCL and FAL claims after determining that alleged misrepresentations

26 were not likely to mislead a reasonable consumer); <u>see also</u> <u>Belton v. Comcast Cable Holdings,</u>

27 <u>LLC</u>, 151 Cal. App. 4th 1224, 1241–42 (2007) (affirming summary adjudication of UCL and

28 CLRA claims based on determination that members of the public were not likely to be deceived

1    as a matter of law); <u>Bardin v. DaimlerChrysler Corp.</u>, 136 Cal. App. 4th 1255, 1274–76 (2006)

2    (affirming dismissal of UCL claim because plaintiff did not allege facts showing members of the

3    public were likely to be deceived or misled); <u>Lavie</u>, 105 Cal. App. 4th at 503 (explaining that

4    whether an advertisement is deceptive under the UCL is question of law); <u>Shvarts v. Budget</u>

5    <u>Group, Inc.</u>, 81 Cal. App. 4th 1153, 1158–60 (2000) (affirming dismissal of action because

6    alleged misrepresentation would not mislead a reasonable consumer).  The "primary evidence" in

7    such an inquiry is the label or advertisement itself.  <u>See</u> <u>Brockey v. Moore</u>, 107 Cal. App. 4th 86,

8    100 (2003) ("[T]he primary evidence in a false advertising case is the advertising itself.").

9                    **1.    The Statements On Jell-O Packages Are True And The Relevant**

10                                **Information Is Readily Available**

11        Despite the clear statement that Jell-O is "A Good Source of Calcium <u>as Prepared</u>,"

12   Plaintiff alleges that the marketing word "Calci-YUM!" is deceptive because it led her to believe

13   that the Products "contained calcium <u>as sold</u> and that she was paying for a calcium-containing

14   food." (<u>Compare</u> FAC, Exh. A (emphasis added), <u>with</u> FAC ¶ 16 (emphasis added).)  Plaintiff

15   claims the words "as prepared" are "vague" and that she was "misled" by Defendant's "omission

16   of [the] material fact" that the Products are prepared with milk.  (<u>Id.</u> ¶ 16.)  To the contrary, Jell-O

17   packages are clear that milk must be added to prepare the pudding and that the prepared pudding

18   consumers actually eat provides calcium.  The labels provide explicit directions for preparing the

19   pudding.  Directions for the Instant Pudding instruct consumers that the "pudding mix" must be

20   beaten with "2 cups <u>cold</u> milk" for two minutes before it is "ready to eat," and directions for the

21   Cook & Serve Pudding instruct consumers to "STIR mix into 2 cups milk," bring to a boil, and

22   then allow the mixture to cool and thicken before serving.  (<u>Id.</u>, Exh. A.)  The labels' "Nutrition

23   Facts" panels state that the dry powder mix does not contain calcium, but that the pudding, when

24   "Prepared With 2% Reduced Fat Milk," does.  (<u>Id.</u>)  Nonetheless, Plaintiff alleges that Jell-O

25   packaging is deceptive because the "nutritional panel … cannot be seen by the consumer standing

26   in the store aisle." (<u>Id.</u> ¶ 16.)  Plaintiff's allegations are insufficient as a matter of law both

27   because the language on Jell-O packaging is true and because Plaintiff cannot allege that the

28   language is likely to deceive a reasonable consumer.

1      Ample California and federal authority holds that statements on food product packaging

2    are not likely to deceive a reasonable consumer where the statements are true and the relevant

3    information is readily available on the products' labels.  See Minutes of In Chambers Order by

4    Hon. R. Gary Klausner, McKinnis v. Sunny Delight Beverages, Co., CV 07-02034-RGK (JCx)

5    (C.D. Cal. entered Sept. 4, 2007); Minutes of In Chambers Order by Hon. Gary Allen Feess,

6    McKinnis v. General Mills, Inc., CV 07-2521 GAF (FMOx) (C.D. Cal. entered Sept. 18, 2007);

7    Minutes of In Chambers Order by Hon. Audrey B. Collins, McKinnis v. Kellogg USA, CV 07-

8    2611 ABC (RCx) (C.D. Cal. entered Sept. 19, 2007).[5]  In Sunny Delight, General Mills and

9    Kellogg, the District Court for the Central District of California dismissed UCL, FAL and CLRA

10   class actions alleging that depictions of fruit on food labels led consumers to believe that the

11   products contained more or different fruits and fruit juices than they actually contained.  In each

12   case, the court dismissed the claims with prejudice:  the plaintiffs could not allege that a

13   reasonable consumer was likely to be misled because the labels truthfully and accurately stated

14   the products' contents.  In General Mills, the plaintiff's claims failed because the manufacturer

15   "truthfully disclosed the ingredients for its product" and a reasonable consumer is "expected to

16   peruse the product's contents simply by reading the side of the box containing the ingredient list."

