Howard Rubinstein (Fla. SBN: 104108)
Attorney at Law
914 Waters Avenue, Suite 20
Aspen, Colorado 81611
Tel.: (832) 715-2788
E-mail: howardr@pdq.net
*(To apply as Counsel Pro Hac Vice)*

Harold M. Hewell (Cal. SBN: 171210)
Hewell Law Firm, APC
402 W. Broadway, Fourth Floor
San Diego, California 92101
Tel: (619) 235-6854 · Fax: (619) 235-9122
E-mail: hmhewell@hewell-lawfirm.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADRIANNE SMITH,** as an individual and on behalf of all others similarly situated, | Civil Action No.  **3:07-cv-02192-BEN-WMC** |
| *Plaintiff,* | Assigned to Hon. Roger T. Benitez |
| *vs.* | **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION** |
| | Date: May 19, 2008<br>Time: 10:30 a.m.<br>Place: Courtroom 3 |
| **KRAFT FOODS GLOBAL, INC.,** a Delaware corporation, | |
| *Defendant.* | *<u>CLASS ACTION</u>*<br><br>***JURY TRIAL REQUESTED*** |

# TABLE OF CONTENTS

I.      INTRODUCTION……………………..……………………………..    1

II.     SUMMARY OF ALLEGATIONS AS PLEADED…..………………………………..    2

III.    PLEADING STANDARD UNDER FRCP 12(B)(6)…………………………    5

IV.     ARGUMENT……………………………………………………………    5

   A.The Ninth Circuit Has Rejected Kraft's "Reasonable Consumer" Argument…………    5

   B. "Calci-YUM!" is not Puffery……………………………………..…………………..    8

   C. Ms. Smith Clearly Pleads a Legally Cognizable Injury……………………..………    9

   D. Ms. Smith's Claims Are Not Preempted……………………….…………………    12

   E. Ms. Smith's Fraud Claims Are Pleaded With the Requisite Particularity……………    18

   F. The UCL, FAL, and CLRA are not grounded in fraud………………………………    19

V.  CONCLUSION……………………………………………………………    19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Plaintiff, Adrianne Smith, opposes the motion by defendant Kraft Foods Global, Inc.,

2  ("Kraft's") to dismiss the First Amended Complaint ("FAC"), and submits this memorandum of

3  points and authorities in support of that opposition.

4                                **I. INTRODUCTION**

5    Kraft's motion rests on four primary arguments: (1) that its prominent representations

6  boasting, "Calci-YUM! … "A Good Source of Calcium as Prepared…"[1] found on the front, or

7  principle display panels ("PDP"), of its  Jell-O® "Instant Pudding Pie Filling"[2] and "Cook &

8  Serve Pudding & Pie Filling"[3] ("Products") are true and are not likely to deceive a reasonable

9  consumer because of information provided on the other label panels, panels hidden from the

10  consumer viewing the products from the store aisle; (2) that "Calci-YUM!" is non-actionable

11  puffery; (3) that plaintiff "fails to allege an economic injury";[4] and (4) that Ms. Smith's claims

12  are preempted by federal regulatory authority.

13    These arguments fail. The first two arguments are roundly rejected in *Williams v. Gerber*

14  *Products Co.,* ___ F.3d ___, 2008 WL 1776522 (9th Cir. Apr. 21, 2008).[5] The third ignores the

15  plain statement of damages asserted in the FAC.

16    In arguing preemption, Kraft contends that "federal food labeling regulations that are

17

18  [1] As the labels attached to the FAC indicate, the words, "as Prepared" are in smaller typeface on
   the PDP than the preceding words, "A Good Source of Calcium…."

19  [2] In chocolate and lemon flavors.

20  [3] In a vanilla flavor.

21  [4] Defendant Kraft Foods Global, Inc.'s Memorandum of Points and Authorities in Support of Its
   Motion to Dismiss First Amended Complaint ("MTD"), 9:12.

22
23  [5] Kraft premised these arguments on Central District minute orders that relied heavily on the
   District Court ruling that was reversed in its entirety by the Ninth Circuit (*Williams v. Gerber*

24  *Products Co.,* 439 F.Supp. 2d 1112 (S.D. Cal. 2006)). See Defendant Kraft Foods Global, Inc.'s
   Request for Judicial Notice in Support of Its Motion to Dismiss First Amended Complaint

25  ("RJN"), Ex. A., pp. 4 and 5, Ex. B. pp. 12, 13, 14 and 16, and Ex. C, p. 23. One of those minute
   orders, *McKinniss v. General Mills, Inc.,* CV 07-2521 GAF (FMOx) (C.D. Cal. entered Sept.

26  19, 2007) also relies upon the minute order in *McKinniss v. Sunny Delight Beverages Co.,* Case
   No. CV 07-2034 RGK (JCx) (C.D. Cal. entered Sept. 4, 2007) and references *McKinniss v.*

27  *Kellogg USA,* CV 07-2611 ABC (RCx) (C.D. Cal. entered Sept. 21, 2007). See Ex. B, pp. 11
   and 13.

28

promulgated and enforced by the FDA[6] under the Food Drug and Cosmetic Act" ("FDCA").[7] However, in support of its argument, Kraft cites preemption cases involving medical device and tampon injury claims regulated by the Medical Device Amendments of 1976 to the FDCA; smoking cessation aid claims and the FDCA's Proposition 65 exemption; private enforcement of a pharmaceutical patent listing under the FDCA; FDA approval of an ophthalmological laser system; over-the-counter head lice treatment regulation under the FDA Modernization Act of 1997 ("FDAMA"); and even preemption under the Energy Reorganization Act of 1974.

