1  William S. Boggs (Bar No. 053013)
   william.boggs@dlapiper.com
2  Noah A. Katsell (Bar No. 217090)
   noah.katsell@dlapiper.com
3  **DLA PIPER US LLP**
   401 B Street, Suite 1700
4  San Diego, CA  92101-4297
   Tel:  619.699.2700
5  Fax:  619.699.2701

6  Amy Weinfeld Schulman (Pro hac vice application pending)
   amy.schulman@dlapiper.com
7  **DLA PIPER US LLP**
   1251 Avenue of the Americas
8  New York, NY  10020-1104
   Tel:  212.335.4500
9  Fax:  212.335.4501

10 Attorneys for Defendant
   Kraft Foods Global, Inc.
11

12             UNITED STATES DISTRICT COURT

13            SOUTHERN DISTRICT OF CALIFORNIA

14

15 ADRIANNE SMITH, as an individual and          CASE NO.  07 CV 2192 BEN (WMC)
   on behalf of all others similarly situated,
16                                               Assigned to Hon. Roger T. Benitez

17             Plaintiff,                        **DEFENDANT KRAFT FOODS GLOBAL,
                                                 INC.'S REPLY MEMORANDUM OF
18      v.                                       POINTS AND AUTHORITIES IN
                                                 FURTHER SUPPORT OF ITS MOTION
19                                               TO DISMISS FIRST AMENDED
                                                 COMPLAINT**
20 KRAFT FOODS GLOBAL, INC., a
   Delaware corporation,
21
                                                 Date:   May 19, 2008
22             Defendant.                        Time:   10:30 a.m.
                                                 Place:  Courtroom 3
23

24

25

26

27

28

1

## **Table of Contents**

2   Table of Authorities ...................................................................................................ii

3   I.      Introduction .................................................................................................... 1

4   II.     Plaintiff's Claims Are Preempted Because She Seeks To Impose
        Requirements That Are Not Identical To The Requirements Imposed By
5       Federal Law ..................................................................................................... 2

6           A.      Jell-O Makes A Federally Defined And Regulated Nutrient Content
                Claim .................................................................................................... 2
7
            B       Federal Nutrition Labeling Law Preempts Plaintiff's Claims ............. 3
8
    III.    Plaintiff Cannot Allege That Jell-O Is Likely To Deceive A Reasonable
9       Consumer ......................................................................................................... 4

10  IV.     "Calci-YUM!" Is Non-Actionable Puffery .................................................... 8

11  V.      Plaintiff Fails To Allege Damages For Any Of Her Claims............................ 8

12  VI.     Plaintiff Ignores Kraft's Arguments Against Her Fraud And Warranty
        Claims ............................................................................................................ 10
13
    VII.    Plaintiff Fails To Plead Her Fraud Claims With Sufficient Particularity ...... 10
14
    VIII.   Conclusion ..................................................................................................... 10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA Piper US LLP
San Diego

1

## <u>Table of Authorities</u>

2

**Cases**

3

Bardin v. DaimlerChrysler Corp.,
    136 Cal. App. 4th 1255 (2006)...................................................................... 7

4

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007).................................................................................. 1

5

6

Belton v. Comcast Cable Holdings, LLC,
    151 Cal. App. 4th 1224 (2007)...................................................................... 7

7

Blank v. Kirwan,
    39 Cal. 3d 311 (1985).................................................................................... 5

8

9

Byars v. SMCE Mortgage Bankers, Inc.,
    109 Cal. App. 4th 1134 (2003)...................................................................... 5

10

Chavez v. Blue Sky Natural Beverage Co.,
    No. C-06-6609, 2007 WL 1691249 (N.D. Cal. June 11, 2007) ...................... 9

11

12

Cipollone v. Liggett Group, Inc.,
    505 U.S. 504 (1992) ...................................................................................... 3

13

Consumer Advocates v. Echostar Satellite Corp.,
    113 Cal. App. 4th 1351 (2003)...................................................................... 8

14

15

Farm Raised Salmon Cases,
    42 Cal. 4th 1077 (2008) ................................................................................ 4

16

Freeman v. Time, Inc.,
    68 F.3d 285 (9th Cir. 1995)....................................................................... 6, 7

17

18

Haskell v. Time, Inc.,
    857 F. Supp. 1392 (E.D. Cal. 1994) .............................................................. 7