17   (See General Mills at 5 (attached as Exh. B to Def.'s Req. for Judicial Notice).)  In Sunny

18   Delight, the court explained why the plaintiff could not state a claim:

19           No reasonable consumer, upon review of the label as a whole … would conclude
              Defendant's products contain significant quantities of fruit or fruit juice,
20         particularly when the label … indicates the exact fruit content of each product.
              Nutritional labels have long been required on food products and are familiar to
21         almost every reasonable consumer.

---

22   [5] Kraft respectfully requests that the Court take judicial notice of these three orders.  It is proper
     for the Court to take judicial notice of these orders as they are "public records capable of accurate
23   and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
     Fed. R. Evid. 201(b).  The allegations in the Sunny Delight, General Mills, and Kellogg
24   complaints are substantially similar to those asserted here, and, in each case, the court's analysis
     and disposition are relevant to the arguments raised in Kraft's Motion to Dismiss.  See, e.g.,
25   Lundquist v. Cont'l Cas. Co., 394 F. Supp. 2d 1230, 1243 (C.D. Cal. 2005) (taking judicial notice
     of orders filed in the Central and Northern Districts of California as persuasive authority on the
26   issue presented); BP West Coast Prods., LLC v. Greene, 318 F. Supp. 2d 987, 994 (E.D. Cal.
     2004) (taking judicial notice of "the opinions, complaints, briefs, and evidence filed in other
27   actions" in order to "review how other courts have addressed" the "arguments and contentions"
     raised in the controversy before it).  The orders are attached as exhibits to Defendant's Request
28   for Judicial Notice, filed concurrently with this Motion.

1    (See Sunny Delight at 4 (attached as Exh. A to Def.'s Req. for Judicial Notice).)  The Kellogg

2    court agreed, observing that the side panel of the package "lists all of the ingredients," and stating

3    that "Plaintiffs cannot claim surprise over these labels, which have long been required on food

4    products and are familiar to the reasonable consumer."  (See Kellogg at 5 (attached as Exh. C to

5    Def.'s Req. for Judicial Notice).)

6           Decisions outside the food arena also hold that a statement is not likely to deceive a

7    reasonable consumer where the pertinent information is readily available.  See, e.g., Freeman, 68

8    F.3d at 289–90 (affirming dismissal because statements in sweepstakes solicitation materials that

9    the plaintiff had won were not likely to mislead a reasonable consumer in light of qualifying

10   language in the materials);  Haskell, 857 F. Supp. at 1399–1403 (dismissing UCL and FAL

11   claims because alleged misrepresentations in sweepstakes material were not likely to mislead a

12   reasonable consumer when official rules were set forth); Plotkin v. Sajahtera, Inc., 106 Cal. App.

13   4th 953, 965–66 (2003) (finding as a matter of law that imposing extra fees for valet parking

14   service was not likely to deceive a reasonable consumer because fees were disclosed on parking

15   ticket); Van Ness v. Blue Cross of California, 87 Cal. App. 4th 364, 376–77 (2001) (affirming

16   summary judgment in favor of defendant insurer on UCL and CLRA claims because disputed

17   policy "in fact adequately disclose[d] the benefits" the insurer agreed to pay); Shvarts, 81 Cal.

18   App. 4th at 1158–60 (affirming dismissal of action because rental car refueling charges were

19   printed in the rental agreement and therefore were not likely to mislead a reasonable consumer).