Glaring by its omission from Kraft's California and Federal citations is the only FDCA preemption decision on point here, *Farm Raised Salmon Cases*, ___ Cal.4th ___, 72 Cal.Rptr.3d 112, 116 (Cal. 2008). In that case, California's Supreme Court held that "that [FDCA] section 337 *does not* impliedly preempt private actions based on violations of state laws explicitly authorized by section 343-1." Id. at 116.

Additionally, Ms. Smith's fraud claims are pleaded with the requisite particularity called for under Federal Rule of Civil Procedure 9(b). The motion to dismiss must be denied.

## II. SUMMARY OF ALLEGATIONS AS PLEADED

Defendant has, during the past four years, marketed, advertised and distributed the Products across the United States, and continues to do so as of the date of this filing. In the upper left-hand corner of the principle display panel ("PDP") on the Product labels, the "word""Calci-YUM!" is displayed in large bold print. In smaller print below "Calci-YUM!" are the words, "A Good Source of Calcium as Prepared." True and correct copies of the labels of the Products are attached to the FAC as Exhibit "A" and incorporated by reference.

Kraft's prominent use of the word "Calci-YUM!" on the PDP of each of the Products leads the buying public into believing that the Products are a delicious and substantial dietary source of calcium, an essential mineral for the development and maintenance of healthy bones and teeth. However, the Products have absolutely no nutritional value as a dietary source of

---

[6] United States Food and Drug Administration.

[7] MTD, 15:22-23.

calcium. The only source of nutritional calcium found in the Products "as prepared" is the milk that the consumer buys separately and adds to them. By that standard, anything could be marketed as "a good source of calcium" as long as the consumer was directed to add milk.

Nevertheless, Kraft represents to consumers that "JELL-O INSTANT Pudding (1/2 cup)" provides 150 milligrams of calcium per serving. This representation is made by listing the JELL-O INSTANT Pudding in a table with other products beneath the statement:

> For example, milk contains 300 mg per 8 ounces, as does 1½ ounces of cheese.
> But there are plenty of other foods that contain calcium. See the list below for examples of foods that can help you meet your calcium quota... .

By listing JELL-O INSTANT Pudding in the table beneath that statement, Kraft leads consumers to believe that its JELL-O INSTANT Pudding contains 150 milligrams of calcium per serving as it is sold, without consumers having to add calcium via milk. See http://www.kraftfoods.com/kf/HealthyLiving/Healthy+Living+Library/powerup.htm. A true and correct copy of that representation with the above-referenced language highlighted, is attached to the FAC as Exhibit "B" and incorporated by reference.

Such an assertion is false: the Products are simply expensive milk additives that lack any nutritional benefit of calcium as sold. A global company with Kraft's sophistication and expertise in the marketing of foods can hardly be ignorant of Swiss Maid's "Calci-Yum" dairy food products, the Tropical "Calci-Yum" Monster™ smoothie beverage sold by Odwalla®, Maxi Health's Chewable "Calci-Yum" dietary supplement, Fonterra Brands' "Calci Yum" dairy products, and other products that use a similar derivative of the word calcium. The difference however, is that those products actually contain nutritional levels of calcium as sold. They do not require the consumer to buy milk separately and add it to the product to obtain the nutritional benefits of calcium. True and correct copies of the marketing for some of these products is attached to the FAC as Exhibit "C" and incorporated by reference.

Further confusion derives from Kraft's move to fortify its refrigerated pudding lineup with calcium and print "Calci-YUM!" on those PDPs as well. However Kraft drops the "as prepared" from the fortified pudding PDPs and simply states, "A Good Source of Calcium."

1   Ms. Smith, as noted above, has two infant children, a girl and a boy. She is conscientious

2   about their diets and fully aware of the importance of calcium in their development. She also is

3   aware of the importance of calcium to women. During the past four years, she has purchased the

4   Products at stores in the San Diego area and fed them to her children. She also has eaten the

5   Products herself. Ms. Smith did so because she had been exposed to the labeling of the Products

6   as set forth above. She relied on the reputation of Kraft and Jell-O® in purchasing the Products,

7   and was misled into thinking they contained calcium as sold and that she was paying for a

8   calcium-containing food. She did not realize that she was buying the calcium (milk) separately

9   and adding it to the Products herself until a friend pointed this out. She was misled by Kraft's

10  omission of this material fact. The phrase "as prepared" on the PDP is vague and does nothing

11  to qualify the preceding representations and the prominently displayed "Calci-YUM!" A

12  reasonable consumer would not interpret this to mean "if you buy and add milk to this Product."

13  The nutritional panel on the side of the Products, which cannot be seen by the consumer

14  standing in the store aisle, is insufficient to overcome the deception on the PDP and Kraft's

15  "Calci-YUM!" marketing scheme. As a result of Kraft's deceptive labeling and marketing

16  scheme and her reliance on the purported quality of Kraft and Jell-O® products, Ms. Smith

17  purchased the Products from Defendant within the Class period set forth below.

18      Defendant represents itself as a reputable and reliable manufacturer of consumer

19  products, including the Products. Ms. Smith was exposed to and relied on these representations

20  in purchasing the Products. As a direct and proximate result of Defendant's acts as set forth

21  herein, Plaintiff suffered actual damages and harm, in an amount to be determined at trial, in

22  that she was induced to and did spend money on the Products, but was deprived of the benefit of

23  her bargain, as the Products did not themselves contain calcium as Defendant led her to believe.