19

Hobby Indus. Ass'n of Am. v. Younger,
    101 Cal. App. 3d 358 (1980) ......................................................................... 5

20

21

Lavie v. Procter & Gamble Co.,
    105 Cal. App. 4th 496 (2003)........................................................................ 5

22

McKell v. Washington Mut., Inc.,
    49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006) ..................................................... 4

23

24

Medtronic v. Lohr,
    518 U.S. 470 (1996) ...................................................................................... 3

25

Plotkin v. Sajahtera, Inc.,
    106 Cal. App. 4th 953 (2003)........................................................................ 7

26

27

Shvarts v. Budget Group, Inc.,
    81 Cal. App. 4th 1153 (2000)........................................................................ 7

28

Van Ness v. Blue Cross of California,
    87 Cal. App. 4th 364 (2001) ......................................................................... 7

Walker v. Allstate Indemnity, Co.,
    77 Cal. App. 4th 750 (2000) ......................................................................... 5

Whitaker v. Tandy, Corp.,
    No. C-97-00803, 1997 U.S. Dist. LEXIS 17085
    (N.D. Cal. Oct. 31, 1997) .............................................................................. 7

Williams v. Gerber Prods. Co.,
    No. 06-55921, 2008 WL 1776522 (9th Cir. Apr. 21, 2008) ................... 5, 6, 7, 8

**Statutes**

21 U.S.C. § 337 (2006) ...................................................................................... 3

21 U.S.C. § 343(r) (2006) ............................................................................... 2, 3

21 U.S.C. § 343-1 (2006) ............................................................................... 3, 4

Pub. L. No. 101-535, 104 Stat. 2535 (1990) ...................................................... 2

Cal. Bus. & Prof. Code § 17200 ("UCL") ......................................... 4, 5, 7, 8, 9, 10

Cal. Bus. & Prof. Code § 17500 ("FAL") ......................................... 4, 5, 7, 8, 9, 10

Cal. Civ. Code § 1770 ("CLRA") ..................................................... 5, 7, 8, 9, 10

**Regulations**

21 C.F.R. § 101.9 (2007) ................................................................................ 2, 3

21 C.F.R. § 101.12 (2007) .................................................................................. 2

21 C.F.R. § 101.13 (2007) .................................................................................. 2

21 C.F.R. § 101.54 (2007) .................................................................................. 2

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 6

**Miscellaneous**

H.R. Rep. No. 101-538 (1990),
    reprinted in 1990 U.S.C.C.A.N. 3336 ............................................................ 2

DLA PIPER US LLP
SAN DIEGO

Case No. 07 CV 2192 BEN (WMC)

## I.     **Introduction**

Kraft's opening brief demonstrated that there is far less to this case than Plaintiff would have this Court believe. Plaintiff's Opposition does nothing to remedy the multiple deficiencies in her claims, and Plaintiff fails to state a viable cause of action under any theory.

The material—and dispositive—facts in this case are both simple and uncontested. Plaintiff purchased an inexpensive package of Jell-O dry pudding mix, a product that has been familiar to consumers for decades. The package included an FDA-defined nutrient content claim stating that each serving of pudding provides 10% to 19% of the daily recommended intake of calcium. The package indicated on almost every surface that the pudding is prepared by mixing the dry powder in the box with milk, and some packages feature a front-panel image of milk pouring into a bowl of pudding mix. Plaintiff prepared the pudding with milk as directed, and Plaintiff ate pudding that provided her with 150 milligrams of calcium per serving, or 15% of the daily recommended intake of calcium.[1]

Thus, Jell-O pudding delivered the benefit that was promised, and Plaintiff received exactly what she paid for. Plaintiff cannot dispute that the federally regulated calcium claim on Jell-O—"A Good Source of Calcium as Prepared"—is a true and accurate statement. Nor can she dispute that she received the precise calcium benefit promised by the claim. Plaintiff suffered no injury and has no basis now to complain.

Unable to contest these essential facts, it is no surprise that Plaintiff's Opposition is left to reproduce long passages from her First Amended Complaint ("Complaint") and to plead for "the opportunity to engage in discovery" to "prove her claims." Pl.'s Br. at 8.[2] However, because each of Plaintiff's causes of action fails as a matter of law and cannot be cured by further amendment, the Court should end this lawsuit and dismiss the Complaint with prejudice.