20          Jell-O packages state that the Products are "Calci-YUM" and "A Good Source of Calcium

21   as Prepared."  (FAC, Exh. A.)  The Products' back panels direct consumers to prepare the product

22   with milk, and the "Nutrition Facts" panels list Jell-O's calcium content in two separate columns,

23   both as packaged and when prepared with milk.  (Id.)  Nutrition labels "have long been required

24   on food products and are familiar to the reasonable consumer."  (See Kellogg at 5.)  In this case,

25   even a "cursory" review of Jell-O's labels would inform a reasonable consumer that she must

26   prepare the product with milk before eating it, and that the prepared pudding provides 15% of the

27   daily reference value of calcium.  (See Sunny Delight at 4.)  The information on Jell-O labels is

28   clear, truthful, and accurate.  As a matter of law, Plaintiff cannot assert that Jell-O packaging is

1  likely to deceive a reasonable consumer, and her UCL, FAL, and CLRA claims fail.

2              **2.      The Statement That Jell-O Is "Calci-YUM!" Is Non-actionable Puffery**

3          "Advertising that amounts to 'mere' puffery is not actionable because no reasonable

4  consumer relies on puffery.  The distinguishing characteristics of puffery are vague, highly

5  subjective claims as opposed to specific, detailed factual assertions."  Haskell, 857 F. Supp. at

6  1399; see also Atari Corp. v. The 3DO Co., No. C 94-202298, 1994 WL 723601, at *2–*3 (N.D.

7  Cal. May 16, 1994) (dismissing UCL and FAL claims based on the determination that the

8  statement "The Most Advanced Home Gaming System in the Universe" was non-actionable

9  puffery).  "The common theme that seems to run through cases considering puffery … is that

10  consumer reliance will be induced by specific rather than general assertions."  Cook, Perkiss and

11  Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 246 (9th Cir. 1990) (approving an

12  Illinois district court's decision that the statement that defendant's lamps were "far brighter than

13  any lamp ever before" was puffery, but the statement that the lamps provided "35,000 candle

14  power and 10-hour life" were not); see also Consumer Advocates, 113 Cal. App. at 1361 (ruling

15  that the statements that a satellite television service provided "crystal clear digital video" and

16  "CD-quality" audio were non-actionable puffery, but representations that the service also

17  provided "50 channels" and a "7 day schedule" were factual assertions that could give rise to

18  claims under the UCL, FAL and CLRA.

19          The statement that Jell-O is "Calci-YUM!" is puffery:  it is not a "specific, quantifiable

20  claim[]," Atari, 1994 WL 723601, at *2; rather, it is a "vague" and "highly subjective" general

21  assertion.  Consumer Advocates, 911 F.2d at 246.  After all, how much calcium is required, and

22  how delicious must Jell-O pudding be, before the "reasonable consumer" would be satisfied the

23  product was "Calci-YUM!"?  See Consumer Advocates, 113 Cal. App. at 1361 ("[H]ow clear is

24  any given crystal?  How good are the speakers on the CD player?").  The marketing phrase

25  "Calci-YUM!" is not a "specific … assertion" as to the Products' calcium content.  See Cook,

26  911 F.2d at 246.  Accordingly, Kraft's use of the term is non-actionable puffery, and Plaintiff's

27  claims premised upon it fail as a matter of law.

28

DLA PIPER US LLP
SAN DIEGO

Case No. 07 CV 2192 BEN (WMC)

1    **B.    Plaintiff Cannot Allege A Legally Cognizable Injury**

2    To state a claim under the UCL and FAL, Plaintiff must allege that she was injured in fact

3    and lost money or property as a result of the allegedly deceptive conduct.  <u>See</u> Cal. Bus. & Prof.

4    Code §§ 17204, 17535 (providing that UCL and FAL actions may be prosecuted "by any person

5    who has suffered injury in fact and has lost money or property as a result" of an alleged

6    violation); <u>Laster v. T-Mobile USA, Inc.</u>, 407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005).

7    Plaintiff's CLRA claims also require her to allege that she was damaged by Defendant's alleged

8    conduct.  <u>See</u> Cal. Civ. Code § 1780 (providing that CLRA claims may be brought by a person

9    "who suffers any damage" as a result of an alleged violation); <u>Colgan v. Leatherman Tool Group,</u>

10    <u>Inc.</u>, 135 Cal. App. 4th 663, 696 (2006) (explaining that damages under the CLRA are to

11    "compensate for actual loss").