24      Additionally, she had to pay a hidden price for the separate purchase of the milk in order

25  to get the nutritional benefit she sought. Had she known that the Products provide absolutely no

26  nutritional value as a dietary source of calcium, she would not have bought the Products. There

27  are many other competitively-priced foods (that do not require the additional, separate purchase

28  of milk) that are rich in calcium as sold that she and her children enjoy, and she would have

1  purchased them instead. In exchange for her money, Ms. Smith received something other than

2  what was represented to her, a product she did not seek. As sold, the Products lack the

3  nutritional benefit she sought and thought she was receiving. The Products were and are of no

4  value to her. FAC, 3:28 - 6:23.

5  ### III. PLEADING STANDARD UNDER FRCP 12(B)(6)

6       A "motion [to dismiss] is not a procedure for resolving a contest between the parties

7  about the facts or the substantive merits of the plaintiff's case." 5 C. Wright & A. Miller,

8  Federal Practice and Procedure § 1356. A complaint must not be dismissed with prejudice under

9  Fed. R. Civ. P. 12(b)(6) prior to discovery, unless ''it appears beyond doubt that plaintiffs can

10  prove no set of facts to support their claim that would entitle them to relief.'' *Conley v. Gibson,*

11  355 U.S. 41, 45-46 (1957); *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984).

12       The Court should seek only to determine whether the claimants are entitled to offer

13  evidence to support their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). All allegations

14  of material fact are taken as true and construed in the light most favorable to the nonmoving

15  party. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). A complaint

16  should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of

17  facts in support of the claim that would entitle the plaintiff to relief. Id.

18       Plaintiff has more than met her burden in pleading. The FAC is legally sufficient and

19  contains facts that are more than sufficient to support her claims for relief.

20  ### IV. ARGUMENT

21  **A.**   **The Ninth Circuit Has Rejected Kraft's "Reasonable Consumer" Argument.**

22       As stated in the FAC, "Kraft's prominent use of the word "Calci-YUM!" on the PDP of

23  each of the Products leads the buying public into believing that the Products are a delicious and

24  substantial dietary source of calcium … . However, the Products have absolutely no nutritional

25  value as a dietary source of calcium." FAC, 4:6-10.

26       Kraft contends that this misrepresentation is cured by the nutrition panel and preparation

27  instructions found on the back of the package and other panels – panels that are hidden from

28  view to the consumer viewing the Products from the store aisle. It supports its arguments with

---

1  minute order that drew heavily on the trial court's ruling in *Williams v. Gerber Products Co.,*

2  439 F.Supp. 2d 1112 (S.D. Cal. 2006).

3      However, the Ninth Circuit has reversed that decision in its entirety, stating, "[w]e

4  disagree with the district court that reasonable consumers should be expected to look beyond

5  misleading representations on the front of the box to discover the truth from the ingredient list in

6  small print on the side of the box." *Williams,* supra, ___ F.3d ___,  Slip op. at 4196.

7      The Court went on to reject the contention that information provided in the nutritional

8  panel could protect food manufacturers from misrepresentations such as those made on the PDP

9  of the Kraft Products.

10      We do not … think that a busy parent walking through the aisles of a grocery

11      store should be expected to verify that the representations on the front of the box

12      are confirmed in the ingredient list. Instead*, reasonable consumers expect that*

13      *the ingredient list contains more detailed information about the product that*

14      *confirms other representations on the packaging. We do not think that the FDA*

15      *requires an ingredient list so that manufacturers can mislead consumers and*

16      *then rely on the ingredient list to correct those misinterpretations and provide a*

17      *shield for liability for the deception.*

18  Id., Slip op. at 4197 (emphasis added).

19      Kraft contends that the statement, "as Prepared" (rendered in smaller type, for some

20  reason), makes true its claim that the Products are "A Good Source of Calcium… ."  However,

21  there is nothing on the front panel that would lead the consumer to believe "preparation"

22  required the addition of a *separately purchased product* - the calcium delivery system otherwise

23  known as milk, to make Kraft's claims come true.

24      For all the consumer viewing the PDP knows, preparation could be, "just add water."

25  Again, there is no reason the reasonable consumer should have to verify the representations

26  made on the front of the package are borne out on the front and back of the package. The

27  additional packaging panels should elaborate on the PDP claims, not provide cover for

28  deceptive representations made on the only panel visible from from the store aisle. Nor should

1   Kraft be able to assert the hidden panel language as a shield for the liability created the

2   deception it promotes on the front panel.

3           In *Williams*, the Ninth Circuit recognized that "the primary evidence in a false

4   advertising case is the advertising itself. …[Citations omitted]" and acknowledged that

5   "[d]ecisions granting motions to dismiss claims under the Unfair Competition Law have

6   occasionally been upheld." Id., Slip op. at 4195. However, it cautioned in doing so in cases such

7   as the one at hand. In *Williams,*

8           the district court based its decision to grant the motion to dismiss *solely on its*

9           *own review of an example of the packaging.* ... California courts, however, have

10          recognized that whether a business practice is deceptive *will usually be a*

11          *question of fact not appropriate for decision on demurrer* [Citations omitted.]. ...

12          *The facts of this case … do not amount to the rare situation in which granting a*

13          *motion to dismiss is appropriate.* Id., Slip op. at 4195-96 (emphasis added).