---

[1] Jell-O pudding can only be made with milk. Other liquids like water or soy-milk will not "set" and create pudding.

[2] Notably, Plaintiff misstates the operative pleading standard, arguing that this Court cannot dismiss her Complaint "unless it appears beyond doubt that plaintiff[] can prove no set of facts in support of [her] claim which would entitle [her] to relief." Pl.'s Br. at 5. In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1967–69 (2007), however, the U.S. Supreme Court expressly disapproved the "no set of facts" standard and rejected the proposition that a case should proceed to discovery despite insufficient allegations in the complaint. Indeed, the Court stated that if a complaint does not "raise a right to relief above the speculative level," then "this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 1965–66.

1  **II.    Plaintiff's Claims Are Preempted Because She Seeks To Impose Requirements That**
2  **Are Not Identical To The Requirements Imposed By Federal Law**

3  Plaintiff's Complaint attacks a federally defined nutrient content claim under the Food,
4  Drug, and Cosmetic Act ("FDCA") and the corresponding regulations promulgated and enforced
5  by the Food and Drug Administration ("FDA").  Plaintiff attempts to impose requirements for
6  nutrient content claims that are not identical to the requirements imposed by federal law.
7  Accordingly, her claims are preempted.

8  **A.    Jell-O Makes A Federally Defined And Regulated Nutrient Content Claim**

9  In 1990, Congress amended the FDCA to, among other things, regulate the use of nutrient
10  content claims on food labels.  See Pub. L. No. 101-535, 104 Stat. 2535 (1990).  According to the
11  House Report accompanying the bill, the legislation was designed "to establish the circumstances
12  under which claims may be made about nutrients in foods."  H.R. Rep. No. 101-538, at 7 (1990),
13  reprinted in 1990 U.S.C.C.A.N. 3336, 3337.  Under 21 U.S.C. § 343(r), a food is misbranded if "a
14  claim is made in the label or labeling of the food which expressly or by implication …
15  characterizes the level of any nutrient" unless "the characterization of the level made in the claim
16  uses terms which are defined in regulations of the Secretary."  21 U.S.C. §§ 343(r)(1)(A),
17  (2)(A)(i).  Pursuant to § 343(r), the FDA enacted regulations governing nutrient content claims,
18  including uniform definitions of descriptors, such as "good source," and their use to describe
19  particular nutrients, such as calcium.  See, e.g., 21 C.F.R. §§ 101.13 (providing general principles
20  for nutrient content claims), 101.54 (providing rules for "good source" claims).

21  The calcium claim on Jell-O packages complies with the requirements imposed by federal
22  law.  Under the regulations, "[t]he term[] 'good source' … may be used … provided that the food
23  contains 10 to 19 percent of the RDI … per reference amount customarily consumed."  Id.
24  § 101.54(c).  The regulations further explain that the RDI—or "Reference Daily Intake"—for
25  calcium is 1,000 milligrams, id. § 101.9(c)(8)(iv), and that the "reference amount customarily
26  consumed" for pudding is "1/2 cup," id. § 101.12(b).  The regulations are clear that "the reference
27  amount customarily consumed set forth in § 101.12(b) … shall be used in determining whether a
28  product meets the criteria for a nutrient content claim."  Id. § 101.13(p)(1).  The rules specifically

1   contemplate presenting nutrition information for "as prepared" forms of foods: the regulations

2   expressly provide that "[n]utrition information may be presented for two or more forms of the

3   same food (e.g., both 'as purchased' and 'as prepared')," with information for the two forms of

4   the food presented in multiple columns in the label's "Nutrition Facts" panel. Id. § 101.9(e).

5       Thus, subject to requirements not applicable here, a pudding may be labeled a "good

6   source of calcium" if it provides between 100 milligrams and 190 milligrams of calcium per 1/2-

7   cup serving. Jell-O pudding provides 150 milligrams of calcium per 1/2-cup serving and is a

8   good source of calcium. As provided by the regulations, Jell-O's "Nutrition Facts" panel presents

9   nutrition information in a dual column format: one column providing nutrient content "As

10  Packaged," the other providing nutrient content when "Prepared With 2% Reduced Fat Milk."

11      **B.     Federal Nutrition Labeling Law Preempts Plaintiff's Claims**

12      Congress has broadly preempted states from regulating nutrient content claims: "no State

13  or political subdivision of a State may directly or indirectly establish under any authority … any