12    Plaintiff fails to allege an economic injury.  Although Plaintiff claims that she spent an

13    undisclosed amount of money purchasing Jell-O and milk, the mere fact that Plaintiff bought

14    Jell-O and the milk for its preparation does not mean that she was damaged.  The proper measure

15    of damages is not the purchase price, but the difference between the amount paid and the value of

16    what was received.  <u>See</u> <u>Cortez v. Purolater Air Filtration Prods. Co.</u>, 23 Cal. 4th 163, 174, 177

17    n.10 (2003) (stating that the UCL and FAL provide restitutionary relief, which is "the return of

18    the excess of what the plaintiff gave the defendant over the value of what the plaintiff received");

19    <u>Day v. AT&T Corp.</u>, 63 Cal. App. 4th 325, 339 (1998) (observing that, under the UCL and FAL,

20    it would be improper to require the defendant to return all of the money received from the sale of

21    an allegedly deceptive practice because consumers "received <u>exactly what they paid for</u>[]")

22    (emphasis in original); <u>Colgan</u>, 135 Cal. App. 4th at 667 (noting that damages under the CLRA

23    are "the difference between the actual value of that with which the defrauded person parted and

24    the actual value of that which he received").

25    The Northern District recently dismissed with prejudice a complaint based on allegedly

26    deceptive food labeling because the plaintiff failed to allege economic injury.  <u>See</u> <u>Chavez v. Blue</u>

27    <u>Sky Natural Beverage Co.</u>, No. C-06-6609, 2007 WL 1691249, at *4 (N.D. Cal. June 11, 2007).

28    In <u>Chavez</u>, the plaintiff asserted claims under the UCL, FAL, and CLRA, as well as for fraud,

1   against a beverage company based on false statements on packaging that the product was

2   manufactured in New Mexico.  Chavez, 2007 WL 1691249, at *2.  The plaintiff alleged that he

3   only purchased the beverages because he believed they were made in New Mexico and that he

4   would not have purchased them if he had known the truth.  Id. at *1–*3.  The court held that the

5   plaintiff's alleged injury and damages were "nonexistent," the proper measure of damages was

6   "the difference in value between what he was promised and what he received," and the plaintiff

7   did not allege that the products he bought were worth less than he paid for them.  Id. at *3–*4.

8          Plaintiff alleges she was damaged when she purchased Jell-O because the Products do

9   "not themselves contain calcium as Defendant led her to believe" and, "had she known[,] … she

10  would not have bought the Products." (FAC ¶ 16).  But like the plaintiff in Chavez, Plaintiff

11  cannot allege any difference between the value of what she was promised and what she received.

12  The Products' labels prominently state that the packaged mix must be combined with milk to

13  become edible pudding.  (See id., Exh. A.)  And Plaintiff acknowledges that the Products, when

14  prepared with milk as directed on the labels, provide calcium.[6]  (See id. ¶¶ 11, 16.)  Plaintiff

15  received exactly what she was promised, and she cannot allege that the Products were worth less

16  than she paid for them.  Accordingly, Plaintiff has failed to state a claim under the UCL, FAL, or

17  CLRA.

18  **V.      PLAINTIFF'S MISREPRESENTATION CLAIMS ARE DEFICIENT**

19          **A.      Plaintiff Cannot Allege Falsity**

20          Plaintiff's misrepresentation claims fail because she cannot allege that the alleged

21  representations are false, which is an essential component of all fraud claims.  Universal By-

22  Products, Inc. v. Modesto, 43 Cal. App. 3d 145, 151 (1974) (explaining that in a fraud claim the

23  "essential allegation is the general statement that the representation or promise was false");

24  Johnson v. Fletcher, 97 Cal. App. 153, 155 (1929) (stating that a fraud claim must allege that

25  _____

26  [6]  Plaintiff also complains that she "had to pay a hidden price for the separate purchase of the milk
    in order to get the nutritional benefit she sought." (FAC ¶ 16.)  Far from being hidden, the
27  information that the consumer must add milk to the packaged mix is provided on the labels of all
    the Products, both in the directions for preparation and the Nutrition Facts panel, and the label of
    Jell-O "Cook & Serve Pudding & Pie Filling" even depicts milk being combined with the
28  pudding mix. (Id., Exh. A.)

DLA PIPER US LLP
SAN DIEGO

1    representations "were actually false"); McDougall v. Roberts, 43 Cal. App. 553, 556 (1919) ("[I]t

2    is essential to a plea of false representation that it be alleged to be untrue.").