14          It is noteworthy that Kraft does not even bother to defendant the false statement found

15   on its website. As the FAC states,

16          Kraft represents to consumers that "JELL-O INSTANT Pudding (1/2 cup)"

17          provides 150 milligrams of calcium per serving. This representation is made by

18          listing the JELL-O INSTANT Pudding in a table with other products beneath the

19          statement:

20                  For example, milk contains 300 mg per 8 ounces, as does 1½

21                  ounces of cheese. But there are plenty of other foods that contain

22                  calcium. See the list below for examples of foods that can help

23                  you meet your calcium quota:

24          By listing JELL-O INSTANT Pudding in the table beneath that statement, Kraft

25          leads consumers to believe that its JELL-O INSTANT Pudding contains 150

26          milligrams of calcium per serving as it is sold, without consumers having to add

27          calcium via milk.

28   FAC, 4:13-22 and Ex. B-26.

---

Additionally, Kraft's motion ignores the confusion created by its own line of *calcium-fortified* pudding products that boast of "Calci-YUM!" on the PDP, and require no added milk. FAC 5:14-15. Kraft also fails to explain why reasonable consumers would not be confused by the fact that other companies' products with calcium-derivative names also contain nutritious quantities of the mineral (Swiss Maid's "Calci-Yum" dairy food products, the Tropical ."Calci-Yum" Monster™ smoothie beverage sold by Odwalla®, Maxi Health's Chewable "Calci-Yum" dietary supplement, Fonterra Brands' "Calci Yum" dairy products) FAC, 5:6-8.

In *Williams,* the Ninth Circuit concluded, "that, given the opportunity, Appellants have stated a claim and could plausibly prove that a reasonable consumer would be deceived by the Snacks packaging." Id., Slip op. at 4197. Ms. Smith respectfully contends that she has done so in the case and hand, and respectfully requests that this Court grant her the opportunity to engage in discovery and and prove her claims.

In light of the foregoing, Kraft cannot claims that Ms. Smith has failed to show an "an affirmation of fact or promise," and that Defendant breached the warranty made. The breach of warranty cause of action is fully and sufficiently pleaded.

**B.    "Calci-YUM!" is not Puffery.**

Remarkably, after citing *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 246 (9th Cir. 1990) (which found that statements are non-actionable puffery where they constituted "general assertions of superiority" rather than "factual misrepresentations"), Kraft baldly asserts that "The statement that Jell-O is 'Calci-YUM!' is puffery: *it is not a "specific, quantifiable claim*[]," [Citation omitted] rather, it is a "vague" and "highly subjective" general assertion." MTD, 8:19-21 (emphasis added).

Nothing could be further from the truth, particularly since "Calci-YUM!" is positioned on the PDP directly above the phrase, "A Good Source of Calcium as Prepared." Kraft is unequivocally telling the consumer that the product contains calcium. Kraft has no difficulty in making this a "specific, quantifiable claim" in its products that contain calcium: it details the quantified amount of calcium contained in those products in the ingredients lists found on those products. Just because the Products that are the subject of Ms. Smith's claims are

"calcium-free," that does not render the same assertion "vague" and "highly subjective."[8] It just means that this specific, quantifiable claim is false.

The Ninth Circuit opinion in *Williams,* is again instructive here. In that case, the defendants asserted that the claim "nutritious" was non-actionable puffery. The Court responded by stating:

Gerber's claim that Snacks is "nutritious," were it standing on its own, could

arguably constitute puffery, since nutritiousness can be difficult to measure

concretely. [Citation omitted]. This statement certainly contributes, however, to

the deceptive context of the packaging as a whole. Given the context of this

statement, we decline to give Gerber the benefit of the doubt by dismissing the

statement as puffery. *"It is not difficult to choose statements, designs, and*

*devices which will not deceive." United States v. Ninety-Five Barrels More or*

*Less of Alleged Apple Cider Vinegar,* 265 U.S. 438, 443 (1924).

*Williams,* supra, ___ F.3d ___,  Slip op. at 4196, n.3 (emphasis added).

Kraft's assertion of puffery claim fails on the same ground. Contextually, it adds to the deceptive nature of the PDP claims. It would not have been so difficult for Kraft to come up with a statement that was not deceptive.

**C.    Ms. Smith Clearly Pleads a Legally Cognizable Injury.**

The assertion that Ms. Smith has failed to assert legally recognizable claims for injury is simply not true, and is perhaps the most baffling argument made by Kraft. If it had briefly reviewed the FAC, it would have discovered that Ms. Smith asserts:

As a direct and proximate result of Defendant's acts as set forth herein, Plaintiff

suffered actual damages and harm, in an amount to be determined at trial, in that

she was induced to and did spend money on the Products, but was deprived of

---

[8] Kraft asks, "After all, how much calcium is required, and how delicious must Jell-O pudding be, before the 'reasonable consumer' would be satisfied the product was 'Calci-YUM!'?" MTD, 8:21-23. A more precise answer will come through discovery, but it is relatively safe to state at this point that the "reasonable consumer" will expect "Calci-YUM" to contain more calcium than the Products contain, which is "none."

1   the benefit of her bargain, as the Products did not themselves contain calcium as

2   Defendant led her to believe. Additionally, she had to pay a hidden price for the

3   separate purchase of the milk in order to get the nutritional benefit she sought. ...