14  requirement respecting any claim of the type described in section 343(r)(1) of this title, made in

15  the label or labeling of food that is not identical to the requirement of section 343(r) …." 21

16  U.S.C. § 343-1(a)(5). Thus, states are precluded from establishing requirements for nutrient

17  content claims unless the requirements are identical to those required by section 343(r) and the

18  regulations established by the FDA. This provision preempts non-identical state requirements

19  imposed by litigation judgments as well as by legislative enactments. See Medtronic v. Lohr, 518

20  U.S. 470, 503, 510 (1996); Cipollone v. Liggett Group, Inc., 505 U.S. 504, 521, 548–49 (1992).

21      Plaintiff does not—and cannot—dispute that the calcium content claim on Jell-O pudding

22  meets the requirements established by the FDCA and the FDA. Yet, Plaintiff contends that this

23  nutrient content claim is improper, and she is prosecuting this litigation to enjoin its use. Thus,

24  she seeks to establish requirements for this nutrient content claim that are not identical to the

25  requirements established by Congress and the FDA. Accordingly, her claims are preempted by

26  section 343-1(a)(5).[3]

27  _____

    [3]  Plaintiff directs her argument at "Kraft's apparent reliance on 21 U.S.C. § 337," a provision not cited in Kraft's
    opening brief. Pl.'s Br. at 16. Kraft respectfully submits that Plaintiff's claims are preempted for the reasons
28  detailed in its opening brief. Plaintiff's claims are also preempted for the independent reasons discussed herein.

DLA PIPER US LLP
SAN DIEGO

Case No. 07 CV 2192 BEN (WMC)

1    Plaintiff is mistaken that the California Supreme Court's recent decision in In re Farm

2   Raised Salmon Cases, 42 Cal. 4th 1077 (2008), rescues her claims from preemption.  In fact,

3   Farm Raised Salmon is a precise illustration of why Plaintiff's claims are preempted here.

4    In Farm Raised Salmon, the defendants sold seafood that contained the chemical color

5   additives astaxanthin and canthaxanthin; however, contrary to state and federal law, the

6   defendants did not declare on packaging that the fish was artificially colored.  42 Cal. 4th at

7   1082–84.  This conduct violated food labeling requirements found in both the FDCA and parallel

8   provisions of California's Sherman Food, Drug, and Cosmetic Law.  Id.  The Court recognized

9   that 21 U.S.C. § 343-1(a) is "an explicit preemption provision" that precludes states from

10   establishing artificial-color labeling requirements that are not identical to the requirements under

11   federal law.  The litigation was not preempted, however, because the plaintiffs' claims were based

12   on labeling requirements under the Sherman Law that were identical to the requirements imposed

13   by federal law.  While it was true that the defendants' conduct violated both federal and state

14   labeling laws, the plaintiffs were seeking to enforce only the requirements imposed by the

15   Sherman Law, which were identical to the requirements imposed by the FDCA.

16    Plaintiff's claims here are the inverse of those alleged in Farm Raised Salmon.  Plaintiff

17   does not—and cannot—allege that the "good source" nutrient content claim on Jell-O does not

18   meet the requirements established by the FDCA and the FDA.  Yet, she asserts that this federally

19   regulated and federally compliant nutrient content claim violates California statutes and common

20   law.  Thus, her litigation attempts to impose state requirements for a nutrient content claim that

21   are not identical to the requirements imposed by federal law.  Accordingly, her action challenging

22   this nutrient content claim is preempted.[4]

23   **III.    Plaintiff Cannot Allege That Jell-O Is Likely To Deceive A Reasonable Consumer**

24    Plaintiff fails to assert, as she must under the Unfair Competition Law ("UCL"), False

25   _____

26   [4]  The cases cited by Plaintiff are in accord, and none supports her assertion that her claims escape preemption here.
For example, in McKell v. Washington Mut., Inc., 49 Cal. Rptr. 3d 227, 250–51 (2006), the plaintiffs were using the

27   UCL "to enforce federal law governing the operation of federal savings associations."  As Plaintiff herself concedes,
however, if she were using the UCL to enforce the FDCA, her claims clearly would be preempted.  See Pl.'s Br. at 15
n.14 (citing Farm Raised Salmon, 2008 WL 351637, at *11 (explaining that claims "based on violations of the

28   FDCA" are preempted)).

1  Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"), that the calcium claim

2  on Jell-O pudding "is such that it is <u>probable</u> that a <u>significant portion</u> of the general consuming

3  public or of targeted consumers, <u>acting reasonably in the circumstances</u>, could be misled." <u>Lavie</u>

4  <u>v. Procter & Gamble Co.</u>, 105 Cal. App. 4th 496, 508 (2003) (emphasis added).