3        Plaintiff alleges Kraft represented that the "Products contain a significant source of dietary

4    calcium, when they provide absolutely no nutritional value as a dietary source of calcium." (FAC

5    ¶ 49 (negligent misrepresentation); id. ¶ 56 (intentional misrepresentation).)  The Products'

6    packaging states that Jell-O is "A Good Source of Calcium as Prepared," instructs consumers to

7    prepare the packaged product with milk, and sets out the calcium content both "As Packaged" and

8    when "Prepared."  (See FAC, Exh. A.)  These statements are true:  when prepared with milk as

9    directed, a serving of Jell-O pudding provides 15% of the daily reference value of calcium and is

10   a "good source" of calcium under federal food labeling rules.  Plaintiff admits as much in her

11   FAC.  (See FAC ¶11 (stating that the Products are a "source of nutritional calcium" when

12   prepared with milk); id. ¶ 16 (acknowledging she received the "nutritional benefit she sought"

13   when she prepared the Products as directed).)  Because Plaintiff cannot allege that the statements

14   on the Products' packaging are false, she cannot state a cause of action for negligent or intentional

15   misrepresentation.

16        **B.    Plaintiff Cannot Allege Justifiable Reliance**

17        Justifiable reliance is another required element of Plaintiff's claims for negligent and

18   intentional misrepresentation.  Ostayan v. Serrano Reconveyance Co., 77 Cal. App. 4th 1411,

19   1419 (2000) ("Whether it be a cause of action for intentional or negligent misrepresentation, a

20   plaintiff must demonstrate that he or she actually and reasonably relied upon a representation

21   made by the defendant."); Wilhelm v. Pray, Price, Williams & Russell, 186 Cal. App. 3d 1324,

22   1331–33 (1986).  Whether a party's reliance was justified may be decided as a matter of law.

23   Guido v. Koopman, 1 Cal. App. 4th 837, 843 (1991).

24        Plaintiff alleges that the use of the word "Calci-YUM!" on Jell-O packaging led her to

25   believe that the Products "contained calcium as sold" because the "material fact" that the pudding

26   mix requires the addition of milk is "omi[tted]," the phrase "as prepared" is "vague," and the

27   "nutritional panel on the side of the Products … cannot be seen by the consumer standing in the

28   store aisle[.]"  (FAC ¶ 16; see also id. ¶ 49 (negligent representation); id. ¶ 63 (intentional

1    misrepresentation).)  Plaintiff cannot assert justifiable reliance when the very information she

2    alleges was "omi[tted]" was readily available to her.  See, e.g., Stationary Eng'rs Local 39 Health

3    & Welfare Trust Fund v. Philip Morris, Inc., No. C-97-01519 DLJ, 1998 WL 476265, at *11

4    (N.D. Cal. April 30, 1998) ("[I]f the conduct of the complaining party in light of his own

5    intelligence and information, or ready available information, was manifestly unreasonable, he will

6    be denied recovery.") (citation omitted); In re Seagate Tech. II Sec. Litig., No. 88-20489, 1989

7    WL 222969, at *3 (N.D. Cal. May 3, 1989) ("[I]f the material containing the alleged omissions[]

8    actually discloses the facts plaintiffs claim are absent, there is obviously no omission.").

9        All relevant information regarding Jell-O's calcium content was readily available to

10   Plaintiff on both the front and back panels (see FAC, Exh. A), and these label statements are true

11   and accurate.  Accordingly, Plaintiff fails to allege justifiable reliance and her negligent and

12   intentional misrepresentation claims fail as a matter of law.

13          **C.     Plaintiff Cannot Allege Damages**

14       Plaintiff's misrepresentation claims also fail because she does not allege legally

15   cognizable damages, a required element of her fraud claims.  See, e.g., Chavez, 2007 WL

16   1691249, at *3 (stating that "[p]laintiffs must allege actual damages" to pursue common law

17   fraud claims); Goehring v. Chapman Univ., 121 Cal. App. 4th 353, 364 (2004) (explaining that

18   "[d]eception without resulting loss is not actionable fraud" and that "the injury or damage must

19   … be distinctly alleged"); Bldg. Permit Consultants, Inc. v. Mazur, 122 Cal. App. 4th 1400, 1415

20   (2004) ("[F]raud without damages is not actionable.") (citation omitted).  The measure of

21   damages for fraud is the difference between the amount paid and the value received.  See Chavez,

22   2007 WL 1691249, at *4 (dismissing fraud claims because plaintiff did not receive a product that

23   was worth less than he paid for it); Fragle v. Faulkner, 110 Cal. App. 4th 229, 236 (2003);

24   Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1240 (1995); Nece v. Bennett, 212 Cal.