4   In exchange for her money, Ms. Smith received something other than what was

5   represented to her, a product she did not seek. As sold, the Products lack the

6   nutritional benefit she sought and thought she was receiving. The Products were

7   and are of no value to her.

8   FAC, 6:11-23.

9   This description of Ms. Smith's claims is not only incorporated by reference[9] into each

10  of the causes of action in the FAC that follow; it is *repeated* in part[10] in those causes of action

11  seeking damages, rather than equitable relief. See FAC, ¶¶ 54 (Negligent Misrepresentation), 62

12  (Intentional Misrepresentation) and 67 (Breach of Warranty).

13  As Kraft contends, "[t]he proper measure of damages is not the purchase price, but the

14  difference between the amount paid and the value of what was received (citing *Cortez v.*

15  *Purolater Air Filtration Prods. Co.,* 23 Cal. 4th 163, 174, 177 n.10 (2003) for its similar

16  definition of relief under Bus. & Prof. Code §§ 17200 et seq. ("UCL") and 17500 et seq.

17  ("FAL"), MTD 9:14-18.

18  Civil Code § 3343[11] provides for a similar measure of damages for fraud. Damages for

19  [9] FAC, ¶¶ 28, 39, 48, 55, 64 and 68.

20  [10] "... Plaintiff suffered actual damages and harm, in an amount to be determined at trial, in that

21  she was induced to and did spend money on the Products, but was deprived of the benefit of her
    bargain, as the Products did not themselves contain calcium as Defendant led her to believe.

22  Additionally, she had to pay a hidden price for the separate purchase of the milk in order to get
    the nutritional benefit she sought. Had she known that the Products provide absolutely no

23  nutritional value as a dietary source of calcium, she would not have bought the Products."

24  [11] Civil Code § 3343 provides in pertinent part as follows:

25  (a)    One defrauded in the purchase, sale or exchange of property is entitled to recover
           the difference between the actual value of that with which the defrauded person

26         parted and the actual value of that which he received, together with any
           additional damage arising from the particular transaction, including any of the

27         following:

28         (1)    Amounts actually and reasonably expended in reliance upon the fraud.

1    breach of an express warranty also are similar,[12]

2        Kraft's citation to *Day v. AT&T Corp.,* 63 Cal. App. 4th 325, 339 (1998) "(observing

3    that, under the UCL and FAL, it would be improper to require the defendant to return all of the

4    money received from the sale of an allegedly deceptive practice because consumers 'received

5    exactly what they paid for[]')" (MTD, 9:19-21), is inapplicable, because in the case at hand, Ms.

6    Smith and others clearly did not receive "exactly what they paid for," which is a calcium-

7    containing food product.

8        Kraft's reference to *Chavez v. Blue Sky Natural Beverage Co.,* No. C-06-6609, 2007 WL

9    1691249, at *4 (N.D. Cal. June 11, 2007) (MTD, 9:26 – 10:7) also has no bearing on Ms.

10    Smith's allegations. She is not alleging that the origin of the Products was misstated. She

11    contends she purchased a Product falsely represented as containing calcium.

12        Ms. Smith was deprived of the benefit of her bargain as the direct result of Kraft's

13    practices, practices that are likely to deceive a "reasonable consumer," as discussed above. As

14    the direct consequence of those deceptive practices, she received a product that was *no value to*

15    *her at all.* In fact to use it and obtain the calcium benefits that Kraft promised, she would have

16    had to purchase another separate product, milk. Accordingly, she received *no value* for her

17    purchase price and is entitled to the difference between that and the purchase price, which is a

---

18

19            …

20        (b)    Nothing in this section shall do either of the following:

21            (1)    Permit the defrauded person to recover any amount measured by the
                   difference between the value of property as represented and the actual
22                 value thereof.

23             (2)    Deny to any person having a cause of action for fraud or deceit any legal
                    or equitable remedies to which such person may be entitled.

24    [12] Section (2) and (3) of Commercial Code § 2714 provides that:

25        (2)    The measure of damages for breach of warranty is the difference at the time and
               place of acceptance between the value of the goods accepted and the value they
26             would have had if they had been as warranted, unless special circumstances show
               proximate damages of a different amount.

27        (3)    In a proper case any incidental and consequential damages under Section 2715
28             also may be recovered.

1    full refund.

2         This is what Ms. Smith has pleaded in her statement of damages. She has pleaded it

3    exactly according to the parameters cited by Kraft. This argument is without merit.

4    **D.      Ms. Smith's Claims Are Not Preempted.**

5         Kraft appears to be asserting an implied preemption argument against Ms. Smith's

6    claims, contending that enforcement of these matters is the sole province of the FDA under the

7    FDMA.[13] A defendant who contends that a state statute is preempted by federal law bears the

8    burden of demonstrating preemption. See, e.g., *McCall v. PacifiCare of Cal., Inc.,* 25 Cal.4th

9    412, 422 (2001). As the United States Supreme Court has stated, "[w]hen Congress legislates in

10   a field traditionally occupied by the States, 'we start with the assumption that the historic police

11   powers of the States were not to be superseded by the Federal Act unless that was the clear and

12   manifest purpose of Congress.'" *California v. ARC America Corp.,* 490 U.S. 93, 101 (1989),

13   quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947). This presumption against

14   preemption "provides assurance that 'the federal-state balance,' ... will not be disturbed

15   unintentionally by Congress or unnecessarily by the courts." *Jones,* supra, 430 U.S. 519, 525.