5       Plaintiff cannot dispute that Jell-O pudding is "A Good Source of Calcium as Prepared."

6  As provided by FDA food labeling laws, Jell-O pudding is a "good source" of calcium because

7  each serving of pudding provides 15% of the daily recommended intake of calcium.[5]  Plaintiff is

8  demonstrably wrong when she states that Jell-O has "absolutely no nutritional value as a dietary

9  source of calcium." Pl.'s Br. at 5.  If Plaintiff ate Jell-O pudding, she received 150 milligrams of

10  calcium per 1/2-cup serving.  Plaintiff may disagree with the FDA's judgment that 150

11  milligrams of calcium per 1/2 cup is sufficient to qualify as a "good source" of calcium, but

12  simply asserting that a true and accurate statement is a "misrepresentation" does not make it so.[6]

13  Thus, Plaintiff is left to base this entire litigation on the incredible contention that the statement

14  "A Good Source of Calcium as Prepared" led her to believe the product was a good source of

15  calcium "as sold." <u>Id.</u> at 4.

16       Plaintiff's singular reliance on <u>Williams v. Gerber Prods. Co.</u>, 2008 WL 1776522 (9th Cir.

17  Apr. 21, 2008)—an opinion issued after Kraft filed its motion to dismiss that reversed a district

18  court decision that Kraft did not rely on in its opening brief—is misplaced.  Pl.'s Br. at 1, 5–8.

19  _____

[5]  Because Jell-O labels comply with applicable FDA labeling regulations, Plaintiff cannot state a claim under the

20  UCL's "unlawful," "unfair," or "deceptive" prongs.  "A business practice that might otherwise be considered unfair or deceptive cannot be the basis of a section 17200 cause of action if the conduct has been deemed lawful." <u>Byars v.</u>

21  <u>SMCE Mortgage Bankers, Inc.</u>, 109 Cal. App. 4th 1134, 1147–48 (2003) (explaining that the defendant's alleged conduct "was lawful and therefore cannot constitute the basis of a 17200 claim"); <u>see also</u> <u>Blank v. Kirwan</u>, 39 Cal.

22  3d 311, 329 (1985) (finding that plaintiff did not state a cause of action under the UCL because defendant's alleged conduct was not forbidden by underlying law); <u>Hobby Indus. Ass'n of Am. v. Younger</u>, 101 Cal. App. 3d 358, 370

23  (1980) (explaining that defendant was "immune" from actions under the UCL because the UCL does not "encompass[] business practices which the Legislature has expressly declared to be lawful in other legislation")

24  (citations omitted); <u>Walker v. Allstate Indemnity, Co.</u>, 77 Cal. App. 4th 750, 756–58 (2000).

[6]  Similarly, Plaintiff is wrong that it is "false" for Kraft's website to state that a 1/2-cup serving of Jell-O pudding

25  contains 150 milligrams of calcium.  Pl.'s Br. at 3, 7.  This statement, which Plaintiff does not even allege she relied on, is true.  And Plaintiff's suggestion that Kraft's line of ready-to-eat pudding cups somehow "create[s]"

26  "confusion" is equally off point. <u>Id.</u> at 8.  Kraft's ready-to-eat pudding is a completely different product line with no relevance here—even if Plaintiff could allege that she relied on the ready-to-eat pudding label when she purchased

27  the dry powder product at issue here, which she does not.  Moreover, the ready-to-eat and dry mix pudding products both provide a "good source" of calcium per serving.  But the claim on the ready-to-eat product, which requires no

28  preparation and is eaten "as is," never included the words "as Prepared."