25   App. 2d 494, 497 (1963); Cal. Civ. Code § 3343(a).

26       Plaintiff alleges that she was damaged because she paid an undisclosed purchase price for

27   Jell-O but "was deprived of the benefit of her bargain" because the Products do not contain

28   calcium as sold and she was required to pay the "hidden price for the separate purchase of the

milk in order to get the nutritional benefit she sought." (See id. ¶ 54 (negligent

misrepresentation); id. ¶ 62 (intentional misrepresentation).)  But Plaintiff does not—and

cannot—allege that the Products' labels omit the fact that milk is required to prepare the pudding,

and Plaintiff admits that the prepared pudding provides the nutritional benefits of calcium.  (See

FAC ¶ 11 (stating that the pudding is a "source of nutritional calcium" when the consumer

prepares the packaged mix with milk); id. ¶ 16.)  Plaintiff paid for, and received, a product that is

a "Good Source of Calcium as Prepared."  Plaintiff cannot allege that the packaged products that

she allegedly purchased were worth less than the amount she allegedly paid.  Chavez, 2007 WL

1691249, at *4.  Accordingly, Plaintiff has failed to allege damages sufficient to state a claim for

negligent or intentional misrepresentation.

### D.    Plaintiff Fails To Plead Fraud With Particularity

Plaintiff's misrepresentation claims fail for the independent reason that they do not satisfy

the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  See Fed. R. Civ.

P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake

shall be stated with particularity.").  As the Ninth Circuit has explained, under Rule 9(b)

"[a]verments of fraud must be accompanied by the who, what, when, where, and how of the

misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiff "must set forth more than the neutral facts necessary to identify the transaction," she

must also "set forth what is false or misleading about a statement, and why it is false."  Id.; see

also Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989) ("[M]ere conclusory

allegations of fraud are insufficient.").  If a claim's allegations do not satisfy the heightened

pleading requirements of Rule 9(b), the claim should be dismissed.  See, e.g., Bly-Magee v.

California, 236 F.3d 1014, 1019 (9th Cir. 2001) (affirming the district court's dismissal of a fraud

complaint for failure to satisfy Rule 9(b) in light of its "complete absence of particularity");

Neubronner v. Milken, 6 F.3d 666, 671–72 (9th Cir. 1993).

Plaintiff has not alleged her misrepresentation claims[7] with the requisite particularity.

---

[7] To the extent Plaintiff's UCL, FAL, and CLRA causes of action are predicated on fraud, Rule 9(b) applies to those claims just as it does to her claims for negligent and intentional misrepresentation.  Vess, 317 F.3d at 1103–04 (explaining that where the plaintiff's claim is

1   Plaintiff has identified the "who" (Defendant), and a portion of the "what" (the Products' labels).

2   But the "when" and "where" are stated generally ("at each and every point of sale, and the time of

3   each sale"), and the "how" is completely absent.  (See FAC ¶ 49 (negligent misrepresentation);

4   id. ¶ 56 (intentional misrepresentation).)  Plaintiff offers no credible rationale for her allegation

5   that Jell-O's packaging is deceptive to the reasonable consumer when the statements on the label

6   are true and the information she alleges was withheld from her was conspicuous on the front,

7   back, and side panels.  (See id., Exh. A.)  Without a sufficient explanation as to the deceptive

8   nature of the Products' packaging, Plaintiff's allegations are inadequate and do not meet the

9   pleading requirements of Rule 9(b).  Glen Holly Entm't, Inc. v. Tektronix, Inc., 100 F. Supp. 2d

10   1086, 1094 (C.D. Cal. 1999) (explaining that the plaintiff "must set forth what is false or

11   misleading about a statement, and why it is false").