16        Kraft has not met this burden. In support of its preemption argument, that "each cause of

17   action in Plaintiff's FAC is predicated on language subject to the "comprehensive regulatory

18   scheme" governing nutrition labeling that Congress placed within the special competence and

19   expertise of the FDA, and which "Congress intended [would] be enforced exclusively by the

20   Federal Government", Kraft cites *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 352,

21   349 n.4 (2001).

22        However, the FDMA is an expansive work of legislation covering medical devices,

23   pharmaceuticals, cosmetics, and many other products, including food. It has been amended

---

[13] "Under the Supremacy Clause, state law is impliedly preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Dowhal v. Smithkline Beecham Consumer Healthcare*, 32 Cal. 4th 910, 923–24 (2004) (quoting English v. Gen. Elec. Co., 496 U.S. 72, 78–79 (1990)). To allow Plaintiff to prosecute state law causes of action based on a nutrition claim defined by federal food regulations would conflict with Congress's intent to create a comprehensive and exclusive governmental enforcement scheme." MTD, 16:4-10.

many times through the years and contains a wide range of provisions relating to federal preemption. For example, the *Buckman* case considers whether certain claims regarding a medical device are preempted by the FDCA, *as amended by the Medical Device Amendments of 1976* (MDA), 90 Stat. 539, 21 U.S.C. § 301 (1994 ed. and Supp. IV). *Buckman* has little, if anything to do with the regulatory framework created by Congress to regulate the food industry.

The same holds true for other cases, cited by Kraft. In *Dowhal v. Smithkline Beecham Consumer Healthcare,* 32 Cal. 4th 910, 923–24 (2004), the California Supreme Court considered whether the California's Proposition 65 exemption under the FDCA permitted private rights of action arising from the sale of over-the-counter nicotine products. The Court held that, notwithstanding language in the FDCA exempting Proposition 65 from the preemptive effect of the federal act, when the warning mandated by California law *directly conflicts with the one that the FDA requires, the federal requirement prevails.* In other words, *Dowhal* was a conflict preemption decision that addressed a very narrow exemption to the FDCA for Proposition 65.

*English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79 (1990)), also cited by Kraft, had nothing to do with the FDCA at all. The *English* Court considered whether a nuclear facility laboratory technician's state claims for intentional infliction of emotional distress were preempted by section 210(a) of the Energy Reorganization Act of 1974.

In another case relied upon by Kraft, *Am. Bioscience, Inc. v. Bristol Meyers Squibb Co.,* No. CV 00-8577-WMB, 2000 WL 1278348, at *1 (C.D. Cal. Sept. 7, 2000), American Bioscience sued Bristol Meyers, seeking to compel Bristol Meyers to submit its patent relating to Taxol, an anti-cancer drug, for listing in the FDA's "Orange Book."

In *Summit Tech., Inc. v. High-Line Med. Instruments,* 922 F. Supp. 299, 306 (C.D. Cal. 1996), the District Court dealt with a private lawsuit by an ophthalmological laser manufacturer against an importer of such systems who had made press release statements regarding FDA approval of certain devices made by the plaintiff. The plaintiff sued because the defendant did not make it clear that the devices mentioned in the press release were not the same as those marketed by the defendant, thereby falsely implying that the defendant was selling FDA-

approved devices.

In *Kanter v. Warner-Lambert Co.,* 99 Cal. App. 4th 780, 795 (2002), also cited by Kraft, the California appellate court considered whether plaintiffs' state law claims related to over-the-counter drugs for the treatment of head lice were *expressly* preempted by 21 U.S.C. § 379r(a), a provision of the Food and Drug Administration Modernization Act of 1997 (FDAMA).

In another of the cases that Kraft relies upon to support its preemption argument, the Ninth Circuit had to determine if the plaintiff's Toxic Shock Syndrome injury claims stemming from use of tampons was preempted by the MDA amendment referenced above in Buckman. *Papike v. Tambrands, Inc.,* 107 F.3d 737, 742 (9th Cir. 1997).

In fact, in its recitation of preemption cases, Kraft *completely omitted* the decision most relevant to the claims asserted by Ms. Smith. In that case, *Farm Raised Salmon Cases,* ___ Cal.4th ___, 72 Cal.Rptr.3d 112, 116 (Cal. 2008), class action lawsuits were filed against various grocery stores alleging violations of California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA"). The claims were based on defendants' practice of selling "artificially colored farmed salmon without disclosing to consumers the use of color additives… ." The various, separate class actions were ultimately coordinated and a coordinated class action complaint was filed in March 2004.

The coordinated complaint alleged, among other things, that fish farmers were feeding farm-raised salmon certain chemicals that caused the flesh of the farm-raised fish to resemble that of wild salmon, and that this practice misled consumers into believing that colored farm-raised salmon was actually wild salmon. The trial court dismissed the class action on a successful demurrer by defendants, who argued that the action was preempted by section 337(a) of title 21 of the United States Code, a provision of the FDCA (21 U.S.C. § 301 et seq.). The Court of Appeal affirmed, stating that the plaintiff's claims were predicated on the FDCA.

The Supreme Court summarized its holdings as follows:

We conclude that [FDCA] section 337(a) does not preempt the action as plaintiffs do not seek to 'enforce[], or to restrain violations of', the FDCA. (§ 337(a).) Rather, plaintiffs' claims for deceptive marketing of food products are

predicated on state laws establishing independent state disclosure requirements 'identical to' the disclosure requirements imposed by the FDCA, something Congress explicitly approved in section 343-1. (§ 343-1(a)(3).)