DLA PIPER US LLP
SAN DIEGO

1    Indeed, the Ninth Circuit's analysis <u>Gerber</u> actually supports dismissal of Plaintiff's claims here.

2    In <u>Gerber</u>, the defendant sold "Fruit Juice Snacks" as part of its "Graduates for Toddlers"

3    product line. <u>Gerber,</u> at *1. The label included the "words 'Fruit Juice' juxtaposed alongside

4    images of fruits such as oranges, peaches, strawberries, and cherries," but the product did not

5    contain any juice from the fruits represented. <u>Id.</u> The district court found that the plaintiffs could

6    not have been deceived because the fruits depicted on the front of the package were not present in

7    the ingredient list on the side of the box. <u>Id.</u> at *4. The Ninth Circuit disagreed.

8    The court recognized that unfair competition claims like those asserted here may be

9    dismissed under Rule 12(b)(6) without reference to anything other than the advertisement itself.

10   <u>Id.</u> at *3. As an example, the court cited its decision in <u>Freeman v. Time, Inc.</u>, 68 F.3d 285 (9th

11   Cir. 1995), where a sweepstakes mailer informed the plaintiff that he had won a million dollars.

12   However, because the document also informed him that he would win the prize only if he had the

13   winning sweepstakes number, "the advertisement itself made it impossible for the plaintiff to

14   prove that a reasonable consumer was likely to be deceived." <u>Id.</u> at *3.

15   In contrast, the court found that the representations made by Gerber required a different

16   result. The Gerber label included "a number of features … which could likely deceive a

17   reasonable consumer." <u>Id.</u> at *4. Specifically, the court found that four separate representations

18   made in various places on the Gerber package contributed to potential deception:  (1) the product

19   was called "Fruit Juice Snacks"; (2) the package included depictions of numerous fruits

20   "potentially suggesting (falsely) that those fruits or their juices are contained in the product";

21   (3) the statement that the product was made with "'fruit juice and other all natural ingredients'

22   could easily be interpreted by consumers as a claim that all the ingredients in the product were

23   natural, which appears to be false"; and (4) the claim "'just one of a variety of nutritious Gerber

24   Graduates foods and juices that have been specifically designed to help toddlers grow up strong

25   and healthy' adds to the potential deception." <u>Id.</u> The court found that the cumulative effect of

26   these multiple representations, some that appeared to be false, could not be cured by requiring "a

27   busy parent walking through the aisles of a grocery story" to verify—from the <u>absence</u> of certain

28   fruits in the ingredient list—whether the representations were true or false. <u>Id.</u>

1     Contrary to Plaintiff's argument, this analysis supports dismissal here. Unlike Gerber,

2 where the package contained multiple representations, including some that appeared to be false,

3 Jell-O labels include only one representation, and that representation is true and accurate.

4 Further, Jell-O's calcium claim stands on its own without reference to other parts of the package.

5 Kraft does not argue that a consumer is expected to read other information on the package in

6 order to determine whether Jell-O is "A Good Source of Calcium as Prepared." That claim is a

7 true, declarative statement, and there is no suggestion that a consumer must evaluate it by reading

8 information provided elsewhere on the box, much less that a consumer is required to draw a

9 negative inference about Jell-O's contents from the absence of ingredients in the ingredients list.

10    Of course, unlike Gerber, a "busy parent walking through the aisles of a grocery store"

11 must at some point read other parts of the Jell-O label, otherwise he or she will not be able to

12 prepare Jell-O pudding. And, while Jell-O's FDA-required "Nutrition Facts" panel affirmatively

13 states that the product contains "0" calcium "As Packaged," this information is not necessary to

14 verify that the calcium claim is true. Rather, as the Ninth Circuit directs, Jell-O's label "contains

15 more detailed information about the product that confirms other representations on the

16 packaging." Id. (emphasis supplied). As contemplated by the FDA's regulations, a consumer

17 who, like Plaintiff, is "conscientious about [her] diet[] and fully aware of the importance of

18 calcium," Pl.'s Br. at 4, can refer to the "Nutrition Facts" panel to learn the precise calcium

19 content of each serving of pudding. Thus, as in Freeman, the "more detailed information" on the

20 Jell-O package "itself ma[kes] it impossible for the plaintiff to prove that a reasonable consumer

21 was likely to be deceived." See Gerber at *3. Because Plaintiff cannot allege that the Jell-O

22 calcium claim is likely to deceive a reasonable consumer, her UCL, FAL, and CLRA claims

23 should be dismissed.[7]