12   **VI.     PLAINTIFF'S BREACH OF EXPRESS WARRANTY CLAIM IS DEFICIENT**

13          **A.     Plaintiff Cannot Allege Breach of Express Warranty**

14          To prevail on a claim for breach of express warranty, Plaintiff must allege that Defendant

15   made an "an affirmation of fact or promise," and that Defendant breached the warranty it

16   allegedly made.  Keith v. Buchanan, 173 Cal. App. 3d 13, 20 (1985); Cal. Com. Code § 2313.  An

17   express warranty is breached when the goods do not conform to their descriptions or the

18   affirmations made about them.  Brown v. Super. Ct., 751 P.2d 470, 484 (Cal. 1988) ("An action

19   for breach of express warranty requires that the seller of goods conform to his promises

20   concerning them."); see also McDonnell Douglas Corp. v. Thiokol Corp., 124 F.3d 1173, 1177–

21   78 (9th Cir. 1997).  Here, Plaintiff alleges that Defendant represented "by means of labeling that

22   that [sic] the Products were a significant dietary source of calcium" and breached this warranty

23   because the Products "only offer the nutritional benefits of calcium if the consumer separately

24   purchases a calcium-containing product such as milk and adds it to the Products."  (FAC ¶¶ 65,

25   66.)  The statements on Jell-O packaging are true:  each serving of prepared pudding provides

26

27   based on alleged fraudulent conduct, "the claim is said to be 'grounded in fraud' or to 'sound in

28   fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule
     9(b)").

1    15% of the daily supply of calcium.  Plaintiff cannot allege that any express warranty was

2    breached, and her claim for breach of express warranty fails.

3        **B.    Plaintiff Cannot Allege Damages**

4        Plaintiff's express warranty claim also fails because she does not allege legally cognizable

5    damages.  Rodarte v. Philip Morris, Inc., No. CV-03-0353-FMC, 2003 WL 23341208, at *5 (C.D.

6    Cal. June 23, 2003).  Plaintiff asserts that she was injured because she paid the purchase price of

7    the Products and a "hidden price for the separate purchase" of milk.  (See FAC ¶ 67.)  The

8    measure of damages for breach of warranty is "the difference at the time and place of acceptance

9    between the value of the goods accepted and the value they would have had if they had been as

10    warranted."  Cal. Com. Code § 2714(2).  Plaintiff was promised, and admits that she received,

11    Products that are a "Good Source of Calcium as Prepared."  (See FAC ¶ 11; id. ¶ 16.).  The fact

12    that the pudding mix requires the addition of milk is prominently displayed on the Products

13    labels.  (See FAC, Exh. A.)  Plaintiff does not, and cannot, allege that there is any difference

14    between the value of the Products allegedly purchased and the value allegedly warranted.

15    Accordingly, Plaintiff cannot allege that she was damaged and her breach of warranty claim fails.

16    **VII.    PLAINTIFF'S FAC CONFLICTS WITH FEDERAL LAW**

17        Each count of Plaintiff's FAC is premised on her allegation that the statement on Jell-O

18    labels that Jell-O is "Calci-YUM! A Good Source of Calcium as Prepared" misled her to believe

19    that the Products, as sold, are a "significant source of dietary calcium."  (See FAC ¶ 16; see also

20    id. ¶ 30 (UCL claim); id. ¶ 40 (FAL claim); id. ¶ 49 (negligent misrepresentation); id. ¶ 56

21    (intentional misrepresentation); id. ¶ 65 (express warranty); id. ¶ 69 (CLRA claim).)  "Good

22    source" is a defined "nutrient content" claim under federal food labeling regulations that are

23    promulgated and enforced by the FDA under the Food Drug and Cosmetic Act ("FDCA").  See

24    21 U.S.C. § 343(r); see also 21 C.F.R. §§ 101.54(c), 101.9(e) (providing rules governing nutrition

25    labeling, including "good source" nutrient content claims and dual column "Nutrition Facts"

26    labeling).  Thus, each cause of action in Plaintiff's FAC is predicated on language subject to the

27    "comprehensive regulatory scheme" governing nutrition labeling that Congress placed within the

28    special competence and expertise of the FDA, and which "Congress intended [would] be enforced

1   exclusively by the Federal Government." <u>Buckman Co. v. Plaintiffs' Legal Comm.</u>, 531 U.S. 341,

2   352, 349 n.4 (2001); <u>see also</u> <u>Fraker v. KFC Corp.</u>, No. 06-CV-01284-JM, 2007 U.S. Dist.