The Court's decision further held that plaintiffs may pursue private rights of action to enforce such state laws, even though they are identical to the FDCA and such rights may not be enforceable under the FDCA. Id., at 128-29. The Court reversed the dismissal of the class action and remanded for further proceedings. Id., at 129. [14]

The *Salmon* decision is not an anomaly. Kraft's argument that any state law cause of action is preempted if it is based on facts that would also constitute an FDCA violation is contrary to both federal and California case law holding that the FDCA *does not* preempt the UCL or other state law causes of action. See, e.g., *Medtronic, Inc. v. Lohr,* 518U.S. 470 (1996) (upholding state common law causes of action for negligence and failure to warn based directly on violations of federal FDCA standards);*Consumer Justice Center v. Olympian Labs Inc.,* 99 Cal.App.4th 1056, 1064 (2002) (rejecting preemption challenge to private UCL action: "foods are regularly subject to state unfair competition litigation"); *Evraets v. Intermedics Intraocular,* 29 Cal.App.4th 779, 791 n.6 (1994) ("We perceive a difference between suing directly on the FDCA statutes and regulations and suing on a state law theory which incorporates the federal

---

[14] In its analysis, the Court explicitly rejected defendants' argument regarding the applicability of the only food case cited here by Kraft.

Defendants cite *Fraker v. KFC Corp.* (S.D.Cal., Apr. 30, 2007, No. 06-CV-01284) 2007 WL 1296571 in their supplemental brief, arguing it is a recent example of a court reaching this issue. *However, as with the previous cases, Fraker is inapplicable.* The plaintiff in Fraker brought state law claims against KFC Corporation (formerly Kentucky Fried Chicken) alleging that the defendant misrepresented its product as healthy when it was in fact high in "trans" fat content. (Id., at p. *1.) In dismissing the plaintiff's claims as preempted, the district court noted that the complaint alleged defendant violated the FDCA, misbranded its food in violation of federal regulations, and made actionable health claims in violation of federal regulations. (*Fraker v. KFC Corp.,* supra, 2007 WL 1296571 at p. *3.) Accordingly, the court concluded that the state law claims were impermissibly founded on violations of the FDCA and were thus preempted by section 337. (*Fraker v. KFC Corp.*, supra, 2007 WL 1296571 at pp. *3-4.) Id. at 115.

1   law as a standard of conduct.").

2          The United States Supreme Court has "recognized that the States have always possessed

3   a legitimate interest in 'the protection of ... [their] people against fraud and deception in the sale

4   of food products' at retail markets within their borders." *Florida Lime & Avocado Growers, Inc.*

5   *v. Paul,* 373 U.S. 132, 144 (1963); see also *Bronco Wine Co. v. Jolly,* 33 Cal.4th 943, 959-960

6   (2004) (discussing historic state involvement in food regulation). As a result, federal law may

7   not be given preemptive effect absent "an unambiguous congressional mandate to that effect."

8   *Florida Lime & Avocado Growers,* supra, 373 U.S. at p. 147.

9          Congress has not articulated any such mandate in the area of deceptive food labeling. To

10  the contrary, Congress has generally not preempted state regulation of misleading food labeling

11  and expressly allows state regulation of the disclosure on food labels in accord with FDA

12  requirements. Congress provided, in pertinent part, that:

13         [N]o State or political subdivision of a State may directly or indirectly establish

14         under any authority or continue in effect as to any food in interstate commerce …

15         (3) any requirement for the labeling of food of the type required by section  …

16         343(i) …. or 343(k) of this title that is not identical to the requirement of such

17         section …

18  21 U.S.C. § 343-1(a)(3). The text of this provision clearly and unmistakably allows states to

19  enforce laws that are identical to federal law. Moreover, in restricting the preemptive reach of

20  the FDCA's labeling and misbranding requirements, Congress omitted the general prohibition

21  on false and misleading food labeling (21 U.S.C. § 343(a)) from the detailed, carefully tailored

22  express preemption provisions of 21 U.S.C. § 343-1.

23         Thus, the broad prohibition on unfair, unlawful, or deceptive practices contained in the

24  California's UCL, FAL and CLRA (Cal. Civ. Code § 1770 et seq.) also are not expressly

25  preempted. These general state laws mandate no specialized labeling that differs from the

26  federal standard in order to prevent the public from being misled. Kraft's apparent reliance on

27  21 U.S.C. § 337 is misplaced. That section deals solely with standing to bring an action "under

28  this chapter" – i.e., the FDCA itself – and does not preclude actions under state laws that

1    Congress expressly permitted states to adopt. 21 U.S.C. § 343-1.

2    Indeed, it makes no sense that Congress would permit states to adopt state food labeling

3    regulations congruent to federal requirements and then forbid states to seek redress for

4    violations of their own laws. State remedies for violating state rules that merely duplicate

5    federal requirements do not run afoul of the FDCA. See *Medtronic, supra,* 518 U.S. at pp. 495,

6    513; see also *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 445 (2005) (holding that federal

7    pesticide statute prohibiting different or additional state requirements did not preempt state

8    remedies for violating state law duplicating federal requirements).

9    If Kraft's argument were to prevail, it would not only foreclose a private remedy under

10   state law for violations analogous to federal violations under 21 U.S.C. § 337(a) but, by logical

11   extension, also would impair the ability of states to enforce their own food labeling statutes

12   under Section 337(b). The states would be hobbled by Section 337(b) from being able to enforce

13   their own laws.