24

25
[7] Plaintiff does not dispute that California courts have dismissed UCL, FAL, and CLRA claims as a matter of law under similar circumstances. See, e.g., Haskell v. Time, Inc., 857 F. Supp. 1392, 1399, 1399–1403 (E.D. Cal. 1994) (sweepstakes mailer included official rules); Plotkin v. Sajahtera, Inc., 106 Cal. App. 4th 953, 965–66 (2003) (extra

26 fees for parking service disclosed on parking ticket); Shvarts v. Budget Group, Inc., 81 Cal. App. 4th 1153, 1158–60 (2000) (rental car refueling charges were printed in the rental agreement); see also Whitaker v. Tandy, Corp., 1997

27 U.S. Dist. LEXIS 17085, at *8 (N.D. Cal. Oct. 31, 1997); Belton v. Comcast Cable Holdings, LLC, 151 Cal. App. 4th 1224, 1241–42 (2007); Bardin v. DaimlerChrysler Corp., 136 Cal. App. 4th 1255, 1274–76 (2006); Van Ness v.

28 Blue Cross of California, 87 Cal. App. 4th 364, 376–77 (2001).

DLA PIPER US LLP
SAN DIEGO

Case No. 07 CV 2192 BEN (WMC)

IV.    **"Calci-YUM!" Is Non-Actionable Puffery**

Plaintiff's Opposition confirms that the advertising word "Calci-YUM!" is puffery. Plaintiff argues implausibly that "Calci-YUM!," a fanciful marketing word, can be a "specific, quantifiable claim." Pl.'s Br. at 8. Plaintiff's reliance on the Ninth Circuit's recent Gerber decision on this point is unavailing, as that opinion illustrates why "Calci-YUM!" is puffery. In Gerber, the court suggested that the term "nutritious" may, under certain circumstances, constitute puffery "since nutritiousness can be difficult to measure concretely." 2008 WL 1776522, at *4 n.3; see also Pl.'s Br. at 9. "Nutritious," however, is an English word with an easy-to-find definition, and the concept is at least capable of measurement. "Calci-YUM!," in contrast, has no definition and cannot be measured or understood to establish any standard. Cf. Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1361 (2003) (puffery constitutes statements that are "not factual representations that a given standard is met" but "boasts, all-but-meaningless superlatives ... which no reasonable consumer would take as anything more weighty than an advertising slogan"). The marketing word "Calci-YUM!" is non-actionable puffery, and Plaintiff's claims premised on it should be dismissed.

V.    **Plaintiff Fails To Allege Damages For Any Of Her Claims**

Plaintiff is wrong that she adequately pleads damages, a deficiency that her Opposition cannot remedy by repeating the insufficient allegations from her Complaint. Pl.'s Br. at 9–12.

Plaintiff purchased a package of dry pudding mix promising to provide between 10% and 19% of the daily value of calcium per 1/2-cup serving of pudding. Plaintiff does not—and cannot—deny that this is precisely what she received. Plaintiff has not alleged, as she must, that the product she bought was worth less than she paid for it. As Kraft demonstrated in its opening brief, this alone renders each of Plaintiff's causes of action fatally deficient. Def.'s Br. at 9–10 (UCL, FAL, CLRA); id. at 12–13 (misrepresentation); id. at 15 (warranty).

It is nonsensical for Plaintiff to argue that she suffered damages because she "had to pay a hidden price for the separate purchase of milk." Pl.'s Br. at 19. First, there is nothing "hidden" about the fact that Plaintiff had to purchase milk if she wanted to make Jell-O pudding. A consumer purchasing a 3-ounce box of dry powder that makes 2 cups of pudding—particularly

1    one labeled "Instant" or "Cook & Serve"—understands that other ingredients will be required.

2    Jell-O packages explain that milk is required to make pudding on virtually every surface:  on the

3    top, side, back, and bottom of the box.  The front panel of the Cook & Serve variety actually

4    shows milk being poured into the mixture.  Moreover, Plaintiff did not need milk simply to get

5    the calcium benefit, she needed milk in order to make pudding at all.[8]  The pudding's calcium

6    benefit is inherent in the product when prepared as it must be in order to make pudding.  Plaintiff

7    needed to purchase milk to make pudding, irrespective of the calcium claim.

8            Contrary to Plaintiff's assertion, the Northern District's decision in Chavez v. Blue Sky

9    Natural Beverage Co., 2007 WL 1691249, at *4 (N.D. Cal. June 11, 2007), is instructive.  As

10   Plaintiff does here, the plaintiff in Chavez alleged that the product he purchased was worthless to

11   him, and that his damages were the full purchase price, because he would not have purchased the

12   beverage if he had known that the claim on the label was false.  Id. at *2.  The court found this

13   allegation insufficient to allege damages under the UCL, the FAL, the CLRA, or for common law

14   fraud.  The plaintiff "did not pay a premium" because of the label claim, so he could "not allege

15   damages resulting from" the defendants' false label.  Id. at *3 (emphasis added).  And it was

16   insufficient for the plaintiff to allege, as Plaintiff does here, that he bought the product only

17   because of the claim.  Because the plaintiff could not allege that the beverage he purchased was

18   worth less than he paid for it, his allegations were deficient, and the court dismissed the case with

19   prejudice.  Id. at *4.

20           The Jell-O calcium claim is true, and Plaintiff received the calcium benefit promised on

21   the label.  Her assertions that she would not have purchased the product, and that the product had

22   "no value to her," are insufficient.  She did not pay a premium because of the calcium claim, and

23   she cannot allege that there was any difference in value between what she was promised and what

24   she received.  Thus, all of her claims must be dismissed.

25

26   _____

[8]  Thus, Plaintiff's argument that "anything could be marketed as a 'good source of calcium' as long as the consumer
27   was directed to add milk" is a red herring.  Pl.'s Br. at 3.  Jell-O pudding can be made only with milk, and Jell-O
     pudding, when made as it must be made, is a "good source" of calcium.  It is irrelevant for Plaintiff to suggest that a
28   consumer might "believe" that the preparation instructions "could be[] 'just add water.'"  Id. at 6.  If a consumer
     wants to eat Jell-O pudding, he or she must read the directions and must prepare the pudding with milk.

DLA PIPER US LLP
SAN DIEGO
                                                        -9-                          Case No. 07 CV 2192 BEN (WMC)

1    **VI.   Plaintiff Ignores Kraft's Arguments Against Her Fraud And Warranty Claims**

2        Plaintiff's Opposition ignores entirely the multiple grounds for dismissing her claims for

3 negligent and intentional misrepresentation and breach of express warranty.  As explained in

4 Kraft's opening brief, Plaintiff does not—and cannot—state a claim under any of these theories.

5 <u>See</u> Def.'s Br. at 10–12 (negligent and intentional misrepresentation), 14–15 (express warranty).

6 Plaintiff's silence in her Opposition confirms that her fraud and warranty claims should be

7 dismissed with prejudice.

8    **VII.   Plaintiff Fails To Plead Her Fraud Claims With Sufficient Particularity**

9        Plaintiff's Opposition does nothing to cure her fraud allegations, which fail to meet the

10 particularity requirements of Rule 9(b).  Plaintiff asserts only that "during the past four years"

11 Kraft represented "Calci-YUM!  A Good Source of Calcium as Prepared" "to the public" "at each

12 and every point of sale by means of labeling."  Pl.'s Br. at 4, 18.  These general, conclusory

13 allegations do not "put Kraft on notice of the exact scope and nature of the claims asserted."  Pl.'s

14 Br. at 19.  Further, Plaintiff fails to advance any plausible explanation for her fundamental

15 allegation that the statement "A Good Source of Calcium as Prepared" led her to believe that

16 Jell-O was "A Good Source of Calcium <u>as Packaged</u>."  Plaintiff has not pleaded her fraud claims

17 with sufficient particularity, and they should be dismissed.

18    **VIII.   Conclusion**

19        Plaintiff's UCL, FAL, CLRA, misrepresentation, and warranty claims fail because each

20 lacks one or more essential elements that Plaintiff does not and cannot allege, and the deficiencies

21 in her claims cannot be cured by further amendment.  Accordingly, Defendant requests that the

22 Court grant its motion to dismiss with prejudice.

23 Dated:  May 12, 2008          DLA PIPER US LLP

24

25                  s/Noah A. Katsell
                 Attorneys for Defendant Kraft Foods Global, Inc.
                 E-mail:  noah.katsell@dlapiper.com

26

27

28

DLA PIPER US LLP
SAN DIEGO