3   LEXIS 32041, at *10 (S.D. Cal. April 30, 2007).

4        Under the Supremacy Clause, state law is impliedly preempted where it "stands as an

5   obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

6   <u>Dowhal v. Smithkline Beecham Consumer Healthcare</u>, 32 Cal. 4th 910, 923–24 (2004) (quoting

7   <u>English v. Gen. Elec. Co.</u>, 496 U.S. 72, 78–79 (1990)).  To allow Plaintiff to prosecute state law

8   causes of action based on a nutrition claim defined by federal food regulations would conflict

9   with Congress's intent to create a comprehensive and exclusive governmental enforcement

10  scheme.  <u>See</u> <u>Fraker</u>, 2007 U.S. Dist. LEXIS 32041, at *8–*11 (dismissing state law claims as

11  preempted where the same conduct constituted misbranding under the FDCA);  <u>Am. Bioscience,</u>

12  <u>Inc. v. Bristol Meyers Squibb Co.</u>, No. CV 00-8577-WMB, 2000 WL 1278348, at *1 (C.D. Cal.

13  Sept. 7, 2000) (dismissing state law claims based on conduct purportedly in violation of the

14  FDCA because the FDCA prohibits private enforcement); <u>see also</u> <u>Summit Tech., Inc. v. High-</u>

15  <u>Line Med. Instruments</u>, 922 F. Supp. 299, 306 (C.D. Cal. 1996).

16       What's more, Plaintiff seeks to have this Court decide, under California statutes and

17  common law, whether a food manufacturer is permitted to make a truthful nutrient content claim

18  based on a prepared serving of a product, where the claim includes the phrase "as Prepared," the

19  directions indicate the method by which the product is to be prepared, and a dual-column

20  Nutrition Facts panel sets out the nutrition information for the food's packaged and prepared

21  forms.  Congress exclusively vested the FDA with the expertise and authority to make complex

22  policy determinations such as this, and a decision by this Court runs the risk of frustrating

23  Congress's intent to create a uniform, national standard.  <u>See</u> <u>Buckman</u>, 531 U.S. at 350

24  ("[C]omplying with the FDA's detailed regulatory regime in the shadow of 50 States' tort

25  regimes will dramatically increase the burdens facing [the regulated industry]—burdens not

26  contemplated by Congress in enacting the FDCA."); <u>Kanter v. Warner-Lambert Co.</u>, 99 Cal. App.

27  4th 780, 795 (2002) (affirming that FDCA preempted state tort claims because it set forth

28  "explicit and detailed federal requirements regarding the content" of the disputed products'

DLA PIPER US LLP
SAN DIEGO

1  labels); see also Papike v. Tambrands, Inc., 107 F.3d 737, 742 (9th Cir. 1997) (determining that

2  the FDCA preempted state products liability claim because the FDA had promulgated a specific

3  regulation pertaining to the product).

4       Congress has vested oversight of the complex federal regulatory scheme governing food

5  labeling in the FDA.  Plaintiff cannot be permitted to interfere with the FDA's authority by way

6  of consumer product litigation.  If Plaintiff believes the statements on Jell-O's labels are

7  deceptive, then she is free to submit her complaint to the FDA and petition the agency to issue or

8  amend regulations or to take other administrative actions.  21 C.F.R. § 10.30.  What she may not

9  do is use this litigation to promulgate her own food labeling regulations.  Plaintiff's entire FAC is

10 preempted.

11 **VIII.  <u>CONCLUSION</u>**

12      Plaintiff's UCL, FAL, CLRA, misrepresentation, and warranty claims are deficient

13 because each lacks one or more essential elements that Plaintiff does not and cannot allege.

14 Jell-O packaging truthfully and accurately describes the Products' calcium content, and all

15 relevant information is provided to consumers on the label.  Plaintiff is unable to allege damages

16 because she received the benefit she was promised and got what she paid for.  In addition,

17 Plaintiff's claims impermissibly interfere with the FDA's exclusive enforcement of federal food

18 labeling regulations.  Plaintiff's FAC fails to state any claim entitling her to relief, and the

19 deficiencies in her claims cannot be cured by further amendment. Accordingly, Defendant

20 requests that the Court grant its motion to dismiss with prejudice.

21

22 Dated:  April 21, 2008                        DLA PIPER US LLP

23

24                                              s/Noah A. Katsell
                                                _____
25                                              Attorneys for Defendant Kraft Foods Global, Inc.
                                                E-mail:  noah.katsell@dlapiper.com

26

27

28