14   This extraordinary interference with state sovereignty cannot occur as the result of

15   congressional silence. Indeed, preemption cannot be found unless the intent of Congress to

16   displace state law is "clear and manifest." *Medtronic,* supra, 518 U.S. at p. 485; *Consumer*

17   *Justice Center,* supra, 99 Cal.App.4th at p. 1059. It would be unprecedented if Congress were to

18   nullify all private state causes of action regarding deceptive food labeling, or restrict state

19   governments from enforcing their own laws in an area of significant state concern, based merely

20   on a federal standing provision that is devoid of reference to state law.

21   Given the detailed express preemption provision governing misbranding (21 U.S.C. §

22   343-1) and the general presumption against preemption (*Medtronic,* supra, 518 U.S. at p. 485),

23   Congress would not preempted state standing rules and state causes of action for the violation of

24   non-preempted state laws in such an oblique manner. See, e.g., *Bates,* supra, 544 U.S. at p. 448

25   (a state remedy that might induce compliance with state law requirements echoing federal law is

26   not deemed a preempted requirement); *Medtronic,* supra, 518 U.S. at pp. 495, 513 (state

27   remedies enforcing state requirements that parallel federal requirements are not preempted);

28   *McKell v. Washington Mutual, Inc.,* 142 Cal.App.4th 1457, 1486 (2006) ("The UCL ... only

1  provides a means of enforcing federal requirements. It thus is the type of state law not

2  preempted by federal law.").

3       Mislabeling and false marketing claims are not matters of technical expertise beyond the

4  competency of the courts and better left to the FDA. In fact, courts regularly determine whether

5  conduct is false or misleading: "[t]he standards to be applied in an action for fraudulent

6  misrepresentation are within the conventional competence of the courts, and the judgment of a

7  technically expert body is not likely to be helpful in the application of these standards to the

8  facts of this case." *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 390 (1992), quoting

9  *Nader v. Allegheny Airlines,* 426 U.S. 290, 305-06 (1976).

10      Courts are readily capable of determining whether Kraft, as asserted in the FAC, used

11  misleading representations to sell its Products. In light of the above, and the clear reasoning in

12  *Farm Raised Salmon Cases,* supra, ___ Cal.4th ___, Kraft's preemption argument has no merit.

13  **E.     Ms. Smith's Fraud Claims Are Pleaded With the Requisite Particularity.**

14      "In alleging fraud or mistake, a party must state with particularity the circumstances

15  constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's

16  mind may be alleged generally." Fed. R. Civ. P. 9(b). "[T]he pleader must state the time, place,

17  and specific content of the false representations as well as the identities of the parties to the

18  misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401.

19      Ms. Smith has met that met that burden here. She has stated the specific contents of the

20  false misrepresentations ("Calci-YUM! A Good Source of Calcium as Prepared") and elaborated

21  on the exact reasons why those representations are false. Furthermore, she has provided

22  defendant with the time and place of the representations ("Defendant represented to the public,

23  including Plaintiff, at each and every point of sale, and at the time of each sale, by means of

24  labeling, that the Products contain a significant source of dietary calcium, when they provide

25  absolutely no nutritional value as a dietary source[.]" FAC, ¶¶ 49 and 56).

26      Given that the FAC is pleaded as a class action, the "where" and "when," i.e., the time

27  and place of the representations, is specified as the time and point of sale for each purchase

28  made by Plaintiff and other members of the class. The purpose in doing so was to put Kraft on

1   notice of the exact scope and nature of the claims asserted. Little, if anything, would be gained

2   by citing the day and store that Plaintiff made a particular purchase; that alone would not

3   accurately specify the entirety of the misrepresentations alleged.

4           As pleaded, the FAC fully meets the spirit and intent of Fed. R. Civ. P. 9; it provides

5   accurate and specific notice of the time and place of the alleged misrepresentations of all of the

6   class. Accordingly, the fraud causes of action, as well as all others containing averments of

7   fraud are sufficiently pleaded.

8   **F.      <u>The UCL, FAL, and CLRA are not grounded in fraud</u>.**

9           There is no reference to fraud in the UCL, FAL and CLRA causes of action. In fact, the

10  word itself is only found in the cause of action for intentional misrepresentation (FAC, 14:11

11  and 15:1). The fraud under California's unfair competition laws "'bears little resemblance to

12  common law fraud or deception. The test is whether the public is likely to be deceived.'" *South*

13  *Bay Chevrolet v. General Motors Acceptance Corp.,* 72 Cal.App.4th 861, 888 (1999). In fact,

14  The CLRA and the UCL consumer protection statutes both feature traditionally less rigorous

15  proof burdens than common law fraud. See Civ. Code, § 1760; § 17200; *Consumer Advocates v.*

16  *Echostar Satellite Corp.* (2003). These causes of action are not grounded in fraud.

17                                      **V. CONCLUSION**

18          In light of the foregoing, Plaintiff respectfully requests that the motion to dismiss be

19  denied in its entirety. If, for any reason, the Court should find the FAC deficient, Plaintiff

20  respectfully requests leave to amend in order to correct any deficiencies, and will gladly add the

21  time and place of a purchase if the Court desires.

22                        `                           HEWELL LAW FIRM, APC

23  DATED: May 5, 2008                           __/s/Harold M. Hewell____
                                                 By: Harold M. Hewell
24                                               Attorney for Plaintiff

25

26

27